THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>et al.<br><br>                    Plaintiffs,<br><br>         v.<br><br>US AIRWAYS GROUP, INC. and<br>AMR CORPORATION<br><br>                    Defendants | Civil Action No.1:13-cv-01236-CKK |

## DEFENDANT AMR CORPORATION'S
## ANSWER [AND AFFIRMATIVE DEFENSES] TO PLAINTIFFS' AMENDED
## COMPLAINT

NOW COMES defendant AMR Corporation ("American"), by its undersigned counsel, and in answer to Plaintiffs' Amended Complaint ("Complaint"), states as follows:

The proposed merger of American and US Airways will increase competition in every meaningful respect.  Plaintiffs' complaint tries to explain why this is not correct, but can only do so by ignoring the realities of the airline industry in the 21st Century.  This transaction, viewed through the lens of the actual US airline industry today, rather than some idealized vision of the past, does not violate the antitrust laws.

The airline industry has come a long way since deregulation some 35 years ago.  Not surprisingly, it has gone through a variety of shocks and cycles, some external (like 9/11 or fuel price increases) and some the result of the new competitive environment created by deregulation (like the dramatic entry and growth of low cost carriers ("LCCs") and serial bankruptcies). Plaintiffs seem to be nostalgic for certain elements of this history that seem to provide consumer benefits, while ignoring or downplaying other elements that do not fit their preferred narrative. The relevance of that history to the issue before this Court, however, is largely to explain how we got where we are today — an intensely competitive industry with two leading network carriers, a multitude of vigorous and dynamic LCCs, and US Airways and American, seeking to position themselves to be more effective long-term competitors in that environment.

This transaction would create a third comprehensive, global network carrier (the "New American"), fully capable of competing with the two that exist today (Delta and United, themselves created by mergers permitted by Plaintiffs).  New American would be a long-term viable airline more capable of sustaining the economic shocks that have so characterized the

airline industry, resulting in one or more bankruptcies for literally all of its major legacy participants. New American would generate enormous direct consumer benefit, most significantly by creating a unified network affording a vastly expanded array of flight options for travelers — taking more passengers where they want to go when they want to go there. Models routinely used by the airlines in their businesses demonstrate that these positive network effects would attract millions of additional passengers to the merged airline. Methods used by the United States Department of Justice ("DOJ") conservatively demonstrate that the value of these consumer benefits would exceed $500,000,000 every year, net of any fare effects. The merger would also produce synergies resulting in $150,000,000 annually in reduced costs, net of improved pay and benefits and welcome job stability for many thousands of airline employees who have been among the victims of this industry's tumultuous past.

These very large consumer benefits are not speculative. Indeed, the DOJ itself has repeatedly recognized them while approving recent industry mergers based on the same analytical approach. For instance, the DOJ hailed the consumer benefits created by the merger of Delta and Northwest as a result of "combining under single ownership the complementary aspects of the airlines' networks." And while the Complaint now relies largely on mechanical recitations of "Herfindahl-Hirschman Index" numbers for individual city-pairs, it ignores that other recent airline mergers resulted in comparable HHI values and were nonetheless approved and lauded by the DOJ because across the entire network the net benefits stemming from the transactions were overwhelmingly positive. The DOJ's approach in evaluating those earlier mergers – unlike in this transaction – was fully consistent with its own Merger Guidelines, which recognize that market shares and HHI numbers are merely starting points for analysis, not the decisive results portrayed in this Complaint.

These benefits are particularly important because US Airways has undergone two bankruptcies in recent years, and American has undergone one, from which it has not yet emerged. Together, the two airlines lost almost $14 billion in the last twelve years, and the uncertainty and shocks that have prevailed in today's airline industry, make the need for their combination all the more important to consumers. This transaction will produce a stronger, more effective competitor more able to offer consumers the network and services they want.

The Complaint presents no coherent rationale supporting its challenge to the merger. Rather, it cobbles together a collection of ad hoc contentions based on anecdotes involving small numbers of passengers and historical e-mails and other documents irrelevant to this transaction, while ignoring the central facts and economic realities of today's airline industry.

For instance, the Complaint focuses heavily on the existence of "more than 1,000" overlapping routes between the two airlines with high HHI numbers. But the number of nonstop and connecting overlaps in this merger is comparable to those transactions that the DOJ only recently agreed would increase competition. Of the 623 domestic nonstop routes currently flown by American and US Airways, the two airlines directly compete on only 17, and DOJ's list includes only 14. Moreover, most of those overlaps are also served nonstop by other airlines, including Southwest and the LCCs, such as Spirit, and JetBlue, all very vigorous and active with their individual business approaches, but in the logic of this Complaint virtually irrelevant. The remaining routes in DOJ's list are 994 one-stop connecting overlaps, a fraction of the more than 13,000 that American and US Airways serve. And the merger would have very little effect on

the bulk of even that minority of routes.  Illustrating how little high HHIs reveal about the competitiveness of a market, most of these one-stop routes will remain very competitive after the merger:

- **AA's and US's small shares.**  On almost half of the routes, either AA or US flies less than 10% of the passengers on the route.

- **Postmerger competition.**  Almost 90% of the passengers on these routes will continue to be served by at least 3 airlines after the merger.

- **LCC competition.**  About 85% of passengers on these routes will continue to be served by one of the LCCs.  Since LCCs fly 40% of domestic airline passengers in the US, the notion that LCC competition and potential entry are not the dominant competitive fact in the industry is out of touch with market realities.

- **No barriers.**  Virtually none of the routes have any barriers to new entry.

As this incomplete summary shows, the narrative weight this Complaint places on these "overlapping routes" is competitively misleading, and in fact illustrates the fragility of the Complaint's allegations generally.  Doing competitive effects analysis by simply counting competitors might have been accepted practice four decades ago, but seems quaint at best today. It is inconsistent with the state of the law and with the DOJ's own Horizontal Merger Guidelines.

The airline industry is intensely competitive today and would remain so after this transaction.  Air travelers today receive more service to more places at lower prices (properly adjusted for inflation and other relevant factors) than ever before.  The Complaint ignores this reality, and instead concocts an imaginary narrative where airlines tacitly collude and where prices are higher than in the past, but the real facts are just the opposite.  This transaction would create a more effective competitor to both the existing comprehensive network carriers and the LCCs and would promise consumers more competitive and more effective air travel options in the future.

In its proper historical context, the proposed transaction is the next logical step in a series of transactions that, taken as a whole, would not only create a more competitive industry but one that can be more effective in serving passengers than ever before.  With this transaction, more airline passengers will get better service to more places at competitive prices.  That is the definition of a procompetitive transaction.

American denies, generally and specifically, any and all allegations in the Complaint not specifically admitted in the numbered paragraphs below, which correspond to the paragraphs in the Complaint.  American does not respond to the headings of the various sections of the Complaint.  American further states that generally it lacks knowledge or information sufficient to form a belief about the truth or falsity of allegations that relate to the actions, statements, or intent of US Airways or third parties, and therefore denies them.  American reserves the right to amend this answer.

## I.    INTRODUCTION

1.     American admits the allegations of the first two sentences of this paragraph.  Since deregulation in 1978, the airline industry has been, and remains, highly competitive.  American denies that the proposed merger threatens harm to consumers.  To the contrary, it would increase competition by combining American's and US Airways' complementary networks and creating a competitor better able to withstand the inevitable economic shocks to the industry than either company standing alone.  Following the proposed merger, the largest U.S. domestic airlines would be Southwest, American, United, and Delta.  American denies the contention in the sixth sentence that the number of so-called "legacy" airlines following the merger would be three, because other airlines (including Hawaiian and Alaska Airlines) have also been considered "legacy" airlines, but in any event that category is irrelevant in assessing airline competition today.  American denies the remaining allegations in this paragraph.

2.     American admits that American and US Airways compete on 17 nonstop city-pair routes (12 airport-pairs) and thousands of connecting routes (along with a large number of other airlines), and admits that some of those routes are heavily traveled.  American denies that this merger would eliminate substantial competition.  American denies the remaining allegations in this paragraph.

3.     American denies the allegations of this paragraph.

4.     American admits that there have been several airline mergers since 2005, none of which were challenged by DOJ.  American denies that the proposed merger would lead to anticompetitive fare or fee increases or capacity or service reductions.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

5.      American admits that at some times in the booking cycle, US Airways sometimes offers for sale connecting service on some routes that is priced lower than other airlines' nonstop service.  American admits that US offers Advantage Fares.  American denies the remaining allegations in this paragraph.

6.      American admits that at some times in the booking cycle, US Airways sometimes offers for sale on some routes airlines offer for sale some seats for connecting service at prices comparable to those being offered by other airlines for nonstop service.  The effective pricing for airline seats is also affected by other factors such as off-tariff discounting and yield management.  American admits that, shortly before departure on some routes, American, Delta, and United sometimes offer connecting service at a price lower than US Airways offers nonstop service.  American admits the allegations in the fourth sentence of this paragraph.  American denies the remaining allegations in this paragraph.

7.     American denies the allegations in this paragraph.

8.     American admits that, shortly after filing for bankruptcy, it developed a business plan to be used as the basis of a chapter 11 plan to emerge from bankruptcy independent of a merger, but that plan was not supported by creditors nor presented to the Bankruptcy Court.  The business

plan contemplated that American would increase capacity but in a manner that tracked industrywide increases in demand.  American admits the allegations in the second sentence of this paragraph.  American denies the remaining allegations in this paragraph.

9.      American admits that this proposed independent plan included American capacity increases but denies that this "would have bucked industry trends."  American denies there is an industrywide trend towards capacity reductions and less competition.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

10.     American admits the allegations of the second, third, and sixth sentences of this paragraph.  American admits that, assuming no schedule changes, postmerger New American would be the sole carrier on 63% of nonstop routes from Reagan National.  American denies the remaining allegations in this paragraph.

11.     American admits that the merger will benefit consumers.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in the fourth and fifth sentences this paragraph, which relate to purported statements by US, and therefore denies them.  American denies the remaining allegations in this paragraph.

12.     American denies the merger will be anticompetitive.  American admits that it would be able to compete as an independent company, although not as effectively as it would with the procompetitive benefits brought by the merger.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US and unspecified American executives, and therefore denies them.

13.     American denies the allegations in this paragraph.

## II.      JURISDICTION, INTERSTATE COMMERCE, AND VENUE

14.     The allegations of this paragraph that this Court has subject matter jurisdiction under 15 U.S.C. § 25, and that the United States claims violations of 15 U.S.C. § 18, are legal conclusions not subject to admission or denial.  American denies that the merger would violate any provision of law.

15.     The allegations of this paragraph that the plaintiff States assert subject matter jurisdiction under 15 U.S.C. § 26, and that the plaintiff States claim violations of 15 U.S.C. § 18, are legal conclusions not subject to admission or denial.  American denies that the merger would violate any provision of law.

16.     American admits the allegations in this paragraph.

17.     The allegations of this paragraph that venue is proper under 15 U.S.C. § 22, and that the Court has personal jurisdiction over American, are legal conclusions not subject to admission or denial.  American admits it is found and transacts business in this judicial district.

## III.      THE DEFENDANTS AND THE TRANSACTION

18.      American admits the allegations in this paragraph.

19.      American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in this paragraph and therefore denies them.

20.      American admits the allegations in this paragraph.

21.      American admits that, shortly after filing for bankruptcy, it developed a business plan to be used as the basis of a chapter 11 plan to emerge from bankruptcy independent of a merger, which contemplated growth and improved profitability, but that plan was not supported by creditors nor presented to the Bankruptcy Court.  American admits that, after filing for bankruptcy, it adopted and has followed steps approved by the bankruptcy court, incompletely described in the quoted language in the third sentence of this paragraph.  American admits that it reported that its revenue growth outpaced industry growth  by one measure in parts of 2012, but states that its revenues have underperformed industry growth in 2013.  American denies the remaining allegations in this paragraph.

22.      American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

23.      American admits the allegations in the first two sentences of this paragraph.  American admits that the merged airline would operate under the American name, but states that its management would include persons from both US Airways management and American management.

## IV.      THE RELEVANT MARKETS

### A.      Scheduled Air Passenger Service Between Cities

24.      American admits the allegations in this paragraph.

25.      The allegations of this paragraph are too generalized to be true or meaningful.  For instance, (a) for travel between some nearby city pairs, travel by car, bus, or train is a reasonable substitute and should be included in the relevant market; and (b) for some cities, air service to or from a nearby city is a reasonable substitute for service to or from those cities.  American therefore denies the allegations in this paragraph.

26.      American admits the allegation in the first sentence of this paragraph.  The remaining allegations of this paragraph are too generalized to be true or meaningful.  For example, with respect to some city pairs, air service to and from other nearby cities is a reasonable substitute.  American therefore denies those remaining allegations.

27.      American admits the allegations in this paragraph.

28.     The allegations of this paragraph are too generalized to be true or meaningful.  For example, (a) for travel between some nearby city pairs, travel by car, bus, or train is a reasonable substitute and should be included in the relevant market; and (b) for some city pairs, air service to and from another nearby city is a reasonable substitute.  American therefore denies the allegations in this paragraph.

29.     American admits the allegations in the first sentence of this paragraph.  American admits that the factors identified in the second sentence of this paragraph are relevant to some passengers, but denies that these are the only factors relevant to passengers' purchase decisions.  American admits that, all else equal, some business customers traveling from downtown Washington prefer Reagan National.  American admits that the proposed merger will affect passengers differently, and that fare rules make distinctions among the various services provided to passengers.  American denies that individual passenger preference or fare rules define a separate relevant market.  American denies the remaining allegations in this paragraph.

### B.      Takeoff and Landing Slots at Reagan National Airport

30.     American admits the allegations in the first sentence of this paragraph.   American states that slots are more frequently leased than purchased, and otherwise denies the vague and subjective characterizations of the second sentence of this paragraph.  American admits that, to provide service at Reagan National, an airline must have slots at Reagan National, and otherwise denies the remaining allegations in this paragraph.

31.     American admits that Reagan National is across the Potomac River from Washington, D.C., that people can travel to it by subway, that some airlines are willing to, and do, pay for slots at Reagan National, and that, all else equal, some passengers prefer Reagan National to other D.C.-area airports.  American denies that individual passenger preference defines a separate relevant market.  American denies the remaining allegations in this paragraph.

## V.      THE MERGER IS LIKELY TO RESULT IN ANTICOMPETITIVE EFFECTS

### A.      Industry Background

32.     American admits the allegations of the second sentence of this paragraph.  American denies that there are only four airlines that have been characterized as "legacy" airlines.  American admits that there are other airlines besides the four listed – such as Southwest Airlines, Jet Blue Airways, Alaska Airlines, WestJet, Spirit Airlines, Frontier Airlines, Hawaiian Airlines, Allegiant Air, and others – and that some do not offer hub-and-spoke service.  American denies the remaining allegations in this paragraph.

33.     American admits the allegations of this paragraph, except that airlines compete in ways other than those listed in this paragraph.

34.     American admits that the four DOJ-approved mergers took place in the years indicated.  American denies the allegations of the first sentence of this paragraph insofar as it uses vague and subjective characterizations of the industry.  American denies the remaining allegations in this paragraph.

35.    American denies the allegations in the first two sentences of this paragraph.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

**B.    Many Relevant Markets Are Highly Concentrated and the Planned Merger Would Significantly Increase that Concentration**

36.    American admits that, following the merger of American and US Airways, the nine airlines identified in ¶ 34 of the Complaint would have merged to four.  American admits that as of today the four airlines listed would serve about 80% of domestic scheduled passenger service and that, by some measures, the new American would be the largest worldwide carrier, but Southwest Airlines would remain the largest domestic carrier.  American denies the remaining allegations in this paragraph.

37.    American admits that HHI values are "one" factor identified in the DOJ Horizontal Merger Guidelines (2010) as relevant in evaluating mergers, but without additional close and proper analysis, concentration changes cannot accurately predict the likely effects of any transaction.  American denies the remaining allegations of this paragraph.

38.    American admits that, on the city pairs listed in Appendix A, US Airways and American annually serve more than 14 million passengers and collect more than $6 billion in fares.  The Complaint does not provide sufficient information to allow American to make the HHI calculations reported in Appendix A; therefore American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph and therefore denies them.  American denies that these HHI calculations demonstrate that the merger is anticompetitive or should be presumed anticompetitive.  American denies that scheduled air passenger service between all of the identified city pairs is a relevant market, because (a) for travel between some nearby city pairs, travel by car, bus, or train is a reasonable substitute and should be included in the relevant market; and (b) for some cities, air service to or from a nearby city is a reasonable substitute for service to or from those cities.  American denies the remaining allegations in this paragraph.

39.    American denies the allegations in this paragraph.

40.    American admits that, using the data selected by DOJ, the postmerger HHI calculation produces the results alleged in the first two sentences of this paragraph.  American denies that these HHI calculations demonstrate that the merger is anticompetitive or should be presumed anticompetitive.  American denies the remaining allegations in this paragraph.

**C.    This Merger Would Increase the Likelihood of Coordinated Behavior Among the Remaining Network Airlines Causing Higher Fares, Higher Fees, and More Limited Service**

41.    American denies the allegations in this paragraph.

42.    American admits that, as in most industries, airlines respond to competition by and consider the actions of rivals – especially carriers like Southwest Airlines and JetBlue Airways –

in setting their own fares.  When one airline changes prices, other airlines may or may not make a similar change, which of course affects whether the airline making the initial fare change will decide to retain its new fares or restore its original fares.  American denies the remaining allegations in this paragraph.

43.     American admits that airlines sometimes use cross-market initiatives to compete with competitors' fares, but denies that CMIs deter aggressive discounting or prevent fare wars. Indeed, CMIs constitute a type of fare war.  American denies the allegations of the third and fourth sentences, because CMIs do not occur with respect to the majority of fare reductions. American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported actions by other airlines, and therefore denies them.

44.     American admits the allegations in the sixth, and seventh sentences of this paragraph. American denies the allegations in the first, second, fourth, and fifth sentences of this paragraph, and notes that there has never been any judicial finding that ATPCO was a signaling device used for anticompetitive behavior.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in the third sentence of this paragraph, which relate to purported statements by US Airways, and therefore denies them.

45.     American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in this paragraph, which relate to purported actions by other airlines, and therefore denies them.

46.     American denies the allegations in this paragraph, and asserts this reflects a fundamental misunderstanding of competition in the airline industry.

47.     American admits the allegations in the third sentence of this paragraph, except its allegation that this is an "example" of the allegation in the second sentence.  American admits that some newer airlines' business models differ from American's, just as all carriers have business models that in many respects differ from one another.  American denies the remaining allegations in this paragraph, some of which relate to purported statements by US Airways, and asserts that they represent a fundamental lack of understanding of the competitive importance of these airlines.

### 1.     The Merger Would Likely Result in the Elimination of US Airways' Advantage Fares

48.     American denies the allegations in this paragraph.

49.     American admits that US Airways is a national network carrier, and that it maintains a program that it calls "Advantage Fares."  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported analysis and strategy of US Airways, and therefore denies them.

50.     American admits that US Airways makes available Advantage Fares for connecting service on some routes, generally for sale close to departure.  American has no independent basis

to confirm or deny the accuracy of the screenshot reproduced by Plaintiffs.  American denies the remaining allegations in this paragraph.

51.      American admits that Advantage Fares have been applied on hundred of routes, including some where more than one carrier offers nonstop service.  American has no independent basis to confirm or deny the accuracy of the screenshot reproduced by Plaintiffs.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in the last sentence of this paragraph and therefore denies them.

52.      American admits that some airlines offer some seats with fares similar to US Airway's Advantage Fares on routes where US Airways has nonstop service.  American has no independent basis to confirm or deny the accuracy of the screenshot reproduced by Plaintiffs.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in the last sentence of this paragraph and therefore denies them.  American denies the remaining allegations in this paragraph.

53.      American has no independent basis to confirm or deny the accuracy of the screenshot reproduced by Plaintiffs.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph and therefore denies them.

54.      American admits the allegations in the third and fourth sentences of this paragraph.  American admits that the second through fourth sentences correctly quote and describe the email of an American employee.  American denies the remaining allegations of this paragraph.

55.      American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in this paragraph, which relate to the operations of other airlines, and therefore denies them.

56.      American admits the allegations in the third and fourth sentences of this paragraph.  American denies the remaining allegations in this paragraph.

57.      American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in this paragraph, which relate to purported statements and strategy of US Airways, and therefore denies them.

58.      American denies that the proposed merger would end Advantage Fares.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in this paragraph and therefore denies them.

### 2.      The Merger Would Likely Lead to Increased Industry-Wide "Capacity Discipline," Resulting in Higher Fares and Less Service

59.      American admits that "reducing unused capacity can be an efficient decision that allows an airline to reduce its costs," which allows it to lower consumer prices and provide other consumer benefits.  American denies that the proposed merger will result in reduced capacity.  American denies the remaining allegations in this paragraph.

60.      American denies the allegations in this paragraph.

61.     American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in this paragraph and therefore denies them.

62.     American admits the allegations in the first three sentences of this paragraph. American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

63.     American admits the allegations in the first sentence of this paragraph.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

64.     American admits the allegations in the first sentence of this paragraph.  American admits that, following the Delta/Northwest merger, the combined airline reduced service at Cincinnati and Memphis while increasing service elsewhere.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

65.     American admits the allegations in the first two sentences.  American admits that United and Continental closed their deal on October 1, 2010.  American admits that the combined airlines identified in this paragraph reduced service at some cities while increasing service elsewhere.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

66.     American admits it is aware of publicly-available information on other mergers. American admits the allegations in the second sentence of this paragraph.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph and therefore denies them.

67.     American denies that it expects the merger to reduce capacity and specifically denies DOJ's characterization of the American document quoted by DOJ in the fifth sentence of this paragraph.  American denies the allegations in the second, fifth, and sixth sentences of this paragraph.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported analysis by US Airways, and therefore denies them.

### 3.     The Planned Merger Would Likely Block American's Standalone Expansion Plans, Thwarting Likely Capacity Increases

68.     American admits that it could compete as an independent company, although it could not compete as effectively as it would with the improvements brought by the merger.  American admits that its independent business plan that had been under discussion prior to the merger included American domestic and international capacity increases intended to track expected industrywide increases in demand.  American admits the allegations in the last sentence of this paragraph.  American denies the remaining allegations in this paragraph.

69.     American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in this paragraph and therefore denies them.

70.     American admits that the text quoted in the second half of the second sentence is from an American document, but denies DOJ's suggestion that it opined that the combined airline would not pursue growth.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in the first sentence of this paragraph, which relate to purported analysis by US Airways, and therefore denies them.

### 4.     The Merger Would Likely Result in Higher Fees

71.     American admits the allegations in the first three sentences of this paragraph.  American admits that increases in fees would bring additional costs to those who pay them.  American denies the remaining allegations in this paragraph.

72.     American admits that in 2008, American, United and US Airways introduced a first-checked-bag fee on the dates indicated in the fifth and sixth sentences of this paragraph.  American admits the allegation of the seventh sentence of this paragraph.  American denies the remaining allegations and opinions in this paragraph.

73.     American admits that, as in any competitive industry, the competitive responses of other airlines are factors that can affect implementation of new fees or fee changes.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

74.     American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

75.     American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in this paragraph and therefore denies them.

76.     American admits that, as is common to any competitive industry, airlines at times delay responding to new fees or fee changes until other airlines have responded.  American admits the allegations in the second and third sentences of this paragraph.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

77.     American denies the allegation of the first sentence of this paragraph.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

78.     American admits that it has considered but not imposed a checked bag fee on flights to Europe.  American admits that, by some measures, the new American would be the largest worldwide carrier, but denies the remaining allegations in the last sentence of this paragraph. American lacks knowledge or information sufficient to form a belief about the truth or falsity of

the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

79.     American admits that the merged airline would harmonize the now-separate fees of American and US Airways, but the ultimate fee structure would depend on market conditions. American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US, and therefore denies them.

80.     American denies the allegation in the first sentence of this paragraph. American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

81.     American admits, without this merger, American and US Airways would continue to compete with United and Delta, each other, Southwest, and other airlines. American admits that no airlines look exactly the same. American denies the remaining allegations in this paragraph.

> **D.     The Merger Would Eliminate Head-to-Head Competition in Hundreds of Relevant Markets and Entrench US Airways' Dominance at Reagan National Airport**

82.     American admits the allegations of the first two sentences of this paragraph, but notes that the vast majority of those "markets" include other competitive alternatives, frequently more than one. American denies the remaining allegations in this paragraph.

83.     American admits the allegations of the first two sentences of this paragraph. American denies the remaining allegations in this paragraph.

84.     American admits the allegations of the second sentence of this paragraph. American admits that slots are required to take off and land at Reagan National, and that airlines may obtain slots through transactions with existing slot holders or by assignment from the FAA. American denies the remaining allegations in this paragraph.

85.     American denies the allegations of the first sentence of this paragraph. American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

86.     American lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations of the second and fourth sentences of this paragraph. American denies the remaining allegations in this paragraph.

87.     American admits the allegations in this paragraph.

88.     American admits the allegation in the fourth sentence of this paragraph that the combined firm would have the right to terminate with a 180 days' notice, but notes that doing so would result in a loss of access by the combined firm to slots at JFK. American lacks knowledge or

information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

89.     American admits the allegations of the first sentence of this paragraph.  American lacks knowledge or information sufficient to form a belief about the truth or falsity of the remaining allegations in this paragraph, which relate to purported statements by US Airways, and therefore denies them.

90.     American denies the allegations in this paragraph.

## VI.     ABSENCE OF COUNTERVAILING FACTORS

91.     American denies the allegations in this paragraph.

92.     American denies the allegations in this paragraph.

93.     American admits that some carriers do not serve all markets and that there are customers who prefer certain types of carriers and particular carriers.  American denies the remaining allegations in this paragraph.

94.     American denies the allegations in this paragraph.

## VII.     VIOLATION ALLEGED

95.     American denies the allegations in this paragraph.

96.     American denies the allegations in this paragraph.

## VIII.     REQUEST FOR RELIEF

97.      American states the Plaintiffs are not entitled to the relief requested.

## AFFIRMATIVE DEFENSES

1.     The Complaint fails to state a claim on which relief can be granted.

2.     Granting the relief sought is contrary to the public interest.

3.     Combining US Airways' and American's flight networks will offer travelers new routes, increase the frequency and convenience of flights, increase capacity, and benefit consumers. These consumer benefits, as well as cost synergies and other efficiencies that will result from the merger, far outweigh any proffered anticompetitive effects.

4.     American reserves the right to assert any other defenses as they become known to American.

Dated: September 10, 2013

/s/ John M. Majoras
John M. Majoras (DC Bar #474267)
Paula W. Render (Pro Hac Vice)
Michael S. Fried (DC Bar #458357)
Rosanna K. McCalips (DC Bar #482859)

JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001
(202) 879-3939 (Phone)
(202) 626-1700 (Facsimile)
jmmajoras@jonesday.com
prender@jonesday.com
msfried@jonesday.com
rkmccalips@jonesday.com

Mary Jean Moltenbrey (DC Bar #481127)

PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC  20005
(202) 551-1725 (Phone)
(202) 551-0225 (Facsimile)
mjmoltenbrey@paulhastings.com

***Attorneys for Defendant***
***AMR Corporation***