IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
UNITED STATES OF AMERICA, et al.,          )
                                                      )
                              Plaintiffs          )
                                                      )
            v.                                      )   Civil Action No. 1:13-cv-01236 (CKK)
                                                      )
                                                      )
US AIRWAYS GROUP, INC.,                      )
111 W. Rio Salado Parkway                     )
Tempe, AZ 85281                                   )
                                                      )
and                                                   )
                                                      )
AMR CORPORATION,                              )
4333 Amon Carter Boulevard                    )
Fort Worth, TX 76155                             )
                                                      )
                              Defendants.         )
_____)

**MOTION OF TRANSPORT WORKERS UNION**
**<u>TO INTERVENE AS OF RIGHT</u>**

       The Transport Workers Union of America AFL-CIO ("TWU") is the collective

bargaining representative under the Railway Labor Act ("RLA") for more than 23,000

employees of AMR Corp/American Airlines in seven crafts/classes and 300 employees of US

Airways in the Flight Dispatch, Flight Crew Training Instructor and Flight Simulator Engineer

crafts/classes.

       TWU respectfully moves the Court to grant its Motion to Intervene under Fed. R. Civ. P.

24(a).  The attached Memorandum, Exhibit A hereto, demonstrates the specific and considerable

interests of TWU's members in the outcome of this litigation, and that only by intervening can

TWU ensure that those interests are adequately presented to the Court, and therefore adequately

protected.


Dated: October 2, 2013

Respectfully submitted,

Jeffrey Blumenfeld (DC Bar #181768)
    (admitted only in DC)
Lowenstein Sandler, LLP
1251 Avenue of the Americas
New York, NY 10020
T:  212.204.8699
M: 202.255.6300
jblumenfeld@lowenstein.com

Sharon L. Levine
    (*Pro Hac Vice* application pending)
Lowenstein Sandler, LLP
65 Livingston Avenue
Roseland, NJ 07068
T: 973.597.2500
F: 973.597.2400
slevine@lowenstein.com


Richard S. Edelman (DC Bar # 416348)
O'Donnell, Schwartz & Anderson, P.C.
1300 L Street, N.W., Suite 1200
Washington, DC 20005
T: (202) 898-1707
F:(202) 682-9276
REdelman@odsalaw.com

***Attorneys for Transport Workers Union***
***of America AFL-CIO***

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) Civil Action No. 1:13-cv-01236 (CKK) |
| | ) |
| US AIRWAYS GROUP, INC., | ) |
| 111 W. Rio Salado Parkway | ) |
| Tempe, AZ 85281 | ) |
| | ) |
| and | ) |
| | ) |
| AMR CORPORATION, | ) |
| 4333 Amon Carter Boulevard | ) |
| Fort Worth, TX 76155 | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF
MOTION OF TRANSPORT WORKERS UNION
TO INTERVENE AS OF RIGHT**

## I. The Interests of the Transport Workers Union of America

The Transport Workers Union of America AFL-CIO ("TWU") is the collective

bargaining representative under the Railway Labor Act ("RLA") for more than 23,000

employees of AMR Corp/American Airlines[1] in seven crafts/classes[2] and 300 employees of US

---

[1] AMR Corporation, a holding company formed in 1982, is the parent corporation of American
Airlines.  *See* http://www.American
Airlines.com/i18n/amrcorp/corporateInformation/facts/amr.jsp.

Airways in the Flight Dispatch, Flight Crew Training Instructor and Flight Simulator Engineer crafts/classes.

Over the past two decades, TWU has negotiated several collective bargaining agreements with American Airlines, most recently in 2003, that all involved  substantial give-backs[3] in pay, benefits and work rules applicable to the American Airlines employees it represents.  Prior to AMR/American Airlines' bankruptcy filing on November 29, 2011, TWU and American Airlines had been negotiating amendments to various applicable Collective Bargaining Agreements ("CBAs") with varying degrees of success.

TWU has been actively involved in the AMR bankruptcy court proceedings on behalf of the American Airlines employees it represents, and on their behalf engaged in negotiations over the then-existing Collective Bargaining Agreements[4] with American Airlines during the course of the bankruptcy court proceedings ("1113 negotiations").  TWU negotiated and the membership ratified various modifications to the relevant CBAs.  These modifications resulted in a 17.4% reduction in the total labor costs for TWU-represented employees.

TWU and the other Unions representing American Airlines employees strongly believe that a carrier formed by the merger of American Airlines and US Airways would be significantly better positioned than a stand-alone American Airlines to compete effectively against the

---

[2] Mechanics & Related, Fleet Service, Materials Logistics Specialists, Dispatchers, Ground School and Simulator Pilot Instructors, Maintenance Control Technicians, and Flight Simulator Technicians.

[3] These give-backs totaled approximately $620 million per year in reductions in pay, benefits and work rules.

[4] The Bankruptcy Act provides that the debtor in possession may assume or reject an existing CBA under certain conditions and procedures.  11 USC §1113.  It is common for the debtor in possession and the relevant Unions to negotiate the terms of a CBA that would be binding on the debtor in possession post bankruptcy proceedings.

considerably larger "new Delta" – which was formed as the result of a merger between Delta Airlines and Northwest Airlines, with the approval of the Department of Justice ("the Department") – and the "new United" – which was formed as the result of a merger between United Airlines and Continental Airlines, also with the approved of the Department.  Both new Delta and new United have networks that are appreciably broader in scope and denser in coverage than the networks of either American Airlines or US Airways.

During the course of the bankruptcy proceedings, TWU and the other Unions also became convinced that the combined carrier would be more effective under the leadership of US Airways management than under the leadership of American Airlines management.

As a result of these conclusions, TWU and the other Unions representing American Airlines employees determined that a merged American/US Airways under US Airways management would be a much stronger and more viable competitor against new Delta and new United than would a post-bankruptcy stand-alone American Airlines.  The merger would create a carrier – "new American Airlines" – equivalent in scale and network scope with new Delta and new United.

TWU and the other American Airlines Unions further became convinced that such a "new American Airlines" under the leadership of US Airways management would have the best chance of preserving the jobs of tens of thousands of American Airlines workers, many of whom have worked at American Airlines for their entire careers.[5]  During the course of the Chapter 11 proceedings, the Unions negotiated directly with US Airways management regarding certain terms and conditions of employment at the post-merger carrier.

---

[5] From 2000 to 2012, total employment at American Airlines (in FTE  positions) has declined 30.4% (the total industry declined 24.9%), while wages are down 9.3% over the same period in constant 2000 dollars (a larger decline than the industry average).

As the Court knows, it is uncommon, and perhaps unprecedented, for Unions to come out ahead of the debtor carrier in favor of a merger.  It is certainly unprecedented for Unions to play an instrumental role in bringing about a merger, as TWU and the other Unions did in this case.  Those facts alone demonstrate how deeply convinced are TWU and the other Unions that the merger of American Airlines and US Airways under the current US Airways management team is the best path towards preserving their jobs in order to assure that their and their families' futures are secure.

Since 2000, airline employees – including those represented by the TWU at American Airlines and US Airways – have repeatedly made concessions and endured bankruptcy proceedings that have substantially reduced wages, benefits and work rules, while also eliminating jobs.  Over the past twelve years, overall compensation for airline employees generally have declined in real dollars, driven by the elimination of defined benefit pensions, retiree medical, restrictions in medical coverage and major increases in outsourcing of work functions performed by ground based personnel.

Airline employees have paid a substantial price to enable the airlines to cover their increased costs of fuel and security, and the loss of passenger business following the terrorist attacks of September 11, 2001, and again with the economic downturn since 2008.  Additionally, since 2000 US Airways has been in bankruptcy twice, and each of American Airlines, United, Delta, and Northwest has been in bankruptcy once.  In each bankruptcy, the airlines have won concessions from the Unions, in bargaining to avoid bankruptcy or in the 1113 processes.  American Airlines employees have also been forced to agree to reductions in pay and benefits over the years outside bankruptcy.  In part due to these concessions, and in part due to the efficiencies and cost reductions the new American Airlines will achieve in the merger, and also

as a result of the network scope and depth it will have, the post-merger American Airlines will be positioned to be able to compete more successfully against new Delta and new United.

Without the merger, American Airlines and US Airways, as weaker and smaller carriers, would be less able to weather additional unpredictable but inevitable changes in costs resulting from fuel price increases, security costs, and other unpredictable but inevitable cyclical changes in business conditions, such as reduced passenger traffic, due to the current or future economic downturns.

For purposes of intervention, TWU has significant interests, not only the long term benefits the merger will have for TWU-represented employees and their families, but also a pecuniary interest in the pay and benefits to its members that will result from the merger.  In exchange for the concessions TWU made in the 1113 negotiations in the current bankruptcy, as well as for settlement of two national grievances, and for certain prospective concessions in the CBAs, TWU will receive and distribute to the American Airlines employees it represents, 4.8% of the shares of common stock that will be issued to unsecured creditors on American Airlines' emergence from bankruptcy.  If the merger is not completed, the TWU would still be entitled to 4.8% of the shares issued to the unsecured creditors under a stand-alone American Airlines, but the value of those shares is likely to be significantly lower than would be the value of the shares in a post-merger American Airlines.

Additionally, as a further result of the negotiations between the TWU and US Airways, American Airlines employees represented by TWU would receive a 4.3% pay increase upon consummation of the merger, finally seeing a small pay increase at a merged carrier after more than a decade of concessions.  Net of concessions by the Unions since 2000, and despite the prospective 4.3% wage increase, overall compensation would be down significantly over that

period of time.  This reduction in compensation will continue to exist even after wages revert to

pre-concession levels because of, among other things, the freeze of the defined benefit pension,

limitations in health care coverage for actives, the elimination of Company paid retiree medical,

and head count reductions caused by outsourcing.  If the merger does not happen, TWU-

represented employees will not receive the 4.3% wage increase, thus increasing even further

their wage-related losses of the past decade.

But the overriding concern of the TWU is not the potential gain or loss of that raise.  It is

much more fundamental a set of concerns, namely: (a) that without the merger, the stand-alone

American Airlines will find it more difficult to compete effectively against its much larger rivals,

new Delta and new United, both of which will continue to be much larger in both size and

network scope, and; (b) therefore that, over time, the risk to TWU-represented employees and

their families is increased.

## II.    TWU Satisfies the Requirements to Intervene as of Right

TWU satisfies each of the factors required to intervene as a matter of right under Fed. R.

Civ. P. 24(a), including that the party "claims an interest relating to the property or transaction

that is the subject of the action, and is so situated that disposing of the action may as a practical

matter impair or impede the movant's ability to protect its interest, unless existing parties

adequately represent that interest."

Fed. R. Civ. P. 24(a) is satisfied (1) if the application to intervene is timely; (2) if the

movant claims an interest relating to the property or transaction that is the subject of the action;

(3) if the action, as a practical matter, may impair or impede the movant's ability to protect that

interest; and (4) if the movant's interest is not adequately represented by the existing parties. *See*

*Fund for Animals, Inc. v. Norton*, 322 F.3d 738, 731 (D.C. Cir. 2003).  Courts construe the

requirements liberally with an eye towards granting intervention.  *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) ("[T]he D.C. Circuit has taken a liberal approach to intervention.").

In addition, a movant must also have Article III standing.  *See Fund for Animals*, 322 F.3d at 731-32.  However, "the matter of standing may be purely academic" because a person who satisfies the Fed. R. Civ. P. 24(a) requirements will also meet Article III requirements. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).   Likewise, a party found to have Article III standing will also have a sufficient interest in the lawsuit under Fed. R. Civ. P. 24(a).  *See Fund for Animals*, 322 F.3d at 735.

1.     *TWU Has a Legally Protectable Interest in the Action.*

Given the significant potential harm it will suffer if the Department succeeds in blocking this merger, TWU has a legally protected interest[6] that gives it a right to intervene in the lawsuit. *See, e.g.*, *Am. Horse Protection Ass'n v. Veneman*, 200 F.R.D. 153, 157 (D.D.C. 2001) (party impacted by operating plan had a legally protected interest); *see also, Fund for Animals*, 322 F.3d at 733, 735 (finding potential lost revenue was a sufficient interest (and provided standing)). The standard is one that is "liberal and forgiving" with emphasis placed on the other factors, *i.e.*, impairment of the interest and the adequacy of representation by other parties.  *Am. Horse*, 200 F.R.D. at 157.

In *Am. Horse*, the U.S. Department of Agriculture promulgated an operating plan that governed treatment of horses, inspections, and penalties for violations.  After the Plaintiff filed suit challenging the operating plan, the Show Horse Support Fund (the "Fund") (consisting of

---

[6] Fed. R. Civ. P. 24(a) does not require that the proposed intervener have a "cause of action," only an interest.  *U.S. v. Philip Morris USA, Inc.*, No. 99-2496, 2005 WL 1830815, at *5 (D.D.C. July 22, 2005).

horse training and breeding organizations) moved to intervene in support of the plan.  The Court found that the Fund had a sufficient interest (and standing) because (1) of its efforts to create the plan; (2) of the period of uncertainty that would exist while a new plan is crafted; (3) of the "significant potential" that a new plan would be more onerous for the Fund's members; (4) the Fund's activities (training and breeding) would be in jeopardy; and (5) the plan was the central document that governs their activities.  200 F.R.D. at 157.

Similarly, here TWU was heavily involved in creating the plan that was recently confirmed by the bankruptcy court, TWU faces a period of uncertainty to formulate a stand-alone plan, and TWU faces a real likelihood that any alternative plan for a stand-alone American would be more significantly less beneficial for the members, and that the financial security of its members and their families would be much improved under a merger scenario.[7]

2.     *This Lawsuit Threatens TWU's Interest.*

In assessing the impairment to the proposed intervener's interest if it were not permitted to intervene, courts examine "the practical consequences of denying intervention." *Fund for Animals*, 322 F.3d at 736.  The inquiry is not a rigid one. *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14 (D.D.C. 2010).  Even if TWU had the ability to "vindicate [its] interests" at some later date, that is not a basis to deny intervention. *Fund for Animals*, 322 F.3d at 736.  This is because TWU would face difficulties and burdens in protecting its interest down the road if the merger is blocked. *See id.*

If the Department succeeds in blocking the merger, TWU and its members would no longer be able to rely on the merger plan which has been confirmed by the Bankruptcy Court contingent on the outcome of this litigation.  Deprived of that plan – the only plan agreed to by

---

[7] The Court has recognized the interests of TWU and other Unions in this litigation. *See* Docket Entry No. 93, pp. 1-2.

8

all the parties to the bankruptcy proceedings – TWU would have to spend significant time and resources formulating and negotiating an alternative plan, with the attendant uncertainties and significant delays associated with the outcome of that process.

And, most importantly, the TWU members who work for American Airlines would face exactly the prospect that drove them to support the proposed merger: the increased risk to its members and their families associated with a stand-alone American Airlines, that likely will have more difficulty competing successfully against the much larger and denser networks of new Delta and new United than would a new American Airlines formed from the merger with US Airways.[8]

3.    *The Airlines Cannot and Will Not Adequately Represent TWU's Interests.*

Neither American Airlines nor U.S. Airways can or will adequately represent TWU's unique interests. TWU's burden here is "*de minimis*, and extends only to showing that there is a possibility that its interests may not be adequately represented absent intervention." *Wildearth Guardians*, 272 F.R.D. at 14.

Both American Airlines and US Airways are well-represented by talented and experienced counsel. Both carriers will work to win the litigation, in order to be able to effect the merger to which they have agreed. Both carriers will skillfully present the overwhelming evidence that the merged entity likely will improve the market for the consumers and result in a more successful competitor than would a stand-alone American Airlines.

But the carriers, and therefore their counsel, are obligated to protect the interests of the carriers, not of the TWU-represented employees. And while American Airlines and US Airways

---

[8] *Am. Horse*, 200 F.R.D. at 158 (interest impaired where Fund could not rely on operating plan and would have to participate in creating an alternative plan).

have asserted that their employees would be hurt by rejection of the merger, neither carrier has, or will have, the TWU's unique interest in preserving the long-term interests of their employees.

The purpose of TWU's intervention is exactly to safeguard the interests of its members and their families, to focus on the preservation of their jobs, and to accomplish those goals by being the voice of those concerns in this proceedings before this Court.

4.       *TWU's Motion is Timely.*

TWU's motion to intervene is timely.  When considering the timeliness of such a motion, courts do not look solely to the time elapsed, but to all the circumstances including potential prejudice to the parties, the necessity of intervention to preserve rights, and the purpose of the intervention, including whether it is for a limited purpose.  *Wildearth Guardians*, 272 F.R.D. at 12.

The Department filed its Complaint on August 13, 2013.  In response, TWU demonstrated its interest by adding antitrust counsel to its ongoing representation in this matter, and shortly thereafter joining a multi-Union *amicus* filing requesting an early trial date.[9]  TWU (along with other Unions) sent its lawyers to the August 30, 2013 hearing to set a trial date. TWU has been working since then to ensure that its interests are protected in the proceedings. However, given the juncture of the case now, the only way TWU can ensure that its considerable interests in the outcome of this litigation are adequately presented to the Court, and therefore adequately protected, is by intervening.

TWU is well aware that the schedule set forth for this litigation is an aggressive one, and is thankful to the Court for that aggressive schedule.  TWU is of course also aware of the fact that, as part of that schedule, the parties are some weeks into an aggressive discovery schedule,

---

[9]  *See* Docket Entry No. 57.

involving both documents and depositions. TWU does not want to do anything that would delay, at all, that discovery schedule or the trial date. And TWU does not want a determination of its Motion to be affected by the possibility that its intervention might have any effect on that schedule.

To those ends, TWU is willing to accept Court-imposed limitations on its intervention, specifically providing that TWU will neither take nor give discovery. Such "appropriate conditions or restrictions upon [TWU's] participation in the action"[10] will assure the Court and the parties that TWU's intervention will have no effect on the complexity of the litigation, or on the ability of the parties and the Court to adhere to the schedule previously ordered.[11] Further, such "context-specific" conditions tailored to fit the needs of this particular litigation, the parties, and the court, will appropriately balance the ability of TWU to ensure its members' interests are represented, with the ultimate goal of "ensur[ing] the fair, efficacious, and prompt resolution of the litigation." *Id.*[12]

## III.     Alternatively, the Court should Allow TWU to Appear as *Amicus Curiae*.

If the Court decides that TWU does not have the right to intervene, TWU respectfully requests leave to participate as *amicus curiae*. The Court has broad discretion to permit parties to participate as *amicus curiae*, and has provided such alternative relief after denying motions to

---

[10] *Wildearth Guardians*, 272 F.R.D. at 20 (citations omitted).

[11] *See Philip Morris*, 2005 WL 1830815, at *1 (finding motion to intervene, filed after discovery and trial, was timely "in light of the 'very limited purpose for which Proposed Intervenors (*sic*) seek to be heard.")

[12] Allowing for intervention as a matter of right with limits imposed is well accepted by the Courts. *See Beauregard, Inc. v. Sword Servs.*, LLC, 107 F.3d 351, 352-53 (5th Cir. 1997); *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 537 (1972) (union member's intervention was limited to certain claims); *Fund for Animals*, 322 F.3d at 737 n.11 (citing the 1966 Advisory Committee comments).

intervene. *D.C. v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 237 (D.D.C. 2011).

Participation as *amicus curiae* is permitted when "a party is not represented competently or is not represented at all," or "the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003). While participation as *amicus curiae* would be appropriate if the Court were to deny this Motion to Intervene, it would be a more limited right of participation and would not as clearly ensure that TWU could adequately protect its interests.

## CONCLUSION

TWU's proposed intervention is the only means by which the significant interests of TWU's members will be adequately represented during these proceedings. At the same time, it would allow the parties and the Court to adhere to the schedule set forth at the August 30 hearing, with no complications or delay caused by the intervention. TWU satisfies all the requirements to intervene as of right under Fed. R. Civ. P. 24(a).

TWU respectfully requests that the Court grant its Motion to Intervene.

Dated: October 2, 2013

Respectfully submitted,

Jeffrey Blumenfeld (DC Bar #181768)
(admitted only in DC)
Lowenstein Sandler, LLP
1251 Avenue of the Americas
New York, NY 10020
T: 212.204.8699
M: 202.255.6300
jblumenfeld@lowenstein.com

12

Sharon L. Levine
   (*Pro Hac Vice* application pending)
Lowenstein Sandler, LLP
65 Livingston Avenue
Roseland, NJ 07068
T: 973.597.2500
F: 973.597.2400
slevine@lowenstein.com

Richard S. Edelman  (DC Bar # 416348)
O'Donnell, Schwartz & Anderson, P.C.
1300 L Street, N.W., Suite 1200
Washington, DC 20005
T: (202) 898-1707
F:(202) 682-9276
REdelman@odsalaw.com

***Attorneys for Transport Workers Union
of America AFL-CIO***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) Civil Action No. 1:13-cv-01236 (CKK) |
| | ) |
| | ) |
| US AIRWAYS GROUP, INC., | ) |
| 111 W. Rio Salado Parkway | ) |
| Tempe, AZ 85281 | ) |
| | ) |
| and | ) |
| | ) |
| AMR CORPORATION, | ) |
| 4333 Amon Carter Boulevard | ) |
| Fort Worth, TX 76155 | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER GRANTING MOTION TO INTERVENE**

The Court, having reviewed Proposed Interveners The Transport Workers Union of America AFL-CIO's ("TWU") Motion to Intervene pursuant to Fed. R. Civ. P. 24(a) and the arguments in opposition (if any) and for good cause shown, grants TWU's Motion to Intervene Pursuant to Fed. R. Civ. P. 24(a).

IT IS SO ORDERED.

Dated:_____

_____
Hon. Colleen Kollar-Kotelly,
United States District Judge

1

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused a copy of the foregoing Motion of the

Transport Workers Union Of America To Intervene As Of Right to be served on all counsel of

record through the Court's CM/ECF electronic notification system:


October 2, 2013                                    /s/ Richard S. Edelman
                                                   Richard S. Edelman