IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA, ET AL.,

         Plaintiffs.,

           vs.

US AIRWAYS GROUP, INC., ET AL.,

         Defendants.
_____

CA No. 13-1236
Washington, DC
August 30, 2013
9:30 a.m.


TRANSCRIPT OF INITIAL SCHEDULING CONFERENCE
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff, USA:      Mark William Ryan, Esquire
                             U.S. DEPARTMENT OF JUSTICE
                             Antitrust Division
                             950 Pennsylvania Avenue, NW
                             Room 3215
                             Washington, DC 20530
                             (202) 532-4753
                             mark.w.ryan@usdoj.gov


                             Katharine Mitchell-Tombras, Esq.
                             U.S. DEPARTMENT OF JUSTICE
                             Antitrust Division
                             450 Fifth Street, NW
                             Suite 4000
                             Washington, DC 20001
                             (202) 532-4923
                             katharine.mitchell@usdoj.gov

Kathleen Suzanne O'Neill, Esq.
U.S. DEPARTMENT OF JUSTICE
Antitrust Division
450 Fifth Street, NW
Suite 8000
Washington, DC 20530
(202) 307-2931
kathleen.oneill@usdoj.gov


William H. Stallings, Esquire
U.S. DEPARTMENT OF JUSTICE
Antitrust Division
450 5th Street, NW
Suite 8000
Washington, DC 20004
(202) 514-9323
Fax: (202) 307-9952
william.stallings@usdoj.gov

Ryan J. Danks, Esquire
U.S. DEPARTMENT OF JUSTICE
Antitrust Division
450 5th Street NW
Room 4648
Washington, DC 20001
(202) 305-0128
Fax: (202) 514-6525
ryan.danks@usdoj.gov


For the Plaintiff States:      James A. Donahue, III, Esquire
                               OFFICE OF THE ATTORNEY GENERAL
                               Commonwealth of Pennsylvania
                               Strawberry Square
                               14th Floor
                               Harrisburg, PA 17120
                               (717) 787-4530
                               jdonahue@attorneygeneral.gov


                               Bennett C. Rushkoff, Esquire
                               OFFICE OF THE ATTORNEY GENERAL
                               Public Advocacy Section
                               441 4th Street, NW
                               Suite 600-S
                               Washington, DC 20001
                               (202) 727-5173
                               bennett.rushkoff@dc.gov

Nicholas Alan Bush, Esquire
OFFICE OF THE ATTORNEY GENERAL
441 Fourth Street, NW
Suite 600-S
Washington, DC 20001
(202) 442-9841
nicholas.bush@dc.gov


Lizabeth A. Brady, Esquire
OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3851
liz.brady@myfloridalegal.com


Victor J. Domen , Jr., Esquire
ATTORNEY GENERAL'S OFFICE
425 Fifth Avenue North
Nashville, TN 37202
(615) 253-3327
Fax: (615) 532-6951
vic.domen@ag.tn.gov


Sarah Oxenham Allen, Esquire
OFFICE OF THE ATTORNEY GENERAL
Consumer Protection Section
900 E. Main Street
Richmond, VA 23219
(804) 786-6557
soallen@oag.state.va.us


For Defendant US Airways:        Richard G. Parker, Esquire
                                 Kenneth R. O'Rourke, Esquire
                                 Katrina M. Robson, Esquire
                                 O'MELVENY & MYERS LLP
                                 1625 Eye Street, NW
                                 Washington, DC 20006
                                 (202) 383-5380
                                 Fax: (202) 383-5414
                                 rparker@omm.com
                                 korouke@omm.com
                                 krobson@omm.com

```
For Defendant AMR Corp.:        John M. Majoras, Esquire
                                JONES DAY
                                325 John H. McConnell Boulevard
                                Suite 600
                                Columbus, OH 43215-2673
                                (614) 281-3835
                                jmmajoras@jonesday.com

                                Rosanna K McCalips, Esquire
                                JONES DAY
                                Business and Tort Litigation
                                51 Louisiana Avenue, NW
                                Washington, DC 20001
                                (202) 879-3898
                                Fax: (202) 626-1700
                                rkmccalips@jonesday.com


For Movant Allied Pilots:       Robert W. Fleishman, Esquire
                                STEPTOE & JOHNSON, L.L.P.
                                1330 Connecticut Avenue, NW
                                Washington, DC 20036
                                (202) 429-3000
                                rfleishman@steptoe.com


ALSO PRESENT:                   Jeffrey Blumenfeld, Esquire
                                LOWENSTEIN SANDLER, LLP
                                1251 Avenue of the Americas
                                New York NY  10020
                                (212) 240-8699
                                jblumenfeld@lowenstein.com


                                Joseph M. Alioto, Esquire
                                ALIOTO LAW FIRM
                                One Sansome Street
                                San Francisco, CA  94108
                                (415) 434-8900

Court Reporter:                 Lisa M. Foradori, RPR, FCRR
                                Official Court Reporter
                                U.S. Courthouse, Room 6706
                                333 Constitution Avenue, NW
                                Washington, DC  20001
                                (202) 354-3269
                                L4dori@hotmail.com
```

1                     P R O C E E D I N G S

2              COURTROOM DEPUTY:  Civil Case 13-1236, the United

3    States of America, et al. versus US Airways Group, Inc., et

4    al.

5              Counsel, please come forward and identify yourself

6    for the record.

7              MR. RYAN:  Your Honor, Mark Ryan on behalf of the

8    United States.  Good morning, again.

9              THE COURT:  Good morning.

10             MR. DONAHUE:  Good morning, Your Honor.  James

11   Donahue on behalf of the Plaintiff States.

12             THE COURT:  Good morning.  You might as well --

13   since you're here, we might as well find out who you all are.

14   I'm assuming at some point I'll have contact with you.

15             MR. DANKS:  Thank you, Your Honor.  Good morning,

16   Ryan Danks for the United States.

17             THE COURT:  Okay.

18             MS. MITCHELL-TOMBRAS:  Good morning, Your Honor.

19   Kate Mitchell-Tombras for the United States.

20             MR. STALLINGS:  Williams Stallings for the United

21   States.

22             MS. O'NEILL:  Good morning.  Kathleen O'Neill for

23   the United States.

24             THE COURT:  All right.  And for the defendants.

25             MR. MAJORAS:  Good morning, Your Honor.  John

1   Majoras from the Jones Day law firm for the AMR Corporation,

2   which I'll typically refer to as American.  I'm also here with

3   my colleagues, Rosanna McCallips from Jones Day.

4           THE COURT:  All right.

5           MR. PARKER:  Good morning, Your Honor.  Richard

6   Parker from O'Melveny & Myers on behalf of US Airways.  I'm

7   with my colleagues, Ken O'Rourke and Katie Robson.

8           THE COURT:  All right.  Good morning, everyone.

9   All right.  We've set this up as a scheduling conference

10  today.  What I'd like to so is —— just to put this in

11  context —— is to go over some sort of time line of events, as

12  I understand it, from looking at your pleadings, and then I'll

13  start to get into some questions that I have.

14          As I understand it, in May of 2012, US Airways

15  submitted documents to the Department of Justice.  In

16  January 2013, the parties filed their Hart-Scott-Rodino, HSR,

17  merger notifications.  Then on February 13th of 2013 the

18  merger agreement was signed.  In May of 2013 the airlines

19  produced approximately 3 millions pages of documents to the

20  Department of Justice.  In the spring/summer of 2013, the

21  Department of Justice conducted 7 investigative depositions,

22  as I understand it, not of third parties.

23          On August 13th of 2013, Department of Justice and

24  various Attorneys General filed suit.  August 22nd, the

25  airlines filed a motion for expedited trial date.  And

1    August 28th, the parties filed their 16.3 Report.

2            Yesterday, as I understand it, and I'm doing this

3    from news reports, so you can tell me if I'm wrong.  The

4    bankruptcy judge heard, as I understand it, final arguments

5    regarding confirmation of the reorganization, which would

6    include the merger.  Although, he did not issue a final

7    ruling, at least the quote in the paper was that he was

8    inclined to confirm the plan.  And, of course, we're here for

9    the Initial Scheduling Conference.

10           November 12th is the airlines' suggested trial

11   date.  The Plaintiffs, Department of Justice, and the

12   Attorneys General have suggested March 3rd of 2014.  As I

13   understand it, December 17th of 2013 is the termination date,

14   the date on which either party may withdraw from the

15   agreement.  Although, as I understand it, that's negotiable

16   and not fixed in stone.  If I'm wrong about any of these

17   dates, let me know.

18           (No response.)

19           THE COURT:  No?  Okay.  So, let me go over some of

20   my initial thoughts, and I did give you some sense of what

21   kind of questions I would be asking.  So, I'm expecting that

22   the plaintiffs were going to use their full resources

23   available to you including, hopefully, some assistance from

24   the Attorneys General's offices in terms of your having an

25   opportunity to go out and do, for instance, depositions at the

1   same time contemporaneous.

2          I'm going to set a schedule that enables both

3   parties to get all of the information that you need to

4   adequately either prosecute or defend the case, but I am going

5   to do it on an expedited basis.  March 3rd, I think, is too

6   far off.  It needs to be a tighter expedited schedule.  I

7   would be inclined to do tighter deadlines, but allow and not

8   curtail discovery, if there's a reasonable basis behind it.

9          So, let me start with some questions that I had in

10  terms of coming up with a schedule that I think is workable.

11  I understand in the -- and I'm doing it from what you

12  indicated.  There were certain dates that were agreeable and

13  some that were not.  So, I'm starting with a few questions of

14  those that were agreeable, but I'm interested to know what

15  they comprise -- and then go through some of the questions

16  that I have about the areas where you are actually in dispute.

17         What are the changes that are going to be made in

18  the amended complaint?  Is that going to affect discovery in

19  any way?

20         MR. RYAN:  Your Honor, I don't think it will affect

21  discovery.  The changes, as we anticipate them today, would

22  involve perhaps the addition of another state or state

23  plaintiffs, and I underline "perhaps."  And then I'm sure that

24  Your Honor saw at the back of the complaint, Attachment A.

25  There's a lot of math there.  There are a lot of numbers that

1   have been calculated that we are double checking.  Now, some

2   of those numbers are going to change, I don't think it's going

3   to be material, but we want them to be correct.

4          So, those are the changes that we have in mind.  No

5   new claims.  No new theories.  Nothing that should delay the

6   case.

7          THE COURT:  All right.

8          MR. RYAN:  And we have committed to, I think, a

9   September 6th --

10         THE COURT:  Yes, I don't have any problem with

11  the -- with dates that you have come up with that you've

12  agreed to are fine.  I don't have any issue with that, both in

13  terms of the amended complaint and when you had proposed to do

14  the answer.

15         The interrogatories, requests for production -- I

16  indicated in my order yesterday that plaintiffs may propound

17  10 interrogatories on each defendant, and the defendant

18  together may propound 15 on the plaintiffs as a group.  And

19  you both agreed to unlimited requests for production of

20  documents.  I realize the interrogatories were disputed, but

21  I'm making my ruling.

22         I do have some questions about the documents in

23  terms of getting some sense of the volume and the focus of

24  this.  So, I'd be interested to know what documents the

25  Department of Justice -- I'm going to say plaintiffs, so that

1   you know it's the Department of Justice and the other

2   Attorneys General -- are going to obtain from the defendant

3   airlines prior to filing suit that you don't already have.  If

4   you'll give me some idea of what you're getting from the

5   parties, and I'll separate that out from third parties.

6            MR. RYAN:  Thank you, Your Honor.  And just before

7   I turn to that, just for the record, the Court had the dates

8   right.  But from March of 2012 until the spring of 2013, we

9   received no documents.  There really was no investigation

10  during that period.  So, without belaboring the point, we're a

11  little sensitive to the characterization that it's been a

12  16-month investigation.

13           THE COURT:  That's why I did not use it that way.

14           MR. RYAN:  And it wasn't the Court's

15  characterization, it was -- but we received 4 million

16  documents in April and May.  And just to be right up front

17  with the Court, we've invested a lot of time in going through

18  those documents, but it's a lot of papers and we're still

19  going through those.

20           But as to the Court's question:  What else do we

21  need?  Let me give the Court a few examples.  So, the Court

22  has already seen in the papers that one of the defenses

23  here -- because there's no question in this case that there's

24  a great degree of head-to-head direct competition between the

25  airlines.

1               One of the defenses that the parties have put forth

2    as to why the elimination of that competition is acceptable is

3    efficiencies.  There will be efficiencies and cost savings

4    that will benefit consumers.  One of the, if not the most --

5    if not the principal efficiency is the integration of their

6    systems, their routes, Your Honor, their flights.  How will

7    they fit together?

8               During the investigation, we were told -- and I was

9    at meetings when we were told -- that there had been no

10   planning yet for that.  So, there had been no system -- we had

11   no documents looking at:  How are you actually going to

12   generate these efficiencies?  And this is a very big issue.

13   So, now, since we received the completion of their document

14   production, we understand that they have begun to dedicate a

15   lot of efforts to planning the system integration that will

16   generate -- that will allegedly generate the efficiencies.

17              So, there is a major area of inquiry about which

18   very little has been done.  And there will be documents and --

19   and there are teams and teams of people at the airlines

20   working on system integration.  And that's understandable.

21   But as we point out in our papers, and it's no great insight

22   on our part, discovery applies to their defenses as well as to

23   our claims.  So, this is a principal defense that we haven't

24   had an opportunity to explore.

25              Another one, Your Honor, and I think this is also

1   in their papers.  The airlines say, look, in order to compete

2   with Delta, in order to compete United, we need to be better

3   at attracting corporate business, corporate accounts.  In our

4   view, this is a relatively -- this was a recently raised

5   defense.  There hasn't been a lot of exploration of it.

6           I don't believe, for example -- and counsel should

7   correct me if I'm wrong -- but I don't think we even got the

8   corporate contracts that they currently have in the requests

9   that we made.  So, this is a defense that I don't know the

10  extent to which it will require document production from them.

11  It will require some documents, and certainly documents from

12  third parties and depositions.  So, there are two.  Two.

13          I have one more, Your Honor, and I could prattle

14  on, but one more is transparency.  So, one of the issues in

15  the complaint is whether this is an industry in which there is

16  what we call coordinated interaction or follow the leader or

17  we copy each other, and whether the merger will make that kind

18  of conduct more likely, more possible, more successful in the

19  airline industry.

20          Now, one of the their defenses is, that doesn't

21  happen in the airline industry.  This is not an industry in

22  which there is coordinated interaction.  And as part of that

23  defense we've been told very recently, and they made this

24  point in a press conference that they had after the filing of

25  our complaint.  This is not an industry in which pricing is

1   transparent, that one competitor's pricing practices are

2   transparent to another.  This will be a major issue in the

3   case, Your Honor, because we believe it's quite transparent.

4   And transparency is important when you're talking about

5   coordinated interaction, because to coordinate you have to be

6   able to see what the other fellow is doing.

7           So, those are three important issues in the case in

8   which we believe there has been little, if any, document

9   discovery.  And to the extent there has been document

10  discovery, it's been incidental, it's been captured by other

11  requests.  And I'm anticipating that the Court may have

12  questions about depositions, so I won't repeat myself, but I

13  think each of those areas that I just identified would also

14  lend themselves to depositions.

15          So, I can think of one other one, Your Honor, right

16  off the top of my head.

17          THE COURT:  Okay.

18          MR. RYAN:  Which we have some -- some information

19  on, but I think much more will have been developed, and that

20  is American's ability to compete as a standalone entity.  We

21  think that American was poised to come out of bankruptcy as a

22  very vigorous competitor, and we rely in large part on that --

23  American's own statements.  Their CEO, Mr. Horton's,

24  statements about how profitable they are and how they are

25  poised to compete.

```
1              We have -- no question, we do have documents on
2    that, but we think there's more to be found on that, because
3    American's business has continued vigorously and independently
4    during the bankruptcy proceedings.
5              So, that's another area of both document discovery
6    and depositions.  So, I hope that's helpful to the Court, Your
7    Honor.
8              THE COURT:  Yes.  No, I want to get a sense of the
9    scope and to some degree volume and focus.  All right.  I'm
10   assuming that whoever is coming up for the plaintiff is going
11   to speak for all of the plaintiffs.  If somebody has some
12   additional things you're going to speak to in terms of the
13   Attorneys General, please get my attention.  Otherwise, I'm
14   just going to assume that the Justice representative is
15   speaking for all of you on this end.
16             MR. RYAN:  So far we're all on the same page, Your
17   Honor.
18             THE COURT:  Okay.  Well, let me know because I
19   won't call on you unless you bring it to my attention.  If I
20   could ask the defendants a quick question.  Let's assume,
21   without getting into whether you think these are your defenses
22   or not, I'd like to know from you the volume of this, in terms
23   if they ask for these kinds of documents.  What are we talking
24   about at your end in terms of producing them?
25             MR. PARKER:  Your Honor, we received the -- Richard
```

1    Parker from O'Melveny & Myers for US Air -- we received their

2    document request about this time yesterday.  We are looking at

3    it and we are in fact meeting with the Government this

4    afternoon after court to start talking about search terms and

5    what's going to be involved here.  So far it looks as if we,

6    hopefully, can work something out.  More on that later.  But I

7    think we are going to try to work this out.

8            I don't agree with Mr. Ryan that he doesn't have

9    any documents on this issue; he has some.  But I believe this

10   is something that we ought to be able to work out, and if we

11   don't, we'd certainly take it to the magistrate judge.  But we

12   just got this yesterday and we are going to met with them

13   today.

14           THE COURT:  I guess what I was trying to get a

15   sense of in terms of the timing of what -- as I indicated, I'd

16   be less inclined to curtail the type of discovery requests

17   than I am to expedite and shorten the time period.  So, you're

18   going to have to move quickly, but have a broad opportunity to

19   get material.

20           I'm trying to get a sense of how much material

21   we're talking about.  That you're cooperating, that's

22   excellent, and that starts off the process on a very good

23   footing.

24           MR. PARKER:  At this point, I don't know.  I asked

25   my colleagues:  Does this look like something we can do in 20

1  days?  And the answer to the question is:  Most likely we

2  believe we can.

3          THE COURT:  Okay.  That's very helpful.

4          MR. PARKER:  Note a little fudging in there because

5  we're still working on it, but most likely we believe we can.

6          THE COURT:  Okay.  Then let me move back to the

7  plaintiffs.  The nature -- you did receive some documents from

8  third parties.  Can I make an assumption that there are some

9  additional materials that you need from them.  Again, I'm

10  trying to get a sense of volume and how this is going to work.

11          MR. RYAN:  Yes.

12          THE COURT:  You all have agreed among yourselves as

13  parties to have the goal of the 20 days.  Obviously, third

14  parties are not going to want to shorten time period, so I'm

15  assuming they'll take the full 30.  But I'd like to get some

16  sense of whether most of the information that you're doing or

17  equally -- or what percentage is from the airline and what is

18  from third parties?

19          MR. RYAN:  So, Your Honor -- and I think it's

20  helpful to tell you what we've gotten and give you a few

21  numbers.

22          THE COURT:  Okay.

23          MR. RYAN:  So, we've obtained third party

24  documents.  Again, no third party depositions but third party

25  documents from Delta, Southwest, JetBlue, United, and an

1    organization, ATPCO, which helps the airlines with pricing and

2    disseminates pricing information.

3              In total, from those from five parties, we've

4    received 8600 documents.  So, that's not a lot of documents,

5    Your Honor, from all give of those parties.  So, that's a

6    wind-up to answering your question, which is, we think there's

7    going to be substantial additional discovery from these

8    airlines and from ATPCO.  Now, Your Honor, in their -- they

9    haven't answered the complaint yet, and we'll see what

10   specific defenses they -- and, of course, they are going to

11   wait until we file our amended complaint --

12             THE COURT:  Right.

13             MR. RYAN:  -- which is perfectly acceptable to us.

14   We've agreed to that.  But there are other airlines that they

15   suggested, Virgin Atlantic, maybe Alaska Air, that may also,

16   they say, act as competitive constraints on the merged

17   airlines and remaining airlines.  So, there may be other

18   airlines as well.

19             But, as I spoke before, Your Honor, and as Your

20   Honor knows from reading the complaint, a lot of the case is

21   about interaction, some of it is about elimination of

22   head-to-head competition, and some of it is about interaction

23   among all the major airlines.  So there will be -- there will

24   be discovery from the other airlines and from ATPCO.

25             THE COURT:  If you were going to do percentages in

```
 1    terms of looking at the discovery, leave depositions out for a
 2    second, I'll get that --
 3                MR. RYAN:  Sure.
 4                THE COURT:  -- but if you're talking about
 5    interrogatories and document requests.  What percentage is
 6    coming from the airlines and what percentage, roughly -- and
 7    I'm not going to hold you to this -- but coming into it, from
 8    third parties?
 9                MR. RYAN:  Of what's left to do, Your Honor, is
10    that the question?
11                THE COURT:  Yes.  In terms of what you're going to
12    be doing going forward, not what you already have.
13                MR. RYAN:  I'll say --
14                THE COURT:  Approximately.
15                MR. RYAN:  No, no, that's okay.  I'll say this
16    because we do have a large volume that we're still working
17    through from the airlines.  But I would say that 30 percent of
18    what we're going to need is in the hands of other parties, and
19    that's a significant undertaking for us.
20                THE COURT:  Okay.
21                MR. RYAN:  That's a guess.
22                THE COURT:  They're not under my control, other
23    parties are.
24                MR. RYAN:  Nor ours, Your Honor.
25                THE COURT:  Okay.  So, that helps with that
```

1   question.  So, I'll leave you up here for another second here.

2   In terms of interrogatories, we were talking about documents,

3   interrogatories -- what areas are you pursuing in the

4   interrogatories from the defendant airlines?

5                    MR. RYAN:  Well --

6                    THE COURT:  Again, sort of -- I know you did 20

7   days, but I'm trying to get a sense of what generally --

8   categories or something that --

9                    MR. RYAN:  I think, as I stand here today, Your

10  Honor, and I'm drafting interrogatories, I believe we served a

11  couple last night on them because we took -- to heed the

12  Court's order to get going with party discovery.

13                   THE COURT:  Yes.

14                   MR. RYAN:  But I want to save some interrogatories,

15  quite frankly, for their defenses.

16                   THE COURT:  Right.  No, that's fine.

17                   MR. RYAN:  For their specific defenses.  So, those

18  won't go out until after September 10th.  But I think in the

19  hope that we will all focus on what is at issue, the

20  interrogatories will go to the issues that I already addressed

21  the Court about, the system integration, maybe witnesses.

22  Okay.

23                   Here is an interrogatories, Your Honor, that occurs

24  to me.  We have city pair markets.  That is the way the

25  airline industry has historically evaluated that, is to say:

1    Between Buffalo and Charlotte is a market.  Because if you're

2    flying to Charlotte, a flight to Richmond doesn't do you any

3    good.  So, city pair markets.  We have these city pair

4    markets.

5              Do they agree those are relevant markets or not?

6    That's an interrogatory that we want to put to them, and that

7    will certainly advance the ball.  Now, if they say yes.  If

8    they say, no, those aren't properly defined city pair markets,

9    then I guess the question is:  How would you define the market

10   between these two cities and what additional discovery is

11   required?

12             So, what we want to do is use the interrogatories

13   to identify witnesses, flush out their defenses, if that's an

14   appropriate word to use, and to focus on what is really at

15   issue.  That's what we hope to do with the interrogatories.

16             THE COURT:  Okay.  So, as a practical matter, the

17   focus really is more -- very specific on the interrogatories,

18   which is why there is a fairly limited number.  And the rest

19   of it really is more documents and depositions, if I were

20   going to characterize what the focus of the discovery is going

21   to be.

22             MR. RYAN:  Yes, I think that's right, Your Honor.

23   And some are in between interrogatories and document requests

24   are data requests, where we'll say, just give us -- this is a

25   data heavy industry, lots of computerized data.  So, in the

1   document request we'll be asking for data.  We have a lot of a

2   data, but we'll be asking for some more data.  And we'll need

3   some data from the third parties.

4          THE COURT:  Okay.  So, in terms of the -- looking

5   at the third parties, if I could summarize.  So, you did get

6   some third party documents originally, you said about 86,000.

7   And then so the --

8          MR. RYAN:  8600, Your Honor.

9          THE COURT:  8600, excuse me.  And I take it then

10  that what you're expecting, the scope of any additional

11  requests from third parties, either in terms of document

12  requests, that it may go beyond -- will it stick to the ones

13  that you had talked about or is it a combination of the other

14  competitors and then adding on somewhat the legacy airlines

15  and then some of the other airlines?

16         MR. RYAN:  I think that's essentially correct, Your

17  Honor, but I can think of -- I can think of one.  Ancillary

18  fees.  Baggage fees, ticket change fees.  So, as we allege in

19  the complaint, it's gone from a $1.5 billion source of income

20  in 2007 to $6 billion in 2012.  We will have some document

21  requests for the airlines.  We've made some, but we're going

22  to have some more about ancillary fees and how they determine

23  the set those fees and how closely -- where they set those

24  fees depends on what their competitors are doing.

25           So, I didn't mean to limit my -- there is a variety

 1   of issues, Your Honor, but I think we've discussed the central

 2   ones.  I think as well, on third parties, which we haven't --

 3   here's third party discovery that we haven't pursued from the

 4   corporations perhaps, to the extent that they are saying:

 5   Look, there corporate customers that American Airlines today

 6   can't serve because our network is insufficient.  That's one

 7   of their defenses.

 8          Well, we're going to want to get some limited

 9   documents and take some depositions from those corporations

10   that they identify that they're unable to serve, because of

11   course -- and the same for US Air.

12          THE COURT:  If I could just ask.  In terms of --

13   you obviously got some third party discovery, were they

14   cooperative?

15          MR. RYAN:  I don't know if they were overjoyed.

16          THE COURT:  In the context of --

17          MR. RYAN:  I think in fairness, Your Honor --

18          THE COURT:  I know that's a loaded question, but

19   I'll leave you to define what cooperation is.

20          MR. RYAN:  Yes.

21          THE COURT:  I'm trying to get a sense of whether,

22   obviously, they'll take the full time and I understand that

23   and they may have issues with requests, et cetera.  But in

24   general, can I anticipate some resistance or will they -- has

25   that not been the case?

1          MR. RYAN:  First of all, I think they were largely

2   cooperative to date, Your Honor.

3          THE COURT:  All right.  Well, that's good to hear.

4          MR. RYAN:  Now, in the complaint, some of the

5   airlines, some of the legacy carriers when they read the

6   complaint may decide, well, we don't want to be quite as

7   cooperative as we were.  I don't know that, it's possible.

8   So, it's difficult to predict.

9          But, by and large, these are corporations

10  well-represented by counsel.  They want to comply this -- just

11  from my own experience, they want to comply with the law.  Our

12  assumption is they will be cooperative, but they will also --

13  as I think we talked a little bit about in Your Honor's

14  chambers this morning -- about confidentiality, who's going to

15  see their documents.  These are going to be some of the

16  requests, it will be highly sensitive.  And some of these

17  third parties will want to be absolutely assured that they're

18  not turning over anything we don't need, and that it's not

19  going to go places that it shouldn't.

20         THE COURT:  I understand.

21         MR. RYAN:  That takes times sometimes.  That just

22  takes time to work out.  Even parties acting in good faith

23  when it comes to sensitive third party discovery can chew up

24  time, Your Honor.

25         THE COURT:  Okay.  All right.  I think, before I

1   let you sit down, let me make sure I covered what I needed

2   from you.  Okay.  I think we're good.

3          So, let me ask a few questions on this end.   In

4   terms of from the defendants, what's the scope of discovery

5   that you want to ask from the plaintiffs or is your discovery

6   going to be focused on getting -- it sounds like you're going

7   to get what documents Justice has from third parties.  So,

8   where is your focus going to be?

9          MR. PARKER:  Our focus -- I'll speak to the Justice

10  Department, but our focus is going to be on third party

11  discovery from other airlines because one of the main points

12  we're making here is that this is a very dynamic industry in

13  which Southwest is the largest carrier, in which there's a lot

14  of new carriers doing very exciting things.  And you've Delta

15  and Continental with incredibly good networks.  And the

16  purpose of this merger is to make us more competitive with

17  them.

18          And, therefore, third party testimony from these

19  other airlines, we believe, is going to be very important to

20  give an accurate picture of this industry as opposed to what's

21  in their complaint.  And so we will be looking at what they

22  have from third parties and we will come up with our own

23  discovery plan for third parties, but we will be talking to

24  these other airlines.

25          Secondly, it is a fact that we will establish that

1  corporate customers do not find American or US Airways

2  attractive because of network issues.  We have customers

3  banging down the door trying to buy the new network from us,

4  which we hope we can do once this merger closes.  So, there

5  will be discovery in that regard.  And I suspect there will be

6  customers sitting in this stand, saying:  We want to do

7  business with this new entity, it is pro-competitive.

8          Finally, with regard to the Justice Department, we

9  gave them our document demand informally about two weeks ago.

10  We served it yesterday, formally, with Your Honor's

11  instructions.

12          THE COURT:  Right.

13          MR. PARKER:  So, they have it.  We're in essence

14  asking for the third party documents they have.  We're in

15  essence asking for whatever affidavits or depositions that

16  they have.  But there is one other issue, and it may be an

17  issue.

18          They approved other mergers.  They approved

19  Delta/Northwest.  They approved United/Continental.  And we

20  believe they used a fundamentally different standard in doing

21  that than what they're doing here.  And that under that

22  standard, our merger passes muster by 10 miles.  And so we

23  wonder why we're here and we are asking for documents

24  underlying that decision because we feel that this decision

25  was fundamentally incorrect and out of touch with what they've

1   done in previous mergers.

2           I suspect that there may be some proceedings before

3   the magistrate on those documents, but we are most certainly

4   looking for those.

5           THE COURT:  Are you talking about the special

6   master, I hope?  You said magistrate.  Okay.

7           MR. PARKER:  Yes.  That's what I meant.  Yes, the

8   special master.

9           THE COURT:  Okay.  Because we did discuss and

10  everybody has agreed that we will have a special master that

11  can devote full time and attention to any issues that come up.

12          MR. PARKER:  Yes.  But they have had our document

13  demand for awhile.  It seems to me, at least as to what we can

14  agree on, that ought to be doable within the 20 days we've

15  talked about in the report.

16          THE COURT:  Before I move to my next question --

17          MR. PARKER:  Thank you.

18          THE COURT:  -- do you want to respond for some

19  reason?

20          MR. RYAN:  I do, briefly.  I want to respond to

21  Mr. Parker's point on our other investigations.

22          THE COURT:  All right.

23          MR. RYAN:  So, in the document requests that they

24  served on us last night -- and they had provided a draft

25  previously, so it didn't come as a surprise last night.  They

1    have four or five specifications that request essentially, as

2    I read it, all documents related to our investigation of the

3    US Airways and American West merger, the Delta/Northwest

4    Airlines merger, the United and Continental merger, and the

5    Southwest and AirTran merger.

6           Now, Your Honor, I haven't checked specifically,

7    but I'd be willing to bet something that that's millions of

8    pages of documents.  So, while they are here saying:  We're

9    ready to go.  They're asking us to undertake the effort to

10   produce millions and millions of pages of materials that,

11   presumably, everyone is acting in good faith, that they're

12   going to review once they get it, that they have some idea of

13   what they're looking for.

14          And it doesn't seem to fit with us.  There is some

15   dissidence there, if you will, Your Honor, between their

16   saying:  We're ready to go -- and requests to us for millions

17   of pages of documents on -- and I don't want to argue it here,

18   Your Honor, although you will hear it, but what we did in past

19   mergers is not a defense to this merger.

20          THE COURT:  I can see -- I can see a legal issue

21   coming up.

22          MR. RYAN:  It will come up.  And, so, Your Honor,

23   in looking at this schedule -- in determining the schedule --

24   because we understand the Court wants, and we agree,

25   expeditious and practical.  These are some massive document

1   requests.  And there's two sides to that coin.  We have to

2   gather the materials and produce them, they have to take the

3   time to review them.  So, thank you, Your Honor.

4                THE COURT:  Okay.  Let me just say that, hopefully,

5   what will done in terms of the other mergers is that you will

6   come up with a way of narrowing this down, because it doesn't

7   make a lot of sense -- this is only going to work for both

8   sides with the expedition, is if you narrow it down and you

9   figure out what you need and you make this a lean mean machine

10   moving forward or this isn't going to work.

11                I'll set a schedule that will be expedited, but

12   it's going to mean that you all have to -- I'm going to set

13   statuses -- actually that can meet this -- and are not going

14   to be unreasonable in terms of what you actually need.

15                MR. PARKER:  And we most certainly intend to do

16   that.

17                THE COURT:  All right.  As I say, I see lurking a

18   legal issue.  Let me move to sort of depositions.  One

19   question that I had is whether -- and I'll ask it of both of

20   you -- whether there are third party depositions that can

21   actually be scheduled before you get responses to written

22   discovery.  I'm trying to get a sense of whether you have to

23   get all the written discovery together and then you start

24   scheduling -- well, you can schedule depositions probably

25   beforehand, but you wouldn't actually do them until after you

1   got all the materials.  Because I notice in the proposals

2   there seems to be some indication or expectation that these

3   depositions are going to be occurring while you're still

4   collecting material, which may be possible, I don't know.

5           But I'm trying to get a sense as to whether the

6   depositions, since there's quite a volume that are being

7   requested, a big difference, as to whether any of these can be

8   done while this is going on, which would be both depositions

9   of third parties or, frankly, of the defendant parties.  And

10  I'm going to ask, also, in the context of experts, as to

11  whether you've focused in on some areas of expertise that you

12  already know you're going to be able to do depositions for?

13          So, I'm trying to get a sense of at what point

14  you're starting all the depositions.  I'll start with you and

15  then I'll hear from the other side.

16          MR. RYAN:  I think the Court is certainly correct

17  that we don't need every document before we take any

18  deposition.  I agree with that proposition, absolutely, Your

19  Honor.  I hesitate only because -- let's take a third party to

20  make it simple.  So, say we make a request to United Airlines

21  and we want to take a deposition of United about the slots

22  issue at Reagan Airport.

23          So, the merger results in 70 percent of the slots

24  at Reagan being controlled by the merged firm.  It may very

25  well be the case that we could say to United:  Please give us

1   the following documents on slots.  And while you're gathering

2   the other documents we've asked you for, once we have those

3   we'll take the deposition -- so that we don't -- so that we

4   can do it, you know, once we have a discrete set of documents

5   that go to a particular issue.

6          I am reluctant in a case of this -- where some of

7   the issues are complex -- to commit to taking depositions of

8   very sophisticated and well-represented individuals before

9   we've had a chance to look at the relevant documents.

10          THE COURT:  I'm just trying to get a sense -- I'm

11   not going to micromanage how you do all of this.  But I'm

12   trying to put in timeframes for that are not going to be

13   ordered for you to do things, but -- other than the typical

14   things which you have sort of set out.  But I'm trying to

15   figure out, roughly, what you would be doing in between here

16   to figure out whether this is a reasonable period of time to

17   let you do it.

18          So, that's what I was trying to figure out whether

19   or not there would be some depositions.  I'm assuming that you

20   can identify who should be deposed, even if you wait to get

21   your documents -- that you'll start setting that up because

22   you need to make sure they are available and --

23          MR. RYAN:  Certainly on many of the deponents we

24   will be able to identify those people, Your Honor.  That's

25   right.

 1              THE COURT:  Okay.  You indicated you deposed, I
 2   think, either seven or eight people.  Who generally were they?
 3   You don't have to give me names, but were they executives --
 4   I'm just trying to get some sense.
 5              MR. RYAN:  So, there were seven executives from the
 6   two airlines total who were deposed, and I do have their
 7   names, but --
 8              THE COURT:  I don't need the names.
 9              MR. RYAN:  And, again, I think it's -- so, what we
10   did was -- we said:  We're interested in this aspect of your
11   operations, say, network planning.  So we had documents, and
12   we said:  It appears to us that this fellow is responsible for
13   network planning, let's take his deposition.  So, those
14   depositions were taken of US Air during a three-week period in
15   July, and of American Airlines right at the end of June, and
16   then through mid-July.  Three of American and four of US Air.
17              So, they were helpful to us in our investigation in
18   testing what we had been told.  But we -- and I'll come back
19   to this -- we had just received this large document production
20   in April and May.  So, we had not gone through the documents
21   to any degree of thoroughness before we took those
22   depositions.  But we did have those seven depositions.  And if
23   I'm recalling correctly, Your Honor, there were no third party
24   depositions, just those seven.
25              THE COURT:  Okay.  So, who do you anticipate

1    deposing?  As I understand it, the plaintiffs have asked for
2    50 depositions per side, the defendants have proposed 10.  So,
3    there's a big difference.
4                 MR. RYAN:  Right.
5                 THE COURT:  They don't include, as I understand it,
6    experts.  I'm assuming they include 30(b)(6), which is counted
7    as one deposition, even though you might have more than one
8    person actually answering the questions.  So, there's
9    obviously a totally different approach here in terms of the
10   depositions.  So, I'm trying to get a better sense of who you
11   will be deposing.  Are they mostly -- obviously, you indicated
12   just from the topics they are going to be some of the parties
13   but -- party opponents, but you also seem to indicate that
14   there would be third parties.
15                So, can you give me some idea why you think you
16   need the 50 depositions?  I have to say, I did look -- it's an
17   interesting exercise to go through and try and figure out all
18   the mergers.  I focused on recent mergers and DOJ, and then
19   looked at the value, roughly, of the merger, none of which fit
20   perfectly, but trying to get a sense in terms of where this
21   merger fits in, in sort of -- Oracle is a little less, AT&T is
22   more.  I have to say that none had 50, other than H & R Block,
23   which went through very quickly, which had only four.
24                MR. RYAN:  That's correct.
25                THE COURT:  Everybody else had either 25, 30, 35.

1    So, I was trying to figure out why you wanted 50, what's

2    different about this case?

3            MR. RYAN:  Well, I think there are two parts to it,

4    Your Honor.  So, for example, in the Oracle case, I believe my

5    notes reflect there were 48 CID depositions.  So, there were

6    more depositions going into the case than there were in this

7    case where we've only had seven.  But I think the real issue

8    here, Your Honor, is that when it's the -- it's the different

9    markets.

10           There are a number of different markets that are

11   addressed in this complaint.  So, it's these local markets

12   where there's head-to-head competition, it's the issue of the

13   slots at Reagan, it's the issues of relating to this Advantage

14   Fare pricing and the impact that has across the major carriers

15   in the United States.  And then there's this whole issue or

16   coordinated interaction.

17           So, it's not -- if we've referred to it in our

18   papers as complexity, I think the dollar size is a helpful

19   proxy for the complexity, but really the complexity here

20   arises from the different issues that we have to address, the

21   different competitive problems that are raised by this large

22   merger of these two very, very significant airlines.

23           So, that's -- I think it's because of the

24   boundaries of the lawsuit, Your Honor, that's requiring the

25   depositions.  But there's no question, 50 is a -- it's a lot

1   depositions, it's a big case, and that's really -- and there

2   are a lot issues in the case.

3           But I'm not going to tell you 50 depositions is not

4   a lot, of course it is.  But the way we broke it down, Your

5   Honor, very roughly -- and when I say rough, this is on the

6   back of a -- last night --

7           THE COURT:  -- no, no.

8           MR. RYAN:  If we thought of 30 depositions of the

9   parties, that's 15 deposition of American and 15 of US Air.

10  And this includes 30(b)(6), as the Court indicated, and named

11  depositions.  And that would leave 20 depositions of third

12  parties.

13          Now, Your Honor, we said up to -- we have no

14  interest in taking a single deposition that we feel we don't

15  need to take.  We're going to have plenty to do.  But at this

16  point in time, in looking at the complaint and in knowing what

17  we know about their views of our case, that was the best

18  estimate we could come up with.

19          THE COURT:  Well, let me -- I'm sorry I didn't

20  meant to --

21          MR. RYAN:  I'm sorry.  No, I was done, Your Honor.

22  Sorry.

23          THE COURT:  Let us assume that I gave you 50 or

24  something close to that, I mean, are you prepared -- because I

25  indicated to you, I'm more willing to give you, you know,

1   wider discovery as long as you do it quickly, which means that

2   to do these you're going to have to do a lot of simultaneous

3   depositions.

4            Are you prepared and have the resources to do that?

5            MR. RYAN:  Yes.

6            THE COURT:  Okay.  All right.  Then let me ask from

7   your perspective -- let me start with what you're planning on.

8   You have 10, so you obviously have an idea precisely who you

9   want to depose.

10           MR. PARKER:  When we said 10, we meant 10.  There

11  are several third party airlines that I think are very

12  important, Southwest, JetBlue, United and Delta, for example,

13  and there's probably others that we would want to depose.

14  That's how we came up with 10.  If Your Honor were to order me

15  to take 50 depositions, I don't think I could come up with a

16  list.  I couldn't think of that many people.

17           THE COURT:  I'm not ordering to you do --

18           MR. PARKER:  I know you're not.  I'm just telling

19  you, this is not a 50 deposition -- when we said 10, we meant

20  10 plus trial witnesses plus experts.  This is --

21           THE COURT:  That's --

22           MR. PARKER:  This is a big industry, there's a lot

23  of dollars involved, but the case is not that complicated, and

24  it doesn't require -- this is not U.S. versus Microsoft or

25  FTC versus Intel.  The case is not that complicated and I

1   don't believe we need -- we said 10, we meant 10, and we'll

2   stand by it.

3            THE COURT:  Okay.  So, let's assume the Court

4   gives -- I'm going to make it even, you can use them or not.

5            MR. PARKER:  All right.

6            THE COURT:  But do you have -- I assume you have

7   the resources to make sure that these things are done

8   simultaneously in defending them or doing whatever you're

9   going to do?

10           MR. PARKER:  Yes, we do.

11           THE COURT:  Okay.  All right.  Because that's the

12  way to expedite it.

13           MR. PARKER:  Yes.

14           THE COURT:  Is to make sure that everybody can do

15  it.

16           MR. PARKER:  Yes.

17           THE COURT:  All right.  Let me move to experts.

18  There were two approaches here.  Plaintiffs propose

19  simultaneous disclosures.  Defendants propose staggered

20  disclosures with the plaintiffs going first.  I will tell you,

21  going into this, my inclination is to do the staggered

22  disclosures, and I'll explain why and you can respond to it.

23           Obviously, plaintiffs have the burden.  And if you

24  do it -- producing it with your going first, it may narrow the

25  scope of the expert testimony the defendants need to

1    introduce.  Now, I'm assuming you're going to have some

2    discussions beforehand as to who, you know, in terms of who is

3    going to be -- but we're talking about reports -- who might be

4    the experts, et cetera.

5            But I still think that once it's clear who the

6    plaintiffs are going to have as experts, it may -- at least I

7    have found in other cases -- that it may limit in terms of who

8    the defendants decide to actually list.  It may or may not,

9    but that's why I would be inclined to do that.

10           It would involve doing plaintiffs first,

11   defendants, and I would be inclined to give -- you didn't put

12   it into your procedures, but I would be inclined to give a

13   little bit of time in there to do supplementation and/or

14   rebuttal, depending on whether they are rebuttal, whether the

15   experts are in the context of rebuttal or whether they're

16   actually proponents of particular views and not really

17   rebuttal, or they could be a combination.  So, I would give an

18   additional period in there.

19           So, let me start with -- from you on that -- and

20   then I have a couple of other questions.

21           MR. RYAN:  So, Your Honor, I think under their

22   proposal for the November trial date, they had us producing

23   our expert reports on October 4th.

24           THE COURT:  Well, I understand -- let me just deal

25   with it strictly -- there is a question about whether you

1    start -- when you start that, which I think is a separate one.
2    My question is, leaving aside when you would do this, if
3    you're at the point where you're ready to produce the reports,
4    why would you not have you do it first which, as I said, may
5    inform what they do and may limit this in terms of doing it,
6    as opposed to the two of you doing it at the same time where
7    you're not going to necessarily know what all your experts are
8    going to -- or the scope of them.

9              Since it's going to be not a leisurely schedule, a
10   lot of discussions about who's doing what, and the experts
11   probably aren't going to take place until you actually get the
12   reports.

13             MR. RYAN:  I guess two comments on that, Your
14   Honor.  One, as to issues where -- and Your Honor referred to
15   the burden of proof -- let's take affirmative defenses and
16   maybe we'll use that term generally --

17             THE COURT:  Right.

18             MR. RYAN:  -- efficiencies and synergies.  On that
19   issue, it seems to me they should -- since they will
20   effectively have the burden of proof on that, we're not going
21   to start our case by negating their efficiencies.

22             THE COURT:  Right.

23             MR. RYAN:  They should have to go first on that.
24   So, they would exchange the same day that we exchange on those
25   issues where we have the burden of proof, if that's the way

1   the Court would proceed -- would like to proceed.

2            THE COURT:  Well, I'm asking.

3            MR. RYAN:  Yeah.

4            THE COURT:  I'm trying to figure out a way of

5   cutting back on having a lot of experts that then drop out so

6   people have wasted time with them.

7            MR. RYAN:  Right.  And picking up on that point,

8   Your Honor, I think it makes sense.  And I think their

9   proposal was not this.  We submit our report on those issues,

10  we have the burden of proof, they submit theirs, and then we

11  have depositions.  They may have been contemplating we submit

12  our report, they depose our person, and then they give their

13  report.

14           And I think if people are going to drop out, they

15  will drop out at the exchange of reports.  Why go to the

16  trouble of the deposition if experts are going to drop out?

17  So, it would be our report, their report, our expert deposed,

18  their expert deposed.

19           THE COURT:  I, frankly, not going to get into when

20  you do the depositions --

21           MR. RYAN:  Okay.

22           THE COURT:  -- but to leave some time because I

23  think that -- I don't want to micromanage it so much that you

24  have to come back to the Court about doing things.  I mean, as

25  it progresses, this may shift around in terms of what --

 1   depending on what the reports are and what the experts -- I'm

 2   assuming, and I'll ask this question shortly, you have some

 3   sense of what topics they're going -- these are likely to be

 4   expert reports in.

 5          So, your proposal would be -- the simultaneous

 6   would be on those that you have the burden of proof.  The

 7   defendants' would be on whatever their affirmative defenses

 8   are.  And then you would have the next one be whatever

 9   rebuttal to each one of these.  Is that the way you're

10   proposing it?

11          MR. RYAN:  Yes, Your Honor.

12          THE COURT:  Let me ask them on this before I get to

13   some of these other questions.

14          MR. RYAN:  Okay.

15          THE COURT:  We didn't get into -- we just said

16   simultaneous/staggered without getting into what they were

17   actually going to be about.  So, would you have a problem

18   doing it with each of you on your burdens on proof, and then

19   the rebuttal so you'd know what their positions are and they

20   would know yours.

21          MR. PARKER:  The reason that we proposed what we

22   have, even on efficiencies, is that we have given them nine

23   separate reports, including on efficiencies.  We've given them

24   efficiencies reports.  We got $500 million --

25          THE COURT:  Are these expert reports?

1          MR. PARKER:  Yes, nine of them --

2          THE COURT:  So, are they --

3          MR. RYAN:  -- in the last several months.

4          THE COURT:  So, are these the expert reports that

5   you would characterize as your affirmative defenses?

6          MR. PARKER:  These are reports that we believe are

7   absolutely accurate.  And what we need to do is see what their

8   case is and then respond to it.  So they -- we've brought two

9   economists in to meet them, and I will tell you right now,

10  those are our economic witnesses, and this is their work

11  product.  I got a list of nine of them.  And what we really

12  need to do is look at our efficiencies study, in light of what

13  they say is wrong with what we did, because clearly they

14  thought there's something wrong with what we did, and then

15  we'll respond to it.

16         THE COURT:  So, as I understand it then, are your

17  expert reports the typical expert report or would they have to

18  redo these reports?

19         MR. PARKER:  Our expert reports would certainly

20  meet the standards under Rule 26.  But, obviously, if we -- if

21  they come up with some new twist or something we haven't

22  thought of, we'd have to change them, but they are detailed.

23  Not only did we give them the reports, we brought the

24  economists in, and said:  Ask questions.

25         THE COURT:  Okay.  So, let me see if I understand

1   this.  At this point it's your view, unless it changes, but

2   starting today, that the nine expert reports and the experts

3   themselves are the individuals that you would see as

4   presenting the affirmative defenses.  Is that an accurate way

5   of describing it?

6           MR. PARKER:  Yes, subject to modification based on

7   what they -- based on what the other side does.

8           THE COURT:  So, your view would be is that

9   plaintiff would provide those in terms of their view of the --

10  what we'll call it -- I'm doing this in summary terms, but in

11  terms of the burden of proof.  And then you would, in essence,

12  produce these expert reports, which they presumably would know

13  about.  Is that accurate?

14          MR. PARKER:  With appropriate modifications based

15  on what we see from them.

16          THE COURT:  Okay.  And then I had built in,

17  frankly, something that would indicate that you could have

18  some rebuttal or supplementation for those reports that were

19  already done.

20          MR. PARKER:  I mean, Mr. Ryan would be right in the

21  ordinary case where they haven't seen any of efficiencies

22  analysis, but they've seen it.  They got $500 million.  I'd

23  like to know what's the matter with it?  What's the matter

24  with that?

25          MR. RYAN:  I'll be happy to respond.

1          THE COURT:  I don't want to hear what's wrong with

2    it.

3          MR. PARKER:  At the appropriate time.

4          THE COURT:  We're not getting into a motions

5    hearing here.  Let me ask you to sit down.  I'm trying to get

6    the procedure here.  Let's deal with the procedure for a

7    second.  So, let me hear from counsel.  If, as he is stating,

8    the expert -- these are the nine experts they're going to use,

9    and you have the reports as they have presented their

10   affirmative defenses with -- you know, that they may, under

11   their staggered theory, they may add some things based on

12   whatever you come in, would that not provide you with what you

13   would need in terms of doing it staggered?

14         MR. RYAN:  I don't think so, Your Honor.

15         THE COURT:  Why?

16         MR. RYAN:  Let me give you an example.  First of

17   all, the nine is a bit of -- a couple of reports I think

18   counsel is referring to dealt with flights between

19   Philadelphia and London Heathrow, which is nowhere an issue in

20   our complaint.

21         So, in the course of an investigation lots of

22   issues are discussed and papers are exchanged and

23   conversations are held on issues that don't find their way

24   into the complaint.  Conversely, there are issues that find

25   their way into the complaint that were not the subject of the

1    extensive discussion.  I just want to put that out there.

2              Your Honor, let's take the issue of efficiencies.

3    Synergies and efficiencies resulting from the combination of

4    the two airline's networks.  My memory is that the papers that

5    they have given us are based on hypothetical schedules where

6    they just take the two existing schedules, and they say:

7    Those two schedules will remain identical after the merger.

8              Now, that's not the case.  And they started to do

9    work now to integrate those schedules.  So, I don't think that

10   that efficiencies analysis is going to be their actual

11   efficiencies analysis because it's not based on reality.

12             THE COURT:  Well, they seem to indicate that it

13   would.  That's why I'm asking the question.

14             MR. RYAN:  If counsel is saying:  That's it,

15   that's -- because it's not.  They were quite clear with us

16   that they haven't done the integration planning that they

17   needed to do, but hypothetically if you just took their

18   existing schedules, those are the efficiencies that would be

19   generated.  That's my memory of our discussions with them,

20   Your Honor.

21             THE COURT:  Do you want to respond to this?  I

22   don't want to get too --

23             MR. PARKER:  We're getting into this --

24             THE COURT:  -- but I'm trying to get a sense of

25   which of the procedures works and is the most efficient and

45

 1    fair.

 2            MR. PARKER:  Your Honor, we did it exactly the way

 3    they wanted us to.  In the last case somebody did a

 4    hypothetical schedule, an integrative schedule, and they said:

 5    Well, that's not right because we don't know if that's going

 6    to work.  I just want you to staple the two schedules

 7    together.  We said:  Fine, we'll do that.  So, we did that.

 8    And we came up with $500 million, and that is conservative.

 9    All we were doing is exactly what they wanted us to do.

10            THE COURT:  But the question is that that was in

11    the investigative part.

12            MR. PARKER:  Yes.

13            THE COURT:  You're now talking about defending your

14    position, which is slightly different than providing them

15    information that they have asked.  What I'm trying to get --

16    and I think -- I mean, he had I think a point to be made, that

17    it is useful to have the experts, in terms of when they have

18    the burden and what you have as the affirmative defense, to

19    get this at the same time so the next -- these are not going

20    to knock people out particularly.  Then you would go to the

21    next stage where you would be, presumably, rebuttal of each

22    others experts.

23            If you're indicating to me that they can rely on

24    these, and that's the question that I have, that's not really

25    the case because these are going to change --

1          MR. PARKER:  They are going to change.

2          THE COURT:  -- they're not going to be

3  hypotheticals, they're going to be something else.  Then, you

4  know, I think, even though I like the staggered idea, but as a

5  practical matter if you're basically both proponents as

6  opposed to a rebuttal, then it would be helpful to have

7  potentially at around the same time, to have them come in and

8  then have the next stage be the rebuttal to each others

9  experts.

10          MR. PARKER:  Your Honor, I can't say -- I can't say

11  it's not going to change because we don't know what their

12  position is going to be.  So, I cannot say that to you.  But

13  all I'm saying is that they do know what our efficiencies are,

14  and it seems to me they ought to be able to respond and say

15  what's wrong with it and we'll respond to that.

16          THE COURT:  Okay.  Anything else that you want to

17  raise on this issue, and then I have a couple of other

18  questions anyway?  I was just trying to get a better sense of

19  how this was all going to work.  As I understand it, what you

20  want to do is you would present -- the expectation is you

21  would present what you view is your experts as the proponent

22  going forward --

23          MR. RYAN:  Right.

24          THE COURT:  -- in other words, they're not rebuttal

25  to their defenses?

1          MR. RYAN:  Right.

2          THE COURT:  They would present, not rebuttal to

3    your position, but whatever their affirmative defenses.  And

4    then the next stage would be rebuttals to each -- they would

5    rebut what you have and you would rebut what they have, if

6    that's what you wanted to do.  Is that the procedure you're

7    thinking of?

8          MR. RYAN:  Yes, Your Honor.

9          THE COURT:  Okay.  At least I understand your

10   position.  I'll think that through in terms of how to do it.

11   I have a couple -- unless you want to say something else on

12   this -- I have some other questions.

13         MR. RYAN:  Could I give a very small example of why

14   the real world matters when we're measuring efficiences and

15   not the hypothetical world as we're shown to date.  As I

16   understand it, their efficiencies numbers are very sensitive

17   to eliminations of flights.  That is to say, if they eliminate

18   flights you're going to see very large ramifications for their

19   efficiencies analysis.

20         So, to say, well, they're going to base it on a

21   hypothetical and not reality, and counsel did, and I

22   appreciate it, just acknowledge it -- they are working on the

23   real schedule now, the real efficiency template.  So, in a

24   case of this importance to millions of Americans and

25   consumers, all we're saying is, let's have the efficiencies

1   analysis based on reality and not hypotheticals.

2         THE COURT:  Okay.  How many experts are you

3   thinking of, I mean, at this point going forward?  What are we

4   talking about?  What's the universe?  In part, presumably

5   there will be depositions of them, so I'd like to get some

6   sense of the universe of what we're talking about.

7         MR. RYAN:  I think, Your Honor, we're thinking at

8   this point of three.

9         THE COURT:  Three all together or three going

10  forward as -- in your theory of your burden of proof?

11        MR. RYAN:  That's a good question, Your Honor.  It

12  may be two and one.  It may be two and one.

13        THE COURT:  Okay.  So, three would be the universe?

14        MR. RYAN:  That's the current thinking.

15        THE COURT:  Okay.  And how many are you thinking

16  of, roughly, in terms of -- both -- and if you want to split

17  it into affirmative defenses and rebuttal or however you want

18  to do it, but what's the total, roughly?

19        MR. PARKER:  Your Honor, we have three -- excuse

20  me, we have two economists, one of whom will focus

21  principally, but not exclusively, on the efficiencies.  The

22  other one will focus on competitive issues.  We may engage an

23  industry expert to talk about the competitiveness of this

24  industry today and going forward.  I don't have that right

25  now, but that's definitely a possibility.

1                  THE COURT:  So, you're talking roughly about three

2       and three.

3                  MR. PARKER:  I'm sorry.

4                  THE COURT:  You're talking about both sides have

5       approximately, going into this, three and three?

6                  MR. PARKER:  Yes.  Two economists definitely, and

7       they know who they are, and the third we're looking at and

8       we'll make a judgment fairly quickly.

9                  THE COURT:  Okay.  To what extent do the experts

10      need the fact discovery before completing, say, their initial

11      reports -- or if you can separate out which -- an expert in a

12      particular field who may not?

13                 MR. RYAN:  Well, I will start backwards with the

14      efficiencies expert that we have.  That's where -- there is a

15      lot of work to be done there.  And, of course, he needs to see

16      their report.  Your Honor, there is a fair amount for the

17      experts to do.  We have -- of course, we've talked to experts

18      we have in mind who we're going to use.  But a lot of our work

19      in the investigation is done in-house by our economic group,

20      our economic analysis group.  And so our outside testifying

21      experts, as they should, are confirming for themselves.  So,

22      there's work to do.

23                  And they want to see -- again, the discovery that

24      we're going to seek, the additional documents and deposition

25      testimony, are important to the experts because the experts

1   want to compare, obviously, their theories to the record

2   evidence in the case.

3            THE COURT:  Okay.  So, from your perspective, do

4   they -- are your experts -- because if I set dates, they are

5   outside dates, people can produce things earlier, they never

6   do, but you always hope sometimes.  Are your thoughts that

7   they could do it without or do they all need really probably

8   fact discovery, to be frank.

9            MR. PARKER:  Some fact discovery would help.  We

10  proposed October 25 for our expert reports, and we would

11  intend to make it on that time no matter what the state of

12  fact discovery is.

13           THE COURT:  Okay.  All right.  Let me move to

14  requests for admissions.  Plaintiffs asked for 50 per side,

15  defendants propose 10.  I mean, usually requests for

16  admissions are -- can narrow the scope of the issues, which

17  stipulations may not, assuming there were any.  I looked at,

18  again, sort of these other cases.  Oracle had unlimited.

19  H & R Block had 10 and AT&T the 50.

20           One question is why the plaintiffs want 50, in

21  terms of -- if you give me an explanation.  Since I didn't get

22  an explanation why you thought that was necessary.  And can

23  you respond to requests for admission within seven days?  I'm

24  looking at my schedule.

25           So, one is what -- and I don't know in other cases

1  of this nature whether it actually has narrowed things down or

2  not.

3          MR. RYAN:  They're an imperfect tool, Your Honor, I

4  will readily concede that.

5          THE COURT:  Right.

6          MR. RYAN:  Can we answers -- can we respond to

7  their requests to admit in seven days?  I would think that we

8  could.  I think they do -- our concern is:  What are their

9  specific defenses going to be?  Not just their theoretical

10 defenses that their experts are going to put forth.  But what

11 are their defenses to the factual allegations in the

12 complaint?  Our allegations about head-to-head competition.

13 How we've defined markets.

14          We do think that requests to admit can help us

15 there.  I do think this, it's a relatively easy exercise for

16 them, if they -- we're not prepared to admit that in good

17 faith, I mean, they can deny them.  But if it would help the

18 Court, we could split the difference or we'd be happy to back

19 off the 50.

20          THE COURT:  Okay.  I thought I'd get a sense.  What

21 about from your perspective?

22          MR. PARKER:  Judge, maybe it's just me, but I've

23 never found them very helpful in these cases.  And I've done

24 several merger cases, and we've generally agreed with the

25 other side -- with the Government to have no interrogatories

1   or RFAs.  So, we propose a limited number, but I find them of

2   limited utility.  If Your Honor is inclined to allow some, if

3   they can answer them in seven days, so can we.  But my view is

4   zero would be a perfectly good number from our point of view.

5             THE COURT:  Okay.

6             MR. PARKER:  Thank you.

7             THE COURT:  The protective order that -- and I had

8   indicated to the parties in chambers that -- they had produced

9   the protective order and I will be prepared to get it out

10  today.  The one question that was in there was whether outside

11  counsel for the Unsecured Creditors Committee, and I realize

12  the role they have, they are amici, along with various unions,

13  and I certainly reviewed the materials related to their

14  requests for an expedited trial.

15            The issue seem to be -- and third party documents,

16  as to whether they would have access to confidential documents

17  if third party did not consent to their having it.  It was my

18  view that it will make third parties less likely to comply

19  with subpoena requests.  And the other question, frankly, is

20  that we will have disputes about whether they wish to provide

21  it or not.

22            So, at least going into this I will -- if the third

23  party information -- if they are unwilling to have their

24  material shared with the Unsecured Creditors Committee, then

25  they will not -- that material not be shared.  I've indicated

1    that if there's something that comes up, certainly through

2    defense counsel, you can raise the issue with the Court, if

3    there's some particular reason why it's important for them to

4    have something.

5              But I think going into it, if we want to have this

6    expedited, which everybody does, that the fewer problems with

7    discovery disputes about producing materials, and third

8    parties are not under my control, so I can't require them to

9    do much.  If they have confidential information, they are

10   going to have concerns about how far out the information goes

11   and how it gets used.

12             So, my initial protective order will not include a

13   provision that the Unsecured Creditors Committee will get

14   third party documents that the third party producers of the

15   documents are not willing to have shared with them.  The issue

16   can obviously be revisited at some point.

17             We talked a little bit about, but perhaps we can

18   bring up a little bit more, in terms of the trial date, the

19   defendants indicated about 10 court dates, in talking to

20   counsel in the jury room.  Plaintiffs indicated that -- I need

21   to block something off on my calendar -- that maybe that is a

22   little too strict, and that I need to give some leeway there

23   in terms of it potentially being longer.

24             And, perhaps, having asked the question, maybe we

25   could focus a little bit more.  As I understand it, there will

1    be some fact witnesses, but the majority will probably be

2    experts.  And I am going to get -- talk to you at a later

3    point, I'm going to bring you back probably in early October

4    when you've gotten some of the discovery to discuss, the

5    nitty-gritty of what we do for the trial and what needs to be

6    done in terms of filings, et cetera.

7              I would certainly do the pretrial briefing on legal

8    issues earlier than you're proposing so that I would have a

9    sense of whether there's any disputes or sort of what the

10   scope is.  And then there's a whole series of other deadlines

11   for filing witness lists, final exhibit lists, whether it's

12   presented live or on paper.  Deadlines in formatting for the

13   pretrial briefing, and then findings of fact and conclusions

14   of law.

15             Based on a request for expedited, that probably

16   would be done afterwards.  I don't think there's any time to

17   do it beforehand and have it be actually useful, which I don't

18   think is a problem in the sense that it will be informed by

19   the trial, particularly since it's turning out to be a little

20   bit longer than I had anticipated.  I had hoped it was going

21   to be shorter.

22             But I take it you're thinking of some time between

23   10 to 15.  When I do trials we have the whole day.  I don't

24   put anything else in it.  So, it will be -- unless some

25   emergency comes up -- I will generally set them -- you come in

1    at 9:00, we start at 9:15 -- 9:00 if there's some issue to

2    start with.  9:15 we start and we go to 5:00.

3            So, are you still of the view that you actually

4    need 10 to 15 days?  Because I want to make this as compact --

5    I do this with jury trials and there's no reason not to do it

6    with a nonjury.

7            MR. PARKER:  Your Honor, my experience is that this

8    would be a 10-day proposition, and that would be a reasonable

9    estimate.

10           THE COURT:  How many witnesses do you anticipate --

11   would you need live?  That you think -- and I realize this is

12   very early on -- but live witnesses as opposed to, say, using

13   depositions for some of this?

14           MR. PARKER:  It would be certainly at least two

15   executives from US Airways.  At least one or two from

16   American.  And we would want those to be live because it's

17   important that these folks take you through the reason for the

18   merger and its likely effect.

19           We would have a customer or two, that could perhaps

20   be done by video deposition.  And then we have the experts,

21   which would be live definitely.  So, that would add up to

22   probably six live witnesses.  What I would suggest is 10 days

23   and divide up the time 50/50, and put everybody on the clock,

24   and we will use our time wisely.

25           THE COURT:  So, six -- and your six live witnesses

1  you're expecting to take five days?

2          MR. PARKER:  Some of them will take less time than

3  that.

4          THE COURT:  In terms of --

5          MR. PARKER:  Approximately, yes.

6          THE COURT:  All of them will be done in a five-day

7  period?

8          MR. PARKER:  Yes.  Yes.  Excuse me.

9          THE COURT:  They must have a lot to say.

10         MR. PARKER:  Some of them --

11         THE COURT:  In other trials we usually go through a

12  lot faster.

13         MR. PARKER:  Some of them will not take that long.

14  You'll find that company witnesses, two or three hours of

15  direct --

16         THE COURT:  Okay.

17         MR. PARKER:  -- will be typical.

18         THE COURT:  I'm sorry.  What about from the

19  plaintiffs?  And whether you can anticipate some of them --

20  since this is not a jury trial -- some of them actually being

21  done -- I don't care whether they're video depositions.

22  Certainly, some of these things I can do on my own time, which

23  I'm willing to do, so that the time period for -- that we

24  would call trial would be actual live testimony.  It doesn't

25  mean your openings and closings wouldn't encompass whatever

1   you provided on paper or video.  And I would look at those

2   before we actually started the trial so that I would have it

3   in context -- or do it after hours or something -- in order to

4   have it has compact as possible.

5              MR. RYAN:  So, Your Honor, I've had a chance since

6   our conference to talk to my colleagues.  We don't think it's

7   15 days.  Okay.  We think 10 days might be doable.  We would,

8   as Your Honor knows better than I do, sometimes things get

9   extended.

10             THE COURT:  Right.

11             MR. RYAN:  But certainly 12 days at the absolute

12  max this trial could come in.  Now, we will have live

13  witnesses and I think it will be interesting.  Many of the

14  live witnesses we'll want to call are from the airlines.

15             THE COURT:  Give me some sense of, you know -- and

16  I realize this is the beginning of the process and this is

17  going to shift over time, but at least going in when I'm

18  trying to set a schedule, tell me roughly as defense counsel

19  did what the nature of them, not names, but the nature of the

20  testimony you would expect live.

21             MR. RYAN:  Well, for example, we would call

22  American witnesses to talk about, in fact, how well they are

23  able to compete for corporate business and the plans they made

24  in restructuring to fill any holes in their network.  American

25  is a very, very powerful worldwide brand name with an

1    excellent network.  So, we will call American people who will

2    testify --

3              THE COURT:  So, what are you talking about?  How

4    many witnesses?

5              MR. RYAN:  On all issues, Your Honor, or on that

6    issue?

7              THE COURT:  I mean, you don't have to do a

8    breakdown of what they are, but I'd like to know which ones

9    you're thinking must be live.  I know there's a tendency in

10   all of these cases to be happier to have the actual person in

11   front of the judge, or if it was a jury trial, and I

12   appreciate that.  On the other hand, if we're trying to move

13   this along, I would want to make sure that the ones we had

14   live really need to be live because of the cross-examination,

15   et cetera, in terms of presenting it to the Court, that would

16   not be done with the depositions.

17             The depositions, I'm assuming, will be discovery,

18   but they should also be considered in the context that you may

19   be using these at trial.

20             MR. RYAN:  Yes.

21             THE COURT:  So that going into it it's not just

22   discovery, it's actually going to be a potential use for a

23   trial, if it basically encompasses everything that you need.

24   So, it would only be for witnesses where -- for some other

25   reason you need to have them be live -- I'm throwing that out.

1    But the experts I understand, and I don't have a problem.

2    Frankly, I prefer the experts -- the key experts to be live

3    because if I have questions it's easier -- or need a better

4    explanation, I'd like to be able to ask them directly.  The

5    rest of the witnesses, that's more of an issue for you to

6    decide.

7                MR. RYAN:  We had in mind, Your Honor, this is a

8    rough at this point --

9                THE COURT:  Right.

10               MR. RYAN:  -- 12 live fact witnesses.

11               THE COURT:  12 total?

12               MR. RYAN:  Yes.  As we parsed out the different --

13   and this is basically the issues in the case and the

14   different --

15               THE COURT:  So, does that include experts or --

16               MR. RYAN:  No, not including the three experts,

17   Your Honor.

18               THE COURT:  So you've got 15?

19               MR. RYAN:  12 fact and 3 expert.  And that may --

20   now, Your Honor, I suspect that of those 12 there will be some

21   overlap with their 6.

22               THE COURT:  They may be called once and we --

23               MR. RYAN:  Right.  They would be on both our lists

24   is what I'm saying.  So, I don't know that it would be 18

25   separate fact witnesses.  Again, we'll do our best to work on

1    that number, Your Honor.  But at this stage that's what we

2    think we have to be prepared to do.

3              THE COURT:  All right.  That sort of answers my

4    questions.  I indicated to you the trial formatting stuff,

5    which I'll do -- we'll have initial witness lists, I'll put

6    that in, a timeframe for it.  The final ones, I think what I'm

7    going to do is talk to you a little bit more.  I'm going to

8    bring you back in early October and be in a better position to

9    see how the discovery is going as to where it's going to fit

10   in.

11             As I understand it, everybody has agreed to the

12   special master for discovery to handle the disputes.  I will

13   be contacting the person we had come up with.  What I would

14   ask is -- I put out a proposed order, if you can get back to

15   me as soon as possible.  Do you have some sense of when you

16   would be likely to do that?

17             MR. RYAN:  To get back to you, Your Honor?

18             THE COURT:  With the order because -- he can

19   obviously start talking to and moving along here, but it would

20   be helpful to have the order for the special master set out

21   that indicates all of the things that need to be done, which

22   means you look -- just look at the one I gave you, you can

23   make changes or suggestions.

24             MR. RYAN:  I would think it would be certainly by

25   Tuesday, Your Honor, but maybe sooner.  Your Honor, I thought,

1    after we left your chambers, I thought of one issue.

2             THE COURT:  Okay.

3             MR. RYAN:  That I have to take back to people above

4    me.

5             THE COURT:  Sure.

6             MR. RYAN:  This is with respect to the appeals of

7    issues of decisions by the special master.

8             THE COURT:  All right.

9             MR. RYAN:  Just to on the subject -- in looking at

10   some of their requests, I anticipate some disputes about

11   attorney/client product of ours, work product of ours, and

12   deliberative process with respect to these other mergers.  And

13   I want to talk to the people to whom I report about whether

14   they're willing to waive their right to appeal an Article III

15   judge.

16            THE COURT:  It's not a total waiver, if you read it

17   carefully.  It does have a little --

18            MR. RYAN:  We have to get his permission -- as I

19   read it, we have to get his permission --

20            THE COURT:  Yeah.  What I was hoping to get away

21   from was to not have every discovery dispute be an R & R --

22            MR. RYAN:  Right.

23            THE COURT:  I have trials during this period

24   that -- at least starting in -- which is why I was very

25   anxious to have a special master to make sure.  Take a look at

1    the way it's worded.  I mean, it does have a provision if

2    something comes up that's of major significance.  But in the

3    general thing it would be -- because if you don't do it that

4    way, it doesn't save me lot time.  And I can tell you if I'm

5    into trial, I'm not going to be on the phone resolving your

6    issues because they are all jury trials.

7              MR. RYAN:  Sometimes, Your Honor, we have to ask

8    for permission, and that's one --

9              THE COURT:  I don't have a problem with that.

10             MR. RYAN:  Thank you.

11             THE COURT:  That's not a problem.  If you can get

12   back to me, say, even Wednesday with the order with whatever

13   proposals, and then I'll talk to you if there's disputes about

14   it.

15             MR. PARKER:  Okay.

16             THE COURT:  So, Tuesday or Wednesday.  I mean, if

17   they're willing to sort of go with the approach, then

18   hopefully Tuesday.  If you've got other issues to add to it,

19   then give me something on Wednesday.

20             In terms of the mediation that we discussed, if you

21   could get back to me, say, in a week or earlier, about how

22   you -- if you want to do it and who you want to propose, the

23   person in waiting.  That would be helpful.  I think what I'd

24   like to do is to take a short break at this point.  I did sort

25   of a schedule.  I'm trying to figure out sort of dates.  I

1   need to go back and take a look at it.

2          And my inclination would be to set out a schedule,

3   but identified I'd like to have -- instead of trying to do it

4   in the courtroom, which doesn't make it too easy, is I'll take

5   a break, look at it, and I'm going to have you come into the

6   jury room and go through it.  Obviously, I'll put what the

7   final order is on the record.  But it will be easier going

8   back and forth if we can look at calendars and sort of see --

9   this would be sort of a proposal as opposed to my putting it

10  out and then you're arguing that it's not going to work.

11         I would like to set a status at this point.  And

12  I'm not going to excuse everybody.  We'll have a discussion

13  and then come out and indicate what we've agreed to and what I

14  may need to revisit again.  So, are people -- if you're

15  available the week of October 7th, that would be most helpful,

16  it's before a trial that I have.  Oh, wait, hold on a second,

17  that's not going to work.  That is the beginning of my trial.

18         How about, instead of that, how about October 1st?

19  Are people around that day?  It's a Tuesday.

20         MR. PARKER:  Yes.

21         MR. RYAN:  Yes.

22         THE COURT:  What I would want to do is to just sort

23  of see where we are, if we need to make any adjustments, and

24  discuss a little bit more about the trial in terms of things

25  that need to be done to prepare to make sure that this is

1   going to work.  And also at that point I would think you'd

2   have some idea whether we're going to have difficulties

3   keeping the schedule that we've set up.  Since people are

4   coming from out of town, I don't have any problem if you want

5   to set it at like 10:30; does that work?

6            All right.  I'm going to take a 15-minute break,

7   and my law clerk will come back and talk to you and get you to

8   come back.  I don't have a problem if you want to bring more

9   than one person.  We don't need to whole cast, but if you need

10  to have -- you know, if you want to have two -- the second

11  sort of chairperson with you, that's fine, in terms of working

12  this out.  But let me go back and see about fine tuning what I

13  have.

14           So, roughly, say -- I won't be any earlier than

15  11:00.

16           COURTROOM DEPUTY:  Court stands in recess for 15

17  minutes.

18  BRIEF RECESS

19                       AFTER RECESS

20           THE COURT:  I conferred with counsel and have

21  provided them with a proposed schedule.  I will be issuing

22  this order, but for those that are interested, the first day

23  of trial will be November 25th.  It will have -- it may skip

24  around a little bit in terms of other responsibilities.  They

25  will be off Thanksgiving and the Friday after Thanksgiving.

1   But, otherwise, we will be moving forward.  I will see

2   everybody back October 1st.

3          What I would ask is that if the parties -- I didn't

4   discuss this with you -- but if by noon on September 30th, if

5   you could indicate -- file a joint status report if there are

6   particular things that you want to talk about or bring to my

7   attention.  Otherwise, from my perspective, I will talk to you

8   about some trial issues in terms of how -- in advance to

9   figure out what we need to do and what you should -- around

10  the topics I discussed with you in the jury room.

11         But if there are particular things that you want to

12  bring up, if you would file a joint status report.  If there

13  isn't, fine, don't.  But if there is something that we need to

14  go over, then if you would do that, I'd very much appreciate

15  it.  And then you'll be e-mailing me the other materials.

16         All right.  Thank you.  Appreciate it.  And

17  parties are excused.

18  END OF PROCEEDINGS AT 11:45 A.M.

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Lisa M. Foradori, RPR, FCRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.


August 30, 2013                    /s/ Lisa M. Foradori
Date:                              Lisa M. Foradori, RPR, FCRR

**$**
**$1.5 [1]** 21/19
**$1.5 billion [1]** 21/19
**$500 [3]** 40/24 42/22 45/8
**$500 million [2]** 42/22 45/8
**$6 [1]** 21/20
**$6 billion [1]** 21/20

**/**
**/s [1]** 66/7

**0**
**01 [1]** 3/7
**0128 [1]** 2/14

**1**
**10 [17]** 9/17 32/2 35/8 35/10 35/10
35/14 35/19 35/20 36/1 36/1 50/15
50/19 53/19 54/23 55/4 55/22 57/7
**10 miles [1]** 25/22
**10-day [1]** 55/8
**10020 [1]** 4/15
**10:30 [1]** 64/5
**10th [1]** 19/18
**11:00 [1]** 64/15
**11:45 A.M [1]** 65/18
**12 [5]** 57/11 59/10 59/11 59/19 59/20
**1236 [2]** 1/3 5/2
**1251 [1]** 4/15
**12th [1]** 7/10
**13-1236 [2]** 1/3 5/2
**1330 [1]** 4/11
**13th [2]** 6/17 6/23
**14th [1]** 2/19
**15 [8]** 9/18 34/9 34/9 54/23 55/4 57/7
59/18 64/16
**15-minute [1]** 64/6
**16-month [1]** 10/12
**16.3 [1]** 7/1
**1625 [1]** 3/22
**1700 [1]** 4/8
**17120 [1]** 2/19
**17th [1]** 7/13
**18 [1]** 59/24
**1st [2]** 63/18 65/2

**2**
**20 [5]** 15/25 16/13 19/6 26/14 34/11
**20001 [6]** 1/23 2/13 2/24 3/3 4/7 4/23
**20004 [1]** 2/8
**20006 [1]** 3/22
**20036 [1]** 4/11
**2007 [1]** 21/20
**2012 [3]** 6/14 10/8 21/20
**2013 [9]** 1/4 6/16 6/17 6/18 6/20 6/23
7/13 10/8 66/7
**2014 [1]** 7/12
**202 [15]** 1/18 1/24 2/4 2/9 2/9 2/14 2/14
2/25 3/3 3/23 3/23 4/7 4/8 4/12 4/23
**20530 [2]** 1/18 2/3
**212 [1]** 4/16
**22nd [1]** 6/24
**23219 [1]** 3/17
**240-8699 [1]** 4/16
**25 [2]** 32/25 50/10
**253-3327 [1]** 3/12
**25th [1]** 64/23
**26 [1]** 41/20
**2673 [1]** 4/3
**281-3835 [1]** 4/3
**28th [1]** 7/1
**2931 [1]** 2/4

**30 [7]** 1/4 16/15 32/6 32/25 34/8 34/10
66/7
**30 percent [1]** 18/17
**3000 [1]** 4/12
**305-0128 [1]** 2/14
**307-2931 [1]** 2/4
**307-9952 [1]** 2/9
**30th [1]** 65/4
**3215 [1]** 1/17
**32399 [1]** 3/7
**325 [1]** 4/2
**3269 [1]** 4/23
**3327 [1]** 3/12
**333 [1]** 4/22
**35 [1]** 32/25
**354-3269 [1]** 4/23
**37202 [1]** 3/11
**383-5380 [1]** 3/23
**383-5414 [1]** 3/23
**3835 [1]** 4/3
**3851 [1]** 3/8
**3898 [1]** 4/7
**3rd [2]** 7/12 8/5

**4**
**4 million [1]** 10/15
**4000 [1]** 1/23
**414-3851 [1]** 3/8
**415 [1]** 4/20
**425 [1]** 3/11
**429-3000 [1]** 4/12
**43215-2673 [1]** 4/3
**434-8900 [1]** 4/20
**441 [2]** 2/23 3/2
**442-9841 [1]** 3/3
**450 [4]** 1/22 2/2 2/7 2/12
**4530 [1]** 2/20
**4648 [1]** 2/13
**4753 [1]** 1/18
**48 [1]** 33/5
**4923 [1]** 1/24
**4th [2]** 2/23 37/23

**5**
**50 [14]** 32/2 32/16 32/22 33/1 33/25
34/3 34/23 35/15 35/19 50/14 50/19
50/20 51/19 55/23
**50/50 [1]** 55/23
**51 [1]** 4/6
**514-6525 [1]** 2/14
**514-9323 [1]** 2/9
**5173 [1]** 2/25
**532-4753 [1]** 1/18
**532-4923 [1]** 1/24
**532-6951 [1]** 3/12
**5380 [1]** 3/23
**5414 [1]** 3/23
**5:00 [1]** 55/2
**5th [2]** 2/7 2/12

**6**
**600 [1]** 4/2
**600-S [2]** 2/24 3/2
**614 [1]** 4/3
**615 [2]** 3/12 3/12
**626-1700 [1]** 4/8
**6525 [1]** 2/14
**6557 [1]** 3/17
**6706 [1]** 4/22
**6951 [1]** 3/12
**6th [1]** 9/9

**70 [1]** 29/23
**717 [1]** 2/20
**727-5173 [1]** 2/25
**786-6557 [1]** 3/17
**787-4530 [1]** 2/20
**7th [1]** 63/15

**8**
**8000 [2]** 2/3 2/8
**804 [1]** 3/17
**850 [1]** 3/8
**86,000 [1]** 21/6
**8600 [3]** 17/4 21/8 21/9
**8699 [1]** 4/16
**879-3898 [1]** 4/7
**8900 [1]** 4/20

**9**
**900 [1]** 3/16
**9323 [1]** 2/9
**94108 [1]** 4/19
**950 [1]** 1/17
**9841 [1]** 3/3
**9952 [1]** 2/9
**9:00 [2]** 55/1 55/1
**9:15 [2]** 55/1 55/2
**9:30 [1]** 1/5

**A**
**a.m [2]** 1/5 65/18
**ability [1]** 13/20
**able [7]** 13/6 15/10 29/12 30/24 46/14
57/23 59/4
**about [60]** 7/16 8/16 9/22 11/17 13/4
13/12 13/24 14/24 15/2 15/4 15/21
17/21 17/21 17/22 18/4 19/2 19/21 21/6
21/13 21/22 23/13 23/14 25/9 26/5
26/15 29/21 33/2 34/17 37/3 37/25
38/10 39/24 40/17 42/13 45/13 48/4
48/6 48/23 49/1 49/4 51/12 51/21 52/20
53/7 53/10 53/17 53/19 56/18 57/22
58/3 61/10 61/13 62/13 62/21 63/18
63/18 63/24 64/12 65/6 65/8
**above [2]** 61/3 66/4
**above-titled [1]** 66/4
**absolute [1]** 57/11
**absolutely [3]** 23/17 29/18 41/7
**acceptable [2]** 11/2 17/13
**access [1]** 52/16
**accounts [1]** 12/3
**accurate [4]** 24/20 41/7 42/4 42/13
**acknowledge [1]** 47/22
**across [1]** 33/14
**act [1]** 17/16
**acting [2]** 23/22 27/11
**actual [3]** 44/10 56/24 58/10
**actually [17]** 8/16 11/11 28/13 28/14
28/21 28/25 32/8 37/8 37/16 38/11
40/17 51/1 54/17 55/3 56/20 57/2 58/22
**add [3]** 43/11 55/21 62/18
**adding [1]** 21/14
**addition [1]** 8/22
**additional [7]** 14/12 16/9 17/7 20/10
21/10 37/18 49/24
**address [1]** 33/20
**addressed [2]** 19/20 33/11
**adequately [1]** 8/4
**adjustments [1]** 63/23
**admission [1]** 50/23
**admissions [2]** 50/14 50/16
**admit [3]** 51/7 51/14 51/16
**advance [2]** 20/7 65/8

**A**

**Advantage [1]** 33/13
**Advocacy [1]** 2/23
**affect [1]** 8/18 8/20
**affidavits [1]** 25/15
**affirmative [8]** 38/15 40/7 41/5 42/4 43/10 45/18 47/3 48/17
**after [9]** 12/24 15/4 19/18 28/25 44/7 57/3 61/1 64/19 64/25
**afternoon [1]** 15/4
**afterwards [1]** 54/16
**ag.tn.gov [1]** 3/13
**again [9]** 5/8 16/9 16/24 19/6 31/9 49/23 50/18 59/25 63/14
**ago [1]** 25/9
**agree [5]** 15/8 20/5 26/14 27/24 29/18
**agreeable [2]** 8/12 8/14
**agreed [8]** 9/12 9/19 16/12 17/14 26/10 51/24 60/11 63/13
**agreement [2]** 6/18 7/15
**Air [6]** 15/1 17/15 22/11 31/14 31/16 34/9
**airline [4]** 12/19 12/21 16/17 19/25
**airline's [1]** 44/4
**airlines [32]** 6/18 6/25 10/3 10/25 11/19 12/1 17/1 17/8 17/14 17/17 17/17 17/18 17/23 17/24 18/6 18/17 19/4 21/14 21/15 21/21 22/5 23/5 24/1 24/19 24/24 27/4 29/20 31/6 31/15 33/22 35/11 57/14
**airlines' [1]** 7/10
**Airport [1]** 29/22
**AirTran [1]** 27/5
**AIRWAYS [8]** 1/6 3/20 5/3 6/6 6/14 25/1 27/3 55/15
**al [4]** 1/3 1/6 5/3 5/4
**Alan [1]** 3/1
**Alaska [1]** 17/15
**Alioto [2]** 4/18 4/18
**all [49]** 5/13 5/24 6/4 6/8 6/9 8/3 9/7 14/9 14/11 14/15 14/16 16/12 17/5 17/23 19/19 23/1 23/3 23/25 26/22 27/2 28/12 28/17 28/23 29/1 29/14 30/11 32/17 35/6 36/5 36/11 36/17 38/7 43/17 45/9 46/13 46/19 47/25 48/9 50/7 50/13 56/6 58/5 58/10 60/3 60/21 61/8 62/6 64/6 65/16
**allegations [2]** 51/11 51/12
**allege [1]** 21/18
**allegedly [1]** 11/16
**Allen [1]** 3/15
**Allied [1]** 4/10
**allow [2]** 8/7 52/2
**along [3]** 52/12 58/13 60/19
**already [6]** 10/3 10/22 18/12 19/20 29/12 42/19
**also [10]** 4/14 6/2 11/25 13/13 17/15 23/12 29/10 32/13 58/18 64/1
**although [3]** 7/6 7/15 27/18
**always [1]** 50/6
**am [4]** 8/4 15/17 30/6 54/2
**amended [3]** 8/18 9/13 17/11
**AMERICA [2]** 1/3 5/3
**American [12]** 6/2 13/21 22/5 25/1 27/3 31/15 31/16 34/9 51/6 57/22 57/24 58/1
**American's [3]** 13/20 13/23 14/3
**Americans [1]** 47/24
**Americas [1]** 4/15
**amici [1]** 52/12
**among [3]** 16/12 17/23
**amount [1]** 49/16
**AMR [2]** 4/1 6/1

**analysis [6]** 42/22 14/10 41/11 47/19 48/7 49/20
**ancillary [1]** 21/17 21/22
**and/or [1]** 37/13
**another [5]** 8/22 11/25 13/2 14/5 19/1
**answer [3]** 9/14 16/1 52/3
**answered [1]** 17/9
**answering [2]** 17/6 32/8
**answers [2]** 51/6 60/3
**anticipate [6]** 8/21 22/24 31/25 55/10 56/19 61/10
**anticipated [1]** 54/20
**anticipating [1]** 13/11
**Antitrust [1]** 1/16 1/22 2/2 2/7 2/12
**anxious [1]** 61/25
**any [20]** 7/16 8/19 9/10 9/12 13/8 15/9 20/2 21/10 26/11 29/7 29/17 31/21 42/21 50/17 54/9 54/16 57/24 63/23 64/4 64/14
**anything [3]** 23/18 46/16 54/24
**anyway [1]** 46/18
**appeal [1]** 61/14
**appeals [1]** 61/6
**APPEARANCES [1]** 1/14
**appears [1]** 31/12
**applies [1]** 11/22
**appreciate [4]** 47/22 58/12 65/14 65/16
**approach [2]** 32/9 62/17
**approaches [1]** 36/18
**appropriate [3]** 20/14 42/14 43/3
**approved [3]** 25/18 25/18 25/19
**approximately [4]** 6/19 18/14 49/5 56/5
**April [2]** 10/16 31/20
**are [124]**
**area [2]** 11/17 14/5
**areas [4]** 8/16 13/13 19/3 29/11
**aren't [2]** 20/8 38/11
**argue [1]** 27/17
**arguing [1]** 63/10
**arguments [1]** 7/4
**arises [1]** 33/20
**around [5]** 39/25 46/7 63/19 64/24 65/9
**Article [1]** 61/14
**as [84]**
**aside [1]** 38/2
**ask [16]** 14/20 14/23 22/12 24/3 24/5 28/19 29/10 35/6 40/2 40/12 41/24 43/5 59/4 60/14 62/7 65/3
**asked [6]** 15/24 30/2 32/1 45/15 50/14 53/24
**asking [9]** 7/21 21/1 21/2 25/14 25/15 25/23 27/9 39/2 44/13
**aspect [1]** 31/10
**assistance [1]** 7/23
**assume [5]** 14/14 14/20 34/23 36/3 36/6
**assuming [5]** 5/14 14/10 16/15 30/19 32/6 37/1 40/2 50/17 58/17
**assumption [2]** 16/8 23/12
**assured [1]** 12/3
**Atlantic [1]** 17/15
**ATPCO [3]** 17/1 17/8 17/24
**Attachment [1]** 8/24
**attention [4]** 14/13 14/19 26/11 65/7
**attorney [7]** 2/17 2/22 3/1 3/6 3/10 3/15 61/11
**attorney/client [1]** 61/11
**attorneygeneral.gov [1]** 2/20
**Attorneys [5]** 6/24 7/12 7/24 10/2 14/13
**attracting [1]** 12/3
**attractive [1]** 25/2
**August [5]** 1/4 6/23 6/24 7/1 66/7
**August 13th [1]** 6/23
**August 22nd [1]** 6/24
**August 28th [1]** 7/1

**available [3]** 7/23 30/22 63/15
**Avenue [4]** 1/17 3/11 4/6 4/11 4/15 4/22
**away [1]** 61/20
**awhile [1]** 26/13

**B**

**back [20]** 8/24 16/6 31/18 34/6 39/5 39/24 51/18 54/3 60/8 60/14 60/17 61/3 62/12 62/21 63/1 63/8 64/7 64/8 64/12 65/2
**backwards [1]** 49/13
**Baggage [1]** 21/18
**ball [1]** 20/7
**banging [1]** 25/3
**bankruptcy [3]** 7/4 13/21 14/4
**base [1]** 47/20
**based [8]** 42/6 42/7 42/14 43/11 44/5 44/11 48/1 54/15
**basically [3]** 46/5 58/23 59/13
**basis [2]** 8/5 8/8
**be [159]**
**because [39]** 10/23 13/3 13/5 14/2 14/18 16/4 18/16 19/11 20/1 22/6 22/10 24/11 25/2 25/24 26/9 27/24 28/6 29/1 29/19 30/21 33/23 34/24 36/11 39/22 41/13 44/11 44/15 45/5 45/25 46/11 49/25 50/4 55/4 55/16 58/14 59/3 60/18 62/3 62/6
**been [15]** 9/1 10/11 11/9 11/10 11/18 12/5 12/23 13/8 13/9 13/10 13/10 13/19 22/25 31/18 39/11
**before [14]** 1/10 10/6 17/19 23/25 26/2 26/16 28/21 29/17 30/8 31/21 40/12 49/10 57/2 63/16
**beforehand [3]** 28/25 37/2 54/17
**beginning [2]** 57/16 63/17
**begun [1]** 11/14
**behalf [3]** 5/7 5/11 6/6
**behind [1]** 8/8
**being [4]** 29/6 29/24 53/23 56/20
**belaboring [1]** 10/10
**believe [12]** 12/6 13/3 13/8 15/9 16/2 16/5 19/10 24/19 25/20 33/4 36/1 41/6
**benefit [1]** 11/4
**Bennett [1]** 2/22
**bennett.rushkoff [1]** 2/25
**best [2]** 34/17 59/25
**bet [1]** 27/7
**better [6]** 12/2 32/10 46/18 57/8 59/3 60/8
**between [8]** 10/24 20/1 20/10 20/23 27/15 30/15 43/18 54/22
**beyond [1]** 21/12
**big [5]** 11/12 29/7 32/3 34/1 35/22
**billion [2]** 21/19 21/20
**bit [10]** 23/13 37/13 43/17 53/17 53/18 53/25 54/20 60/7 63/24 64/24
**block [3]** 32/22 50/19 53/21
**Blumenfeld [1]** 4/14
**both [11]** 8/2 9/12 9/19 14/5 28/7 28/19 29/8 46/5 48/16 49/4 59/23
**Boulevard [1]** 4/2
**boundaries [1]** 33/24
**Brady [1]** 3/6
**brand [1]** 57/25
**break [3]** 62/24 63/5 64/6
**breakdown [1]** 58/8
**BRIEF [1]** 64/18
**briefing [2]** 54/7 54/13
**briefly [1]** 26/20
**bring [7]** 14/19 53/18 54/3 60/8 64/8 65/6 65/12
**broad [1]** 15/18
**broke [1]** 34/4

**B**

brought [2]  41/8 41/23
Buffalo [1]  20/1
built [1]  42/16
burden [9]  36/23 38/15 38/20 38/25
39/10 40/6 42/11 45/18 48/10
burdens [1]  40/18
Bush [1]  3/1
business [5]  4/6 12/3 14/3 25/7 57/23
buy [1]  25/3

**C**

CA [2]  1/3 4/19
calculated [1]  9/1
calendar [1]  53/21
calendars [1]  63/8
call [7]  12/16 14/19 42/10 56/24 57/14
57/21 58/1
called [1]  59/22
came [2]  35/14 45/8
can [48]  7/3 13/15 15/6 15/25 16/2 16/5
16/8 21/17 21/17 22/24 23/23 25/4
26/11 26/13 27/20 27/20 28/13 28/20
28/24 29/7 30/4 30/20 32/15 36/4 36/14
36/22 45/23 49/11 50/5 50/16 50/22
51/6 51/6 51/14 51/17 52/3 52/3 53/2
53/16 53/17 56/19 56/22 60/14 60/18
60/22 62/4 62/11 63/8
can't [4]  22/6 46/10 46/10 53/8
cannot [1]  46/12
Capitol [1]  3/7
captured [1]  13/10
care [1]  56/21
carefully [1]  61/17
carrier [1]  24/13
carriers [3]  23/5 24/14 33/14
case [28]  5/2 8/4 9/6 10/23 13/3 13/7
17/20 22/25 29/25 30/6 33/2 33/4 33/6
33/7 34/1 34/2 34/17 35/23 35/25 38/21
41/8 42/21 44/8 45/3 45/25 47/24 50/2
59/13
cases [6]  37/7 50/18 50/25 51/23 51/24
58/10
cast [1]  64/9
categories [1]  19/8
central [1]  22/1
CEO [1]  13/23
certain [1]  8/12
certainly [15]  12/11 15/11 20/7 26/3
28/15 29/16 30/23 41/19 52/13 53/1
54/7 55/14 56/22 57/11 60/24
certify [1]  66/2
cetera [4]  22/23 37/4 54/6 58/15
chairperson [1]  64/11
chambers [3]  23/14 52/8 61/1
chance [2]  30/9 57/5
change [6]  9/2 21/18 41/22 45/25 46/1
46/11
changes [5]  8/17 8/21 9/4 42/1 60/23
characterization [1]  10/11 10/15
characterize [2]  20/20 41/5
Charlotte [2]  20/1 20/2
checked [1]  27/6
checking [1]  9/1
chew [1]  23/23
CID [1]  33/5
cities [1]  20/10
city [4]  19/24 20/3 20/3 20/8
Civil [1]  5/2
claims [2]  9/5 11/23
clear [2]  37/5 44/15
clearly [1]  41/13
clerk [1]  64/7

client [1]  61/11
clock [1]  45/23
close [1]  34/24
closely [1]  21/23
closes [1]  25/4
closings [1]  56/25
coin [1]  28/1
colleagues [4]  6/3 6/7 15/25 57/6
collecting [1]  29/4
COLLEEN [1]  1/10
COLUMBIA [1]  1/1
Columbus [1]  4/3
combination [3]  21/13 37/17 44/3
come [22]  5/5 9/11 13/21 24/22 26/11
26/25 27/22 28/6 31/18 34/18 35/15
39/24 41/21 43/12 46/7 54/25 57/12
60/13 63/5 63/13 64/7 64/8
comes [4]  23/23 53/1 54/25 62/2
coming [6]  8/10 14/10 18/6 18/7 27/21
64/4
comments [1]  38/13
commit [1]  30/7
committed [1]  9/8
Committee [3]  52/11 52/24 53/13
Commonwealth [1]  2/18
compact [2]  55/4 57/4
company [1]  56/14
compare [1]  50/1
compete [5]  12/1 12/2 13/20 13/25
57/23
competition [5]  10/24 11/2 17/22 33/12
51/12
competitive [5]  17/16 24/16 25/7 33/21
48/22
competitiveness [1]  48/23
competitor [1]  13/22
competitor's [1]  11/2
competitors [2]  21/14 21/24
complaint [18]  8/18 8/24 9/13 12/15
12/25 17/9 17/11 17/20 21/19 23/4 23/6
24/21 33/11 34/16 43/20 43/24 43/25
51/12
completing [1]  49/10
completion [1]  11/13
complex [1]  30/7
complexity [3]  33/18 33/19 33/19
complicated [2]  35/23 35/25
comply [3]  23/10 23/11 52/18
comprise [1]  8/15
computerized [1]  20/25
concede [1]  51/4
concern [1]  51/8
concerns [1]  53/10
conclusions [1]  54/13
conduct [1]  12/18
conducted [1]  6/21
conference [5]  1/10 6/9 7/9 12/24 57/6
confidential [2]  52/16 53/9
confidentiality [1]  23/14
confirm [1]  7/8
confirmation [1]  7/5
confirming [1]  49/21
Connecticut [1]  4/11
consent [1]  52/17
conservative [1]  45/8
considered [1]  58/18
Constitution [1]  4/22
constraints [1]  17/16
Consumer [1]  3/16
consumers [2]  11/4 47/25
contact [1]  5/14
contacting [1]  60/13
contemplating [1]  39/11

contemporaneous [1]  8/1
context [6]  6/11 22/16 29/10 37/15 57/3
58/18
Continental [3]  24/15 25/19 27/4
continued [1]  14/3
contracts [1]  12/8
control [2]  18/22 53/8
controlled [1]  29/24
conversations [1]  43/23
Conversely [1]  43/24
cooperating [1]  15/21
cooperation [1]  22/19
cooperative [4]  22/14 23/2 23/7 23/12
coordinate [1]  13/5
coordinated [4]  12/16 12/22 13/5 33/16
copy [1]  12/17
Corp [1]  4/1
corporate [6]  12/3 12/3 12/8 22/5 25/1
57/23
Corporation [1]  6/1
corporations [3]  22/4 22/9 23/9
correct [6]  9/3 12/7 21/16 29/16 32/24
66/3
correctly [1]  31/23
cost [1]  11/3
could [18]  12/13 14/20 21/5 22/12 29/25
34/18 35/15 37/17 42/17 47/13 50/7
51/8 51/18 53/25 55/19 57/12 62/21
65/5
couldn't [1]  35/16
counsel [12]  5/5 12/6 23/10 43/7 43/18
44/14 47/21 52/11 53/2 53/20 57/18
64/20
counted [1]  32/6
couple [5]  19/11 37/20 43/17 46/17
47/11
course [7]  7/8 17/10 22/11 34/4 43/21
49/15 49/17
court [22]  1/1 4/21 4/21 10/7 10/17
10/21 10/21 13/11 14/6 15/4 19/21
27/24 29/16 34/10 36/3 39/1 39/24
51/18 53/2 53/19 58/15 64/16
Court's [3]  10/14 10/20 19/12
Courthouse [1]  4/22
courtroom [1]  63/4
covered [1]  24/1
Creditors [3]  52/11 52/24 53/13
cross [1]  58/14
cross-examination [1]  58/14
current [1]  48/14
currently [1]  12/8
curtail [2]  8/8 15/16
customer [1]  55/19
customers [4]  22/5 25/1 25/2 25/6
cutting [1]  39/5

**D**

Danks [2]  2/11 5/16
data [7]  20/24 20/25 20/25 21/1 21/2
21/2 21/3
date [9]  6/25 7/11 7/13 7/14 23/2 37/22
47/15 53/18 66/8
dates [8]  7/17 8/12 9/11 10/7 50/4 50/5
53/19 62/25
day [10]  4/1 4/5 6/1 6/3 38/24 54/23
55/8 56/6 63/19 64/22
days [13]  16/1 16/13 19/7 26/14 50/23
51/7 52/3 55/4 55/22 56/1 57/7 57/7
57/11
DC [22]  1/4 1/18 1/23 2/3 2/8 2/13 2/24
3/3 3/22 4/7 4/11 4/23
dc.gov [2]  2/25 3/4
deadlines [3]  8/7 54/10 54/12
deal [2]  37/24 43/6

**D** Case 1:13-cv-01236-CKK

dealt [1] 43/18
December [1] 7/13
December 17th [1] 7/13
decide [3] 23/6 37/8 59/6
decision [2] 25/24 25/24
decisions [1] 61/7
dedicate [1] 11/14
defend [1] 8/4
defendant [7] 3/20 4/1 9/17 9/17 10/2 19/4 29/9
defendants [11] 1/7 5/24 14/20 24/4 32/2 36/19 36/25 37/8 37/11 50/15 53/19
defendants' [1] 40/7
defending [2] 36/8 45/13
defense [8] 11/23 12/5 12/9 12/23 27/19 45/18 53/2 57/18
defenses [21] 10/22 11/1 11/22 12/20 14/21 17/10 19/15 19/17 20/13 22/7 38/15 40/7 41/5 42/4 43/10 46/25 47/3 48/17 51/9 51/10 51/11
define [2] 20/9 22/19
defined [2] 20/8 51/13
definitely [3] 48/25 49/6 55/21
degree [3] 10/24 14/9 31/21
delay [1] 9/5
deliberative [1] 61/12
Delta [6] 12/2 16/25 24/14 25/19 27/3 35/12
Delta/Northwest [2] 25/19 27/3
demand [2] 25/9 26/13
deny [1] 51/17
DEPARTMENT [14] 1/16 1/21 2/1 2/6 2/11 6/15 6/20 6/21 6/23 7/11 9/25 10/1 24/10 25/8
depending [2] 37/14 40/1
depends [1] 21/24
deponents [1] 30/23
depose [3] 35/9 35/13 39/12
deposed [5] 30/20 31/1 31/6 39/17 39/18
deposing [2] 32/1 32/11
deposition [11] 29/18 29/21 30/3 31/13 32/7 34/9 34/14 35/19 39/16 49/24 55/20
depositions [45] 6/21 7/25 12/12 13/12 13/14 14/6 16/24 18/1 20/19 22/9 25/15 28/18 28/20 28/24 29/3 29/6 29/8 29/12 29/14 30/7 30/19 31/14 31/22 31/22 31/24 32/2 32/10 32/16 33/5 33/6 33/25 34/1 34/3 34/8 34/11 34/11 35/3 35/15 39/11 39/20 48/5 55/13 56/21 58/16 58/17
describing [1] 42/5
detailed [1] 41/22
determine [1] 21/22
determining [1] 27/23
developed [1] 13/19
devote [1] 26/11
did [21] 7/6 7/20 10/13 16/7 19/6 21/5 26/9 27/18 31/10 31/22 32/16 41/13 41/14 41/23 45/2 45/3 45/7 47/21 52/17 57/19 62/24
didn't [7] 21/25 26/25 34/19 37/11 40/15 50/21 65/3
difference [3] 29/7 32/3 51/18
different [10] 25/20 32/9 33/2 33/8 33/10 33/20 33/21 45/14 59/12 59/14
difficult [1] 23/8
difficulties [1] 64/2
direct [2] 10/24 56/15
directly [1] 59/4

disclosures [3] 36/19 36/20 36/23
discovery [37] 8/8 8/18 8/21 10/22 13/9 13/10 14/5 15/16 17/7 17/24 18/1 19/12 20/10 20/20 22/3 22/13 23/23 24/4 24/5 24/11 24/23 25/5 28/22 28/23 35/1 49/10 49/23 50/8 50/9 50/12 53/7 54/4 58/17 58/22 60/9 60/12 61/21
discrete [1] 30/4
discuss [4] 26/9 54/4 63/24 65/4
discussed [4] 22/1 43/22 62/20 65/10
discussion [2] 44/1 63/12
discussions [3] 37/2 38/10 44/19
dispute [2] 8/16 61/21
disputed [1] 9/20
disputes [6] 52/20 53/7 54/9 60/12 61/10 62/13
disseminates [1] 17/2
dissidence [1] 47/17
DISTRICT [3] 1/1 1/1 1/11
divide [1] 55/23
Division [5] 1/16 1/22 2/2 2/7 2/12
do [95]
doable [2] 26/14 57/7
document [17] 11/13 12/10 13/8 13/9 14/5 15/2 18/5 20/23 21/1 21/11 21/20 25/9 26/12 26/23 27/25 29/17 31/19
documents [44] 6/15 6/19 9/20 9/22 9/24 10/9 10/16 10/18 11/1 11/18 12/11 12/11 14/1 14/23 15/9 16/7 16/24 16/25 17/4 17/4 19/2 20/19 21/6 22/9 23/15 24/7 25/14 25/23 26/3 27/2 27/8 27/17 30/1 30/2 30/4 30/9 30/21 31/11 31/20 49/24 52/15 52/16 53/14 53/15 does [7] 15/25 42/7 53/6 59/15 61/17 62/1 64/5
doesn't [9] 12/20 15/8 20/2 27/14 28/6 35/24 56/24 62/4 63/4
doing [20] 7/2 8/11 13/6 16/16 18/12 21/24 24/14 25/20 25/21 30/15 36/8 37/10 38/5 38/6 38/10 39/24 40/18 42/10 43/13 45/9
DOJ [1] 32/18
dollar [1] 33/18
dollars [1] 35/23
Domen [1] 3/10
don't [49] 8/20 9/2 9/10 9/12 10/3 12/6 12/7 12/9 15/8 15/11 15/24 22/15 23/6 23/7 23/18 27/17 29/4 29/17 30/3 31/3 31/8 32/5 34/14 35/15 36/1 39/23 43/1 43/14 43/23 44/9 44/22 45/5 46/11 48/24 50/25 54/16 54/17 54/23 56/21 57/6 58/7 59/1 59/24 62/3 62/9 64/4 64/8 64/9 65/13
Donahue [2] 2/17 5/11
done [19] 11/18 26/1 28/5 29/8 34/21 36/7 42/19 44/16 49/15 49/19 51/23 54/6 54/16 55/20 56/6 56/21 58/16 60/21 63/25
door [1] 25/3
double [1] 9/1
down [7] 24/1 25/3 28/6 28/8 34/4 43/5 51/1
draft [1] 26/24
drafting [1] 19/10
drop [4] 39/5 39/14 39/15 39/16
during [5] 10/10 11/8 14/4 31/14 61/23
dynamic [1] 24/12

**E**

e-mailing [1] 65/15
each [8] 9/17 12/17 13/13 40/9 40/18 45/21 46/8 47/4
earlier [4] 50/5 54/8 62/21 64/14
early [3] 54/3 55/12 60/8

easier [2] 59/3 63/7
Page 70 of 78
easy [2] 57/15 63/4
economic [3] 41/10 49/19 49/20
economists [4] 41/9 41/24 48/20 49/6
effect [1] 55/18
effectively [1] 38/20
efficiencies [1] 47/14
efficiencies [22] 11/3 11/3 11/12 11/16 38/18 38/21 40/22 40/23 40/24 41/12 42/21 44/2 44/3 44/10 44/11 44/18 46/13 47/16 47/19 47/25 48/21 49/14
efficiency [2] 11/5 47/23
efficient [1] 44/25
effort [1] 27/9
efforts [1] 11/15
eight [1] 31/2
either [5] 7/14 8/4 21/11 31/2 32/25
eliminate [1] 47/17
elimination [2] 11/2 17/21
eliminations [1] 47/17
else [6] 10/20 32/25 46/3 46/16 47/11 54/24
else on [1] 47/11
emergency [1] 54/25
enables [1] 8/2
encompass [1] 56/25
encompasses [1] 58/23
end [5] 14/15 14/24 24/3 31/15 65/18
engage [1] 48/22
entity [2] 13/20 25/7
equally [1] 16/17
Esq [2] 1/21 2/1
Esquire [17] 1/15 2/6 2/11 2/17 2/22 3/1 3/6 3/10 3/15 3/20 3/20 3/21 4/1 4/5 4/10 4/14 4/18
essence [3] 25/13 25/15 42/11
essentially [2] 21/16 27/1
establish [1] 24/25
estimate [2] 34/18 55/9
et [8] 1/3 1/6 5/3 5/3 22/23 37/4 54/6 58/15
evaluated [1] 19/25
even [8] 12/7 23/22 30/20 32/7 36/4 40/22 46/4 62/12
events [1] 6/11
every [2] 29/17 61/21
everybody [8] 26/10 32/25 36/14 53/6 55/23 60/11 63/12 65/2
everyone [2] 6/8 27/11
everything [1] 58/23
evidence [1] 50/2
exactly [2] 45/2 45/9
examination [1] 58/14
example [6] 12/6 33/4 35/12 43/16 47/13 57/21
examples [1] 10/21
excellent [2] 15/22 58/1
exchange [3] 38/24 38/24 39/15
exchanged [1] 43/22
exciting [1] 24/14
exclusively [1] 48/21
excuse [4] 21/9 48/19 56/8 63/12
excused [1] 65/17
executives [3] 31/3 31/5 55/15
exercise [2] 32/17 51/15
exhibit [1] 54/11
existing [2] 44/6 44/18
expect [1] 57/20
expectation [2] 29/2 46/20
expecting [3] 7/21 21/10 56/1
expedite [2] 15/17 36/12
expedited [7] 6/25 8/5 8/6 28/11 52/14 53/6 54/15
expedition [1] 28/8

## E

**expeditious [1]**  27/25
**experience [2]**  23/11 55/7
**expert [18]**  36/25 37/23 39/17 39/18 40/4 40/25 41/4 41/17 41/17 41/19 42/2 42/12 43/8 48/23 49/11 49/14 50/10 59/19
**expertise [1]**  29/11
**experts [34]**  29/10 32/6 35/20 36/17 37/4 37/6 37/15 38/7 38/10 39/5 39/16 40/1 42/2 43/8 45/17 45/22 46/9 46/21 48/2 49/9 49/17 49/17 49/21 49/25 49/25 50/4 51/10 54/2 55/20 59/1 59/2 59/2 59/15 59/16
**explain [1]**  36/22
**explanation [3]**  50/21 50/22 59/4
**exploration [1]**  12/5
**explore [1]**  11/24
**extended [1]**  57/1
**extensive [1]**  44/1
**extent [4]**  12/10 13/9 22/4 49/9
**Eye [1]**  3/22

## F

**fact [12]**  15/3 24/25 49/10 50/8 50/9 50/12 54/1 54/13 57/22 59/10 59/19 59/25
**factual [1]**  51/11
**fair [2]**  45/1 49/16
**fairly [2]**  20/18 49/8
**fairness [1]**  22/17
**faith [3]**  23/22 27/11 51/17
**far [4]**  8/6 14/16 15/5 53/10
**Fare [1]**  33/14
**faster [1]**  56/12
**Fax [5]**  2/9 2/14 3/12 3/23 4/8
**FCRR [3]**  4/21 66/2 66/8
**February [1]**  6/17
**February 13th [1]**  6/17
**feel [2]**  25/24 34/14
**fees [6]**  21/18 21/18 21/18 21/22 21/23 21/24
**fellow [2]**  13/6 31/12
**few [4]**  8/13 10/21 16/20 24/3
**fewer [1]**  53/6
**field [1]**  49/12
**Fifth [1]**  1/22 2/2 3/11
**figure [9]**  28/9 30/15 30/16 30/18 32/17 33/1 39/4 62/25 62/22
**file [3]**  17/11 65/5 65/12
**filed [4]**  6/16 6/24 6/25 7/1
**filing [3]**  10/3 12/24 54/11
**filings [1]**  54/6
**fill [1]**  57/24
**final [5]**  7/4 7/6 54/11 60/6 63/7
**Finally [1]**  25/8
**find [6]**  5/13 25/1 43/23 43/24 52/1 56/14
**findings [1]**  54/13
**fine [6]**  9/12 19/16 45/7 64/11 64/12 65/13
**firm [3]**  4/18 6/1 29/24
**first [8]**  23/1 36/20 36/24 37/10 38/4 38/23 43/16 64/22
**fit [4]**  11/7 27/14 32/19 60/9
**fits [1]**  32/21
**five [4]**  17/3 27/1 56/1 56/6
**five-day [1]**  56/6
**fixed [1]**  7/16
**FL [1]**  3/7
**Fleishman [1]**  4/10
**flight [1]**  20/2
**flights [4]**  11/6 43/18 47/17 47/18

**Floer [1]**  2/19
**flush [1]**  20/13
**flying [1]**  20/2
**focus [12]**  9/23 14/9 19/19 20/14 20/17 20/20 24/8 24/9 24/10 48/20 48/22 53/25
**focused [1]**  24/6 29/11 32/18
**folks [1]**  55/17
**follow [1]**  12/16
**following [1]**  30/1
**footing [1]**  15/23
**Foradori [1]**  4/21 66/2 66/7 66/8
**foregoing [1]**  66/3
**formally [1]**  25/10
**formatting [2]**  54/12 60/4
**forth [3]**  11/1 51/10 63/8
**forward [8]**  5/5 18/12 28/10 46/22 48/3 48/10 48/24 65/1
**found [4]**  14/2 37/7 51/23
**four [3]**  27/1 31/16 32/23
**Fourth [1]**  3/2
**Francisco [1]**  4/19
**frank [1]**  50/8
**frankly [6]**  19/15 29/9 39/19 42/17 52/19 59/2
**Friday [1]**  64/25
**front [2]**  10/16 58/11
**FTC [1]**  35/25
**fudging [1]**  16/4
**full [4]**  7/22 16/15 22/22 26/11
**fundamentally [2]**  25/20 25/25

## G

**gather [1]**  28/2
**gathering [1]**  30/1
**gave [2]**  25/9 34/23 60/22
**general [11]**  2/17 2/22 3/1 3/6 3/15 6/24 7/12 10/2 14/13 22/24 62/3
**GENERAL'S [3]**  3/10 7/24
**generally [5]**  19/7 31/2 38/16 51/24 54/25
**generate [2]**  11/12 11/16 11/16
**generated [1]**  44/19
**get [52]**  6/13 8/3 14/8 14/13 15/14 15/19 15/20 16/10 16/15 18/2 19/7 19/12 21/5 22/8 22/21 24/7 27/12 28/21 28/22 28/23 29/5 29/13 30/10 30/20 31/4 32/10 32/20 38/11 39/19 40/12 40/15 43/5 44/22 44/24 45/15 45/19 46/18 48/5 50/21 51/20 52/9 53/13 54/2 57/8 60/14 60/17 61/18 61/19 61/20 62/11 62/21 64/7
**gets [1]**  53/11
**getting [7]**  9/23 10/4 14/21 24/6 40/16 43/4 44/23
**give [22]**  7/20 10/4 10/21 16/20 17/5 20/24 24/20 29/25 31/3 32/15 34/25 37/11 37/12 37/17 39/12 41/23 43/16 47/13 50/21 53/22 57/15 62/19
**given [3]**  40/22 40/23 44/5
**gives [1]**  36/4
**go [22]**  6/11 7/19 7/25 8/15 19/18 19/20 21/12 23/19 27/9 27/16 30/5 32/17 38/23 39/15 45/20 55/2 56/11 62/17 63/1 63/6 64/12 65/14
**goal [1]**  16/13
**goes [1]**  53/10
**going [121]**
**gone [2]**  21/19 31/20
**good [20]**  5/8 5/9 5/10 5/12 5/15 5/18 5/22 5/25 6/5 6/8 15/22 20/3 23/3 23/22 24/2 24/15 27/11 48/11 51/16 52/4
**got [9]**  12/7 15/12 22/13 29/1 40/24 41/11 42/22 59/18 62/18

**gotten [2]**  16/20 54/4**
**Government [2]**  15/3 51/25
**great [2]**  10/24 11/21
**gritty [1]**  54/5
**group [5]**  1/6 5/3 9/18 49/19 49/20
**guess [4]**  15/14 18/21 20/9 38/13

## H

**had [34]**  8/9 9/13 10/7 11/9 11/10 11/10 11/24 12/24 21/13 26/12 26/24 28/19 30/9 31/11 31/18 31/19 31/20 32/22 32/23 32/25 33/7 37/22 42/16 45/16 50/18 50/19 52/7 52/8 54/20 54/20 57/5 58/13 59/7 60/13
**hand [1]**  58/12
**handle [1]**  60/12
**hands [1]**  18/18
**happen [1]**  12/21
**happier [1]**  58/10
**happy [2]**  42/25 51/18
**Harrisburg [1]**  2/19
**Hart [1]**  6/16
**Hart-Scott-Rodino [1]**  6/16
**has [15]**  10/22 11/18 13/8 13/9 14/3 14/11 15/9 19/25 22/24 24/7 26/10 33/14 51/1 57/4 60/11
**hasn't [1]**  12/5
**have [166]**
**haven't [8]**  11/23 17/9 22/2 22/3 27/6 41/21 42/21 44/16
**having [4]**  7/24 39/5 52/17 53/24
**he [8]**  7/6 7/7 15/8 15/9 43/7 45/16 49/15 60/18
**head [9]**  10/24 10/24 13/16 17/22 17/22 33/12 33/12 51/12 51/12
**head-to-head [4]**  10/24 17/22 33/12 51/12
**hear [5]**  23/3 27/18 29/15 43/1 43/7
**heard [1]**  7/4
**hearing [1]**  43/5
**Heathrow [1]**  43/19
**heavy [1]**  20/25
**heed [1]**  19/11
**held [1]**  43/23
**help [3]**  50/9 51/14 51/17
**helpful [10]**  14/6 16/3 16/20 31/17 33/18 46/6 51/23 60/20 62/23 63/15
**helps [2]**  17/1 18/25
**here [22]**  5/13 6/2 7/8 10/23 15/5 19/1 19/1 19/9 19/23 24/12 25/21 25/23 27/8 27/17 30/15 32/9 33/8 33/19 36/18 43/5 43/6 60/19
**here's [1]**  22/3
**hesitate [1]**  29/19
**highly [1]**  23/16
**his [3]**  31/13 61/18 61/19
**historically [1]**  19/25
**hold [2]**  18/7 63/16
**holes [1]**  57/24
**Honor [77]**
**Honor's [2]**  23/13 25/10
**HONORABLE [1]**  1/10
**hope [6]**  14/6 19/19 20/15 25/4 26/6 50/6
**hoped [1]**  54/20
**hopefully [4]**  7/23 15/6 28/4 62/18
**hoping [1]**  61/20
**Horton's [1]**  13/23
**hotmail.com [1]**  4/24
**hours [2]**  56/14 57/3
**house [1]**  49/19
**how [26]**  16/6 11/11 13/24 13/24 15/20 16/10 20/9 21/22 21/23 30/11 35/14 46/19 47/10 48/2 48/15 51/13 53/10

**H**

how... [9]  53/11 55/10 57/22 58/3 60/9 62/21 63/18 63/18 65/8
however [1]  48/17
HSR [1]  6/16
hypothetical [4]  44/5 45/4 47/15 47/21
hypothetically [1]  44/17
hypotheticals [2]  46/3 48/1

**I**

I'd [14]  6/10 9/24 14/22 15/15 16/15 27/7 42/22 48/5 51/20 58/8 59/4 62/23 63/3 65/14
I'll [24]  5/14 6/2 6/12 10/5 18/2 18/13 18/15 19/1 22/19 24/9 28/11 28/19 29/14 29/15 31/18 36/22 40/2 42/25 47/10 60/5 60/5 62/13 63/4 63/6
I'm [73]
I've [4]  51/22 51/23 52/25 57/5
idea [6]  10/4 27/12 32/15 35/8 46/4 64/2
identical [1]  44/7
identified [2]  13/13 63/3
identify [5]  5/5 20/13 22/10 30/20 30/24
III [2]  2/17 61/14
impact [1]  33/14
imperfect [1]  51/3
importance [1]  47/24
important [7]  13/4 13/7 24/19 35/12 49/25 53/3 55/17
in 2007 [1]  21/20
in 2012 [1]  21/20
in-house [1]  49/19
INC [2]  1/6 5/3
incidental [1]  13/10
inclination [2]  36/21 63/2
inclined [7]  7/8 8/7 15/16 37/9 37/11 37/12 52/2
include [7]  7/6 32/5 32/6 53/12 59/15
includes [1]  34/10
including [3]  7/23 40/23 59/16
income [1]  21/19
incorrect [1]  25/25
incredibly [1]  24/15
independently [1]  14/3
indicate [5]  32/13 42/17 44/12 63/13 65/5
indicated [12]  8/12 9/16 15/15 31/1 32/11 34/10 34/25 52/8 52/25 53/19 53/20 60/4
indicates [1]  60/21
indicating [1]  45/23
indication [1]  29/2
individuals [2]  30/8 42/3
industry [12]  12/15 12/19 12/21 12/21 12/25 19/25 20/25 24/12 24/20 35/22 48/23 48/24
inform [1]  38/5
informally [1]  25/9
information [8]  8/3 13/18 16/16 17/2 45/15 52/23 53/9 53/10
informed [1]  54/18
initial [6]  1/10 7/9 7/20 49/10 53/12 60/5
inquiry [1]  11/17
insight [1]  11/21
instance [1]  7/25
instead [1]  63/3 63/18
instructions [1]  25/11
insufficient [1]  22/6
integrate [1]  44/9
integration [5]  11/5 11/15 11/20 19/21 44/16
integrative [1]  45/4
Intel [1]  35/25

intend [2]  28/15 50/11
interaction [6]  12/16 12/22 13/5 17/21 17/22 33/16
interest [1]  34/14
interested [4]  8/14 9/24 31/10 64/22
interesting [2]  32/17 57/13
interrogatories [16]  9/15 9/17 9/20 18/5 19/2 19/3 19/4 19/10 19/14 19/20 19/23 20/12 20/15 20/17 20/23 51/25
interrogatory [1]  20/6
introduce [1]  37/1
invested [1]  10/17
investigation [7]  10/9 10/12 11/8 27/2 31/17 43/21 49/19
investigations [1]  26/21
investigative [2]  6/21 45/11
involve [2]  8/22 37/10
involved [2]  15/5 35/23
is [175]
is why [1]  50/20
isn't [2]  28/10 65/13
issue [27]  7/6 9/12 11/12 13/2 15/9 19/19 20/15 25/16 25/17 27/20 28/18 29/22 30/5 33/7 33/12 33/15 38/19 43/19 44/2 46/17 52/15 53/2 53/15 55/1 58/6 59/5 61/1
issues [26]  12/14 13/7 19/20 22/1 22/23 25/2 26/11 30/7 33/13 33/20 34/2 38/14 38/25 39/9 43/22 43/23 43/24 48/22 50/16 54/8 58/5 59/13 61/7 62/6 62/18 65/8
issuing [1]  64/21
it [174]
it's [47]  9/2 10/1 10/11 10/18 11/21 13/3 13/10 13/10 16/19 21/19 23/7 23/8 23/18 28/12 31/9 32/16 33/8 33/8 33/11 33/12 33/13 33/17 33/23 33/25 34/1 37/5 38/9 42/1 44/11 44/15 46/11 51/15 51/22 52/3 54/11 54/19 55/16 57/6 58/21 58/22 59/3 60/9 61/16 62/1 63/10 63/16 63/19
its [1]  55/18

**J**

James [2]  2/17 5/10
January [1]  6/16
January 2013 [1]  6/16
jblumenfeld [1]  4/16
jdonahue [1]  2/20
Jeffrey [1]  4/14
JetBlue [2]  16/25 35/12
jmmajoras [1]  4/4
John [3]  4/1 4/2 5/25
JOHNSON [1]  4/10
joint [2]  65/5 65/12
JONES [4]  4/1 4/5 6/1 6/3
jonesday.com [2]  4/4 4/8
Joseph [1]  4/18
Jr [1]  3/10
judge [6]  1/11 7/4 15/11 51/22 58/11 61/15
judgment [1]  49/8
July [2]  31/15 31/16
June [1]  31/15
jury [7]  53/20 55/5 56/20 58/11 62/6 63/6 65/10
just [32]  6/10 10/6 10/7 10/16 13/13 14/14 15/12 20/24 22/12 23/10 23/21 28/4 30/10 31/4 31/19 31/24 32/12 35/18 37/24 40/15 44/1 44/6 44/17 45/6 46/18 47/22 51/9 51/22 58/21 60/22 61/9 63/22
JUSTICE [16]  1/16 1/21 2/1 2/6 2/11 6/15 6/20 6/21 6/23 7/11 9/25 10/1

14/16 24/7 24/9 25/8

**K**

Kate [1]  5/19
Katharine [1]  1/21
katharine.mitchell [1]  1/24
Kathleen [2]  2/1 5/22
kathleen.oneill [1]  2/4
Katie [1]  6/7
Katrina [1]  3/21
keeping [1]  64/3
Ken [1]  6/7
Kenneth [1]  3/20
key [1]  59/2
kind [2]  7/21 12/17
kinds [1]  14/23
knock [1]  45/20
know [36]  7/17 8/14 9/24 10/1 12/9 14/18 14/22 15/24 19/6 22/15 22/18 23/7 29/4 29/12 30/4 34/17 34/25 35/18 37/2 38/7 40/19 40/20 42/12 42/23 43/10 45/5 46/4 46/11 46/13 49/7 50/25 57/15 58/8 58/9 59/24 64/10
knowing [1]  34/16
knows [2]  17/20 57/8
KOLLAR [1]  1/10
KOLLAR-KOTELLY [1]  1/10
korouke [1]  3/24
KOTELLY [1]  1/10
krobson [1]  3/25

**L**

L.L.P [1]  4/10
L4dori [1]  4/24
large [6]  13/22 18/16 23/9 31/19 33/21 47/18
largely [1]  23/1
largest [1]  24/13
last [6]  19/11 26/24 26/25 34/6 41/3 45/3
later [2]  15/6 54/2
law [5]  4/18 6/1 23/11 54/14 64/7
lawsuit [1]  33/24
leader [1]  12/16
lean [1]  28/9
least [9]  7/7 26/13 37/6 47/9 52/22 55/14 55/15 57/17 61/24
leave [5]  18/1 19/1 22/19 34/11 39/22
leaving [1]  38/2
leeway [1]  53/22
left [2]  18/9 61/1
legacy [2]  21/14 23/5
legal [3]  27/20 28/18 54/7
leisurely [1]  38/9
lend [1]  13/14
less [4]  15/16 32/21 52/18 56/2
let [26]  7/17 7/19 8/9 10/21 14/18 16/6 24/1 24/1 24/3 28/4 28/18 30/17 34/19 34/23 35/6 35/7 36/17 37/19 37/24 40/12 41/25 43/5 43/7 43/16 50/13 64/12
let's [8]  14/20 29/19 31/13 36/3 38/15 43/6 44/2 47/25
light [1]  41/12
like [15]  6/10 14/22 15/25 16/15 24/6 39/1 42/23 46/4 48/5 58/8 59/4 62/24 63/3 63/11 64/5
likely [7]  12/18 16/1 16/5 40/3 52/18 55/18 60/16
limit [3]  21/25 37/7 38/5
limited [4]  20/18 22/8 52/1 52/2
line [1]  6/11
Lisa [4]  4/21 66/2 66/7 66/8
list [3]  35/16 37/8 41/11

## L

**lists [4]** 54/11 54/11 59/23 60/5
**Litigation [1]** 4/6
**little [16]** 10/11 11/18 13/8 16/4 23/13
  32/21 37/13 53/17 53/18 53/22 53/25
  54/19 60/7 61/17 63/24 64/24
**live [17]** 54/12 55/11 55/12 55/16 55/21
  55/22 55/25 56/24 57/12 57/14 57/20
  58/9 58/14 58/14 58/25 59/2 59/10
**liz.brady [1]** 3/8
**Lizabeth [1]** 3/6
**LLP [2]** 3/21 4/14
**loaded [1]** 22/18
**local [1]** 33/11
**London [1]** 43/19
**long [2]** 35/1 56/13
**longer [2]** 53/23 54/20
**look [13]** 12/1 15/2 22/5 30/9 32/16
  41/12 57/1 60/22 60/22 61/25 63/1 63/5
  63/8
**looked [2]** 32/19 50/17
**looking [13]** 6/12 11/11 15/2 18/1 21/4
  24/21 26/4 27/13 27/23 34/16 49/7
  50/24 61/9
**looks [1]** 15/5
**lot [23]** 8/25 8/25 10/17 10/18 11/15
  12/5 17/4 17/20 21/1 24/13 28/7 33/25
  34/2 34/4 35/2 35/22 38/10 39/5 49/15
  49/18 56/9 56/12 62/4
**lots [2]** 20/25 43/21
**Louisiana [1]** 4/6
**LOWENSTEIN [1]** 4/14
**lowenstein.com [1]** 4/16
**lurking [1]** 28/17

## M

**machine [1]** 28/9
**made [6]** 8/17 12/9 12/23 21/21 45/16
  57/23
**magistrate [3]** 15/11 26/3 26/6
**mailing [1]** 65/15
**main [2]** 3/16 24/11
**major [5]** 11/17 13/2 17/23 33/14 62/2
**Majoras [2]** 4/1 6/1
**majority [1]** 54/1
**make [22]** 12/17 16/8 24/1 24/16 28/7
  28/9 29/20 29/20 32/22 36/4 36/7 36/14
  49/8 50/11 52/18 55/4 58/13 60/23
  61/25 63/4 63/23 63/25
**makes [1]** 39/8
**making [2]** 9/21 24/12
**many [7]** 30/23 35/16 48/2 48/15 55/10
  57/13 58/4
**March [3]** 7/12 8/5 10/8
**March 3rd [2]** 7/12 8/5
**Mark [2]** 1/15 5/7
**mark.w.ryan [1]** 1/19
**market [2]** 20/1 20/9
**markets [9]** 19/24 20/3 20/4 20/5 20/8
  33/9 33/10 33/11 51/13
**massive [1]** 27/25
**master [7]** 26/6 26/8 26/10 60/12 60/20
  61/7 61/25
**material [6]** 9/3 15/19 15/20 29/4 52/24
  52/25
**materials [7]** 16/9 27/10 28/2 29/1 52/13
  53/7 65/15
**math [1]** 8/25
**matter [6]** 20/16 42/23 42/23 46/5 50/11
  66/4
**matters [1]** 47/14
**max [1]** 57/12
**may [38]** 6/14 6/18 7/14 9/16 9/18 10/16

**13/1 17/15 17/17 21/12 22/11 22/16
  25/16 26/2 26/4 29/24 31/20 36/24 37/6
  37/7 37/8 37/8 38/4 38/5 39/11 39/25
  43/10 43/11 48/12 48/12 48/22 49/12
  50/17 58/18 59/19 59/22 63/14 64/23**
**maybe [7]** 17/15 19/21 38/16 51/22
  53/21 53/24 60/25
**McCalips [1]** 4/5
**McCallips [1]** 6/3
**McConnell [1]** 4/2
**me [48]** 7/3 7/17 7/19 8/9 10/4 10/21
  12/7 14/18 16/6 19/24 21/9 24/1 24/3
  26/13 28/4 28/18 31/3 32/15 34/19 35/6
  35/7 35/14 36/17 37/19 37/24 38/19
  40/12 41/25 43/5 43/7 43/16 45/23
  46/14 48/20 50/13 50/21 51/22 56/8
  57/15 57/18 60/15 61/4 62/4 62/12
  62/19 62/21 64/12 65/15
**mean [14]** 21/25 28/9 28/12 34/24 39/24
  42/20 45/16 48/3 50/15 51/17 56/25
  58/7 62/1 62/16
**means [2]** 35/1 60/22
**meant [5]** 26/7 34/20 35/10 35/19 36/1
**measuring [1]** 47/14
**mediation [1]** 62/20
**meet [3]** 28/13 41/9 41/20
**meeting [1]** 15/3
**meetings [1]** 11/9
**memory [2]** 44/4 44/19
**merged [2]** 17/16 29/24
**merger [19]** 6/17 6/18 7/6 12/17 24/16
  25/4 25/22 27/3 27/4 27/4 27/5 27/19
  29/23 32/19 32/21 33/22 44/7 51/24
  55/18
**mergers [7]** 25/18 26/1 27/19 28/5 32/18
  32/18 61/12
**met [1]** 15/12
**micromanage [2]** 30/11 39/23
**Microsoft [1]** 35/24
**mid [1]** 31/16
**mid-July [1]** 31/16
**might [5]** 5/12 5/13 32/7 37/3 57/7
**miles [1]** 25/22
**million [4]** 10/15 40/24 42/22 45/8
**millions [6]** 6/19 27/7 27/10 27/10 27/16
  47/24
**mind [3]** 9/4 49/18 59/7
**minute [1]** 64/6
**minutes [1]** 64/17
**Mitchell [2]** 1/21 5/19
**Mitchell-Tombras [2]** 1/21 5/19
**modification [1]** 42/6
**modifications [1]** 42/14
**month [1]** 10/12
**months [1]** 41/3
**more [23]** 12/13 12/14 12/18 12/18
  12/18 13/19 14/2 15/6 20/17 20/19 21/2
  21/22 24/16 32/7 32/22 33/6 34/25
  53/18 53/25 59/5 60/7 63/24 64/8
**morning [11]** 5/8 5/9 5/10 5/12 5/15 5/18
  5/22 5/25 6/5 6/8 23/14
**most [8]** 11/4 16/1 16/5 16/16 26/3
  28/15 44/25 63/15
**mostly [1]** 32/11
**motion [1]** 6/25
**motions [1]** 43/4
**Movant [1]** 4/10
**move [7]** 15/18 16/6 26/16 28/18 36/17
  50/13 58/12
**moving [1]** 28/10 60/19 65/1
**Mr [3]** 15/8 26/21 42/20
**Mr. [1]** 13/23
**Mr. Horton's [1]** 13/23
**much [5]** 13/19 15/20 39/23 53/9 65/14

**must [2]** 56/9 58/9
**muster [1]** 25/22
**my [34]** 6/3 6/7 7/20 9/16 9/21 13/16
  14/13 14/19 15/25 18/22 21/25 23/11
  26/16 33/4 36/21 38/22 44/4 44/19 50/24
  52/3 52/17 53/8 53/12 53/21 55/7 56/22
  57/6 60/3 63/2 63/9 63/17 64/7 65/6
  65/7
**MYERS [3]** 3/21 6/6 15/1
**myfloridalegal.com [1]** 3/8
**myself [1]** 13/12

## N

**name [1]** 57/25
**named [1]** 34/10
**names [4]** 31/3 31/7 31/8 57/19
**narrow [3]** 28/8 36/24 50/16
**narrowed [1]** 51/1
**narrowing [1]** 28/6
**Nashville [1]** 3/11
**nature [4]** 16/7 51/1 57/19 57/19
**necessarily [1]** 38/7
**necessary [1]** 50/22
**need [38]** 8/3 10/21 12/2 16/9 18/18
  21/2 23/18 28/9 28/14 29/17 30/22 31/8
  32/16 34/15 36/1 36/25 41/7 41/12
  43/13 49/10 50/7 53/20 53/22 55/4
  55/11 58/14 58/23 58/25 59/3 60/21
  63/1 63/14 63/23 63/25 64/9 64/9 65/9
  65/13
**needed [2]** 24/1 44/17
**needs [3]** 8/6 49/15 54/5
**negating [1]** 38/21
**negotiable [1]** 7/15
**network [7]** 22/6 25/2 25/3 31/11 31/13
  57/24 58/1
**networks [2]** 24/15 44/4
**never [2]** 50/5 51/23
**new [4]** 4/15 9/5 9/5 24/14 25/3 25/7
  41/21
**news [1]** 7/3
**next [6]** 26/16 40/8 45/19 45/21 46/8
  47/4
**Nicholas [1]** 3/1
**nicholas.bush [1]** 3/4
**night [4]** 19/11 26/24 26/25 34/6
**nine [6]** 40/22 41/1 41/11 42/2 43/8
  43/17
**nitty [1]** 54/5
**nitty-gritty [1]** 54/5
**no [29]** 1/3 7/18 7/19 9/4 9/5 10/9 10/9
  10/23 11/9 11/10 11/11 11/21 14/1 14/8
  16/24 18/15 18/15 19/16 20/8 31/23
  33/25 34/7 34/7 34/13 34/21 50/11
  51/25 55/5 59/16
**none [2]** 32/19 32/22
**nonjury [1]** 55/6
**noon [1]** 65/4
**North [1]** 3/11
**Northwest [2]** 25/19 27/3
**not [89]**
**Note [1]** 16/4
**notes [1]** 33/5
**Nothing [1]** 9/5
**notice [1]** 29/1
**notifications [1]** 6/17
**November [3]** 7/10 37/22 64/23
**November 12th [1]** 7/10
**November 25th [1]** 64/23
**now [17]** 9/1 11/13 12/20 17/8 20/7 23/4
  27/6 34/13 37/1 41/9 44/8 44/9 45/13
  47/23 48/25 57/12 59/20
**nowhere [1]** 43/19
**number [5]** 20/18 33/10 52/1 52/4 60/1

**N**

**numbers [4]** 8/25 9/2 16/21 47/16
**NW [11]** 1/17 1/22 2/2 2/7 2/12 2/23 3/2 3/22 4/6 4/11 4/22
**NY [1]** 4/15

**O**

**O'MELVENY [3]** 3/21 6/6 15/1
**O'Neill [2]** 2/1 5/22
**O'Rourke [2]** 3/20 6/7
**oag.state.va.us [1]** 3/18
**obtain [1]** 10/2
**obtained [1]** 16/23
**obviously [12]** 16/13 22/13 22/22 32/9 32/11 35/8 36/23 41/20 50/1 53/16 60/19 63/6
**occurring [1]** 29/3
**occurs [1]** 19/23
**October [7]** 37/23 50/10 54/3 60/8 63/15 63/18 65/2
**October 1st [2]** 63/18 65/2
**October 25 [1]** 50/10
**October 4th [1]** 37/23
**October 7th [1]** 63/15
**of 2012 [2]** 6/14 10/8
**of 2013 [5]** 6/17 6/18 6/23 7/13 10/8
**of 2014 [1]** 7/12
**off [6]** 8/6 13/16 15/22 51/19 53/21 64/25
**OFFICE [6]** 2/17 2/22 3/1 3/6 3/10 3/15
**offices [1]** 7/24
**Official [1]** 4/21
**OH [2]** 4/3 63/16
**okay [41]** 5/17 7/19 13/17 14/18 16/3 16/6 16/22 18/15 18/20 18/25 19/22 20/16 21/4 23/25 24/2 26/6 26/9 28/4 31/1 31/25 35/6 36/3 36/11 39/21 40/14 41/25 42/16 46/16 47/9 48/2 48/13 48/15 49/9 50/3 50/13 51/20 52/5 56/16 57/7 61/2 62/15
**omm.com [3]** 3/24 3/24 3/25
**once [6]** 25/4 27/12 30/2 30/4 37/5 59/22
**one [35]** 4/19 10/22 11/1 11/4 11/25 12/13 12/14 12/14 12/20 13/1 13/15 13/15 21/17 22/6 24/11 25/16 28/18 32/7 32/7 38/1 38/14 40/8 40/9 48/12 48/12 48/20 48/22 50/20 50/25 52/10 55/15 60/22 61/1 62/8 64/9
**ones [5]** 21/12 22/2 58/8 58/13 60/6
**only [6]** 28/7 29/19 32/23 33/7 41/23 58/24
**openings [1]** 56/25
**operations [1]** 31/11
**opponents [1]** 32/13
**opportunity [3]** 7/25 11/24 15/18
**opposed [5]** 24/20 38/6 46/6 55/12 63/9
**Oracle [3]** 32/21 33/4 50/18
**order [15]** 9/16 12/1 12/2 19/12 35/14 52/7 52/9 53/12 57/3 60/14 60/18 60/20 62/12 63/7 64/22
**ordered [1]** 30/13
**ordering [1]** 35/17
**ordinary [1]** 42/21
**organization [1]** 17/1
**originally [1]** 21/6
**other [43]** 10/1 12/17 13/6 13/10 13/15 17/14 17/17 17/24 18/18 18/22 21/13 21/15 24/11 24/19 24/24 25/16 25/18 26/21 28/5 29/15 30/2 30/13 32/22 37/7 37/20 40/13 42/7 46/17 46/24 47/12 48/22 50/18 50/25 51/25 52/19 54/10 56/11 58/12 58/24 61/12 62/18 64/24

**others [3]** 35/13 45/22 46/8
**otherwise [3]** 14/13 65/1 65/7
**ought [3]** 15/10 26/14 46/14
**our [44]** 11/21 11/22 11/23 12/3 12/25 17/11 22/6 23/11 24/9 24/10 24/22 25/9 25/22 26/12 26/17 26/21 31/17 33/17 34/17 37/23 38/21 39/9 39/12 39/12 39/17 39/17 41/10 41/12 41/19 43/20 44/19 46/13 49/18 49/19 49/20 49/20 50/10 51/8 51/12 52/4 55/24 57/6 59/23 59/25
**ours [3]** 18/24 61/11 61/11
**out [42]** 5/13 7/25 10/5 11/21 13/21 15/6 15/7 15/10 18/1 19/18 20/13 23/22 25/25 28/9 30/14 30/15 30/16 30/18 32/17 33/1 39/4 39/5 39/14 39/15 39/16 44/1 45/20 49/11 52/9 53/10 54/19 58/25 59/12 60/14 60/20 62/25 63/2 63/10 63/13 64/4 64/12 65/9
**outside [3]** 49/20 50/5 52/9
**over [5]** 6/11 7/19 23/18 57/17 65/14
**overjoyed [1]** 22/15
**overlap [1]** 59/21
**own [4]** 13/23 23/11 24/22 56/22
**Oxenham [1]** 3/15

**P**

**PA [1]** 2/19
**page [1]** 14/16
**pages [4]** 6/19 27/8 27/10 27/17
**pair [4]** 19/24 20/3 20/3 20/8
**paper [3]** 7/7 54/12 57/1
**papers [7]** 10/18 10/22 11/21 12/1 33/18 43/22 44/4
**Parker [3]** 3/20 6/6 15/1
**Parker's [1]** 26/21
**parsed [1]** 59/12
**part [5]** 11/22 12/22 13/22 45/11 48/4
**particular [6]** 30/5 37/16 49/12 53/3 65/6 65/11
**particularly [2]** 45/20 54/19
**parties [37]** 6/16 6/22 7/1 8/3 10/5 10/5 11/1 12/12 16/8 16/13 16/14 16/18 17/3 17/5 18/8 18/18 18/23 21/3 21/5 21/11 22/2 23/17 23/22 24/7 24/22 24/24 29/9 29/9 32/12 32/14 34/9 34/12 52/8 52/18 53/8 65/3 65/17
**parts [1]** 33/3
**party [22]** 7/14 16/23 16/24 16/24 19/12 21/6 22/3 22/13 23/23 24/10 24/18 25/14 28/20 29/19 31/23 32/13 35/11 52/15 52/17 52/23 53/14 53/14
**passes [1]** 25/22
**past [1]** 27/18
**Pennsylvania [2]** 1/17 2/18
**people [14]** 11/19 30/24 31/2 35/16 39/6 39/14 45/20 50/5 58/1 61/3 61/13 63/13 64/16 64/8
**per [2]** 32/2 50/14
**percent [2]** 18/17 29/23
**percentage [3]** 16/17 18/5 18/6
**percentages [1]** 17/25
**perfectly [3]** 17/13 32/20 52/4
**perhaps [6]** 8/22 8/23 22/4 53/17 53/24 55/19
**period [9]** 10/10 15/17 16/14 30/16 31/14 37/18 56/7 56/23 61/23
**permission [3]** 61/18 61/19 62/8
**person [6]** 32/8 39/12 58/10 60/13 62/23 64/9
**perspective [4]** 35/7 50/3 51/21 65/7
**Philadelphia [1]** 43/19
**phone [1]** 62/5

**picking [1]** 39/7
**picture [1]** 24/20
**Pilots [1]** 4/10
**PL [1]** 3/7
**PL-01 [1]** 3/7
**place [1]** 38/11
**places [1]** 23/19
**plaintiff [5]** 1/15 2/17 5/11 14/10 42/9
**plaintiffs [20]** 1/4 7/11 7/22 8/23 9/16 9/18 9/25 14/11 16/7 24/5 32/1 36/18 36/20 36/23 37/6 37/10 50/14 50/20 53/20 56/19
**plan [2]** 7/8 24/23
**planning [6]** 11/10 11/15 31/11 31/13 35/7 44/16
**plans [1]** 57/23
**pleadings [1]** 6/12
**please [3]** 5/5 14/13 29/25
**plenty [1]** 34/15
**plus [2]** 35/20 35/20
**point [21]** 5/14 10/10 11/21 12/24 15/24 26/21 29/13 34/16 38/3 39/7 42/1 45/16 48/3 48/8 52/4 53/16 54/3 59/8 62/24 63/11 64/1
**points [1]** 24/11
**poised [2]** 13/21 13/25
**position [5]** 45/14 46/12 47/3 47/10 60/8
**positions [1]** 40/19
**possibility [1]** 48/25
**possible [5]** 12/18 23/7 29/4 57/4 60/15
**potential [1]** 58/22
**potentially [2]** 46/7 53/23
**powerful [1]** 57/25
**practical [2]** 20/16 27/25 46/5
**practices [1]** 13/1
**prattle [1]** 12/13
**precisely [1]** 35/8
**predict [1]** 23/8
**prefer [1]** 59/2
**prepare [1]** 63/25
**prepared [5]** 34/24 35/4 51/16 52/9 60/2
**present [4]** 4/14 46/20 46/21 47/2
**presented [2]** 43/9 54/12
**presenting [2]** 42/4 58/15
**press [1]** 12/24
**presumably [4]** 27/11 42/12 45/21 48/4
**pretrial [2]** 54/7 54/13
**previous [1]** 26/1
**previously [1]** 26/25
**pricing [5]** 12/25 13/1 17/1 17/2 33/14
**principal [2]** 11/5 11/23
**principally [1]** 48/21
**prior [1]** 10/3
**pro [1]** 25/7
**pro-competitive [1]** 25/7
**probably [8]** 28/24 35/13 38/11 50/7 54/1 54/3 54/15 55/22
**problem [8]** 9/10 40/17 54/18 59/1 62/9 62/11 64/4 64/8
**problems [2]** 33/21 53/6
**procedure [3]** 43/6 43/6 47/6
**procedures [2]** 37/12 44/25
**proceed [2]** 39/1 39/1
**proceedings [4]** 14/4 26/2 65/18 66/4
**process [3]** 15/22 57/16 61/12
**produce [5]** 27/10 28/2 38/3 42/12 50/5
**produced [2]** 6/19 52/8
**producers [1]** 53/14
**producing [4]** 14/24 36/24 37/22 53/7
**product [3]** 41/11 61/11 61/11
**production [5]** 9/15 9/19 11/14 12/10 31/19
**profitable [1]** 13/24
**progresses [1]** 39/25

**P**

**proof [8]** 38/15 38/20 38/25 39/10 40/6 40/18 42/11 48/10
**properly [1]** 20/8
**proponent [1]** 46/21
**proponents [2]** 37/16 46/5
**proposal [4]** 37/22 39/9 40/5 63/9
**proposals [2]** 29/1 62/13
**propose [5]** 36/18 36/19 50/15 52/1 62/22
**proposed [6]** 9/13 32/2 40/21 50/10 60/14 64/21
**proposing [2]** 40/10 54/8
**proposition [2]** 29/18 55/8
**propound [2]** 9/16 9/18
**prosecute [1]** 8/4
**Protection [1]** 3/16
**protective [3]** 52/7 52/9 53/12
**provide [3]** 42/9 43/12 52/20
**provided [3]** 26/24 57/1 64/21
**providing [1]** 45/14
**provision [2]** 53/13 62/1
**proxy [1]** 33/19
**Public [1]** 2/23
**purpose [1]** 24/16
**pursued [1]** 22/3
**pursuing [1]** 19/3
**put [12]** 6/10 11/1 20/6 30/12 37/11 44/1 51/10 54/24 55/23 60/5 60/14 63/6
**putting [1]** 63/9

**Q**

**question [24]** 10/20 10/23 14/1 14/20 16/1 17/6 18/10 19/1 20/9 22/18 26/16 28/19 33/25 37/25 38/2 40/2 44/13 45/10 45/24 48/11 50/20 52/10 52/19 53/24
**questions [16]** 6/13 7/21 8/9 8/13 8/15 9/22 13/12 24/3 32/8 37/20 40/13 41/24 46/18 47/12 59/3 60/4
**quick [1]** 14/20
**quickly [4]** 15/18 32/23 35/1 49/8
**quite [5]** 13/3 19/15 23/6 29/6 44/15
**quote [1]** 7/7

**R**

**raise [2]** 46/17 53/2
**raised [2]** 12/4 33/21
**ramifications [1]** 47/18
**read [4]** 23/5 27/2 61/16 61/19
**readily [1]** 51/4
**reading [1]** 17/20
**ready [3]** 27/9 27/16 38/3
**Reagan [3]** 29/22 29/24 33/13
**real [4]** 33/7 47/14 47/23 47/23
**reality [3]** 44/11 47/21 48/1
**realize [4]** 9/20 52/11 55/11 57/16
**really [11]** 10/9 20/14 20/17 20/19 33/19 34/1 37/16 41/11 45/24 50/7 58/14
**reason [6]** 26/19 40/21 53/3 55/5 55/17 58/25
**reasonable [3]** 8/8 30/16 55/8
**rebut [2]** 47/5 47/5
**rebuttal [13]** 37/14 37/14 37/15 37/17 40/9 40/19 42/18 45/21 46/6 46/8 46/24 47/2 48/17
**rebuttals [1]** 47/4
**recalling [1]** 31/23
**receive [1]** 16/7
**received [7]** 10/9 10/15 11/13 14/25 15/1 17/4 31/19
**recent [1]** 32/19
**recently [2]** 12/4 12/23

**recess [3]** 64/16 64/18 64/19
**record [5]** 5/6 50/7 50/1 63/7 66/3
**redo [1]** 41/18
**refer [1]** 6/2
**referred [2]** 33/17 38/14
**referring [1]** 43/18
**reflect [1]** 33/5
**regard [2]** 25/5 25/8
**regarding [1]** 7/5
**related [2]** 27/2 52/13
**relating [1]** 33/13
**relatively [2]** 12/4 51/15
**relevant [2]** 20/5 30/9
**reluctant [1]** 30/6
**rely [2]** 13/22 45/23
**remain [1]** 44/7
**remaining [1]** 17/17
**reorganization [1]** 7/5
**repeat [1]** 13/12
**report [12]** 7/1 26/15 39/9 39/12 39/13 39/17 39/17 41/17 49/16 61/13 65/5 65/12
**Reporter [2]** 4/21 4/21
**reports [24]** 7/3 37/3 37/23 38/3 38/12 39/15 40/1 40/4 40/23 40/24 40/25 41/4 41/6 41/17 41/18 41/19 41/23 42/2 42/12 42/18 43/9 43/17 49/11 50/10
**representative [1]** 14/14
**represented [2]** 23/10 30/8
**request [5]** 15/2 21/1 27/1 29/20 54/15
**requested [1]** 29/7
**requests [24]** 9/15 9/19 12/8 13/11 15/16 18/5 20/23 20/24 21/11 21/12 21/21 22/23 23/16 26/23 27/16 28/1 50/14 50/15 50/23 51/7 51/14 52/14 52/19 61/10
**require [4]** 12/10 12/11 35/24 53/8
**required [1]** 20/11
**requiring [1]** 33/24
**resistance [1]** 22/24
**resolving [1]** 62/5
**resources [3]** 7/22 35/4 36/7
**respect [2]** 61/6 61/12
**respond [7]** 26/18 26/20 36/22 41/8 41/15 42/25 44/21 46/14 46/15 50/23 51/6
**response [1]** 7/18
**responses [1]** 28/21
**responsibilities [1]** 64/24
**responsible [1]** 31/12
**rest [2]** 20/18 59/5
**restructuring [1]** 57/24
**resulting [1]** 44/3
**results [1]** 29/23
**review [2]** 41/12 28/3
**reviewed [1]** 52/13
**revisit [1]** 63/14
**revisited [1]** 53/16
**RFAs [1]** 52/1
**rfleishman [1]** 4/12
**Richard [3]** 3/20 6/5 14/25
**Richmond [2]** 3/17 20/2
**right [44]** 5/24 6/4 6/8 6/9 9/7 10/8 10/16 13/15 14/9 17/12 19/16 20/22 23/3 23/25 25/12 26/22 28/17 30/25 31/15 32/4 35/6 36/5 36/11 36/17 38/17 38/22 39/7 41/9 42/20 45/5 46/23 47/1 48/24 50/13 51/5 57/10 59/9 59/23 60/3 61/8 61/14 61/22 64/6 65/16
**rkmccalips [1]** 4/8
**Robert [1]** 4/10
**Robson [3]** 3/21 6/7
**Rodino [1]** 6/16
**role [1]** 52/12

**room [6]** 1/17 2/1 4/22 53/20 63/6 65/10 65/11
**Rosanna [2]** 4/5 6/3
**rough [2]** 34/5 59/8
**roughly [9]** 18/6 30/15 32/19 34/5 48/16 48/18 49/1 57/18 64/14
**routes [1]** 11/6
**rparker [1]** 3/24
**RPR [3]** 4/21 66/2 66/8
**Rule [1]** 41/20
**ruling [1]** 7/7 9/21
**Rushkoff [1]** 2/22
**Ryan [6]** 1/15 2/11 5/7 5/16 15/8 42/20
**ryan.danks [1]** 2/15

**S**

**said [13]** 21/6 26/6 31/10 31/12 34/13 35/10 35/19 36/1 38/4 40/15 41/24 45/4 45/7
**same [7]** 8/1 14/16 22/11 38/6 38/24 45/19 46/7
**San [1]** 4/19
**SANDLER [1]** 4/14
**Sansome [1]** 4/19
**Sarah [1]** 3/15
**save [2]** 19/14 62/4
**savings [1]** 11/3
**saw [1]** 8/24
**say [33]** 9/25 12/1 17/16 18/13 18/15 18/17 19/25 20/7 20/8 20/24 28/4 28/17 29/20 29/25 31/11 32/16 32/22 34/5 41/13 44/6 46/10 46/10 46/12 46/14 47/11 47/17 47/20 49/10 55/12 56/9 62/12 62/21 64/14
**saying [8]** 22/4 25/6 27/8 27/16 44/14 46/13 47/25 59/24
**schedule [17]** 8/2 8/6 8/10 27/23 27/23 28/11 28/24 38/9 45/4 45/4 47/23 50/24 57/18 62/25 63/2 64/21
**scheduled [1]** 28/21
**schedules [6]** 44/5 44/6 44/7 44/9 44/18 45/6
**scheduling [4]** 1/10 6/9 7/9 28/24
**scope [7]** 14/9 21/10 24/4 36/25 38/8 50/16 54/10
**Scott [1]** 6/16
**search [1]** 15/4
**second [5]** 18/2 19/1 43/7 63/16 64/10
**Secondly [1]** 24/25
**Section [2]** 2/23 3/16
**see [18]** 13/6 17/9 23/15 27/20 27/20 28/17 41/7 41/25 42/3 42/15 47/18 49/15 49/23 60/9 63/8 63/23 64/12 65/1
**seek [1]** 49/24
**seem [4]** 27/14 32/13 44/12 52/15
**seems [4]** 26/13 29/2 38/19 46/14
**seen [3]** 10/22 42/21 42/22
**sense [27]** 7/20 9/23 14/8 15/15 15/20 16/10 16/16 19/7 22/18 28/7 28/22 29/5 29/13 30/10 31/4 32/10 32/20 39/8 40/3 44/24 46/18 48/6 51/20 54/9 54/18 57/15 60/15
**sensitive [4]** 10/11 23/16 23/23 47/16
**separate [5]** 10/5 38/1 40/23 49/11 59/25
**September [3]** 9/9 19/18 65/4
**September 10th [1]** 19/18
**September 30th [1]** 65/4
**September 6th [1]** 9/9
**series [1]** 54/10
**serve [2]** 22/6 62/10
**served [3]** 19/10 25/10 26/24
**set [16]** 6/9 8/2 21/23 21/23 28/11 28/12 30/4 30/14 50/4 54/25 57/18 60/20 63/2

**S**

**set... [3]** 63/11 64/3 64/5
**setting [1]** 30/21
**seven [8]** 31/2 31/5 31/22 31/24 33/7 50/23 51/7 52/3
**several [3]** 35/11 41/3 51/24
**shared [3]** 52/24 52/25 53/15
**shift [2]** 39/25 57/17
**short [1]** 62/24
**shorten [2]** 15/17 16/14
**shorter [1]** 54/21
**shortly [1]** 40/2
**should [8]** 9/5 12/6 30/20 38/19 38/23 49/21 58/18 65/9
**shouldn't [1]** 23/19
**shown [1]** 47/15
**side [5]** 29/15 32/2 42/7 50/14 51/25
**sides [3]** 28/1 28/8 49/4
**signed [1]** 6/18
**significance [1]** 62/2
**significant [2]** 18/19 33/22
**simple [1]** 29/20
**simultaneous [4]** 35/2 36/19 40/5 40/16
**simultaneous/staggered [1]** 40/16
**simultaneously [1]** 36/8
**since [10]** 5/13 11/13 29/6 38/9 38/19 50/21 54/19 56/20 57/5 64/3
**single [1]** 34/14
**sit [2]** 24/1 43/5
**sitting [1]** 25/6
**six [3]** 55/22 55/25 55/25
**size [1]** 33/18
**skip [1]** 64/23
**slightly [1]** 45/14
**slots [4]** 29/21 29/23 30/1 33/13
**small [1]** 47/13
**so [137]**
**soallen [1]** 3/18
**some [87]**
**somebody [2]** 14/11 45/3
**something [18]** 15/6 15/10 15/25 19/8 27/7 34/24 41/14 41/21 42/17 46/3 47/11 53/1 53/4 53/21 57/3 62/2 62/19 65/13
**sometimes [4]** 23/21 50/6 57/8 62/7
**somewhat [1]** 21/14
**soon [1]** 60/15
**sooner [1]** 60/25
**sophisticated [1]** 30/8
**sorry [5]** 34/19 34/21 34/22 49/3 56/18
**sort [15]** 6/11 19/6 28/18 30/14 32/21 50/18 54/9 60/3 62/17 62/24 62/25 63/8 63/9 63/22 64/11
**sounds [1]** 24/6
**source [1]** 21/19
**Southwest [4]** 16/25 24/13 27/5 35/12
**speak [3]** 14/11 14/12 24/9
**speaking [1]** 14/15
**special [7]** 26/5 26/8 26/10 60/12 60/20 61/7 61/25
**specific [4]** 17/10 19/17 20/17 51/9
**specifically [1]** 27/6
**specifications [1]** 27/1
**split [2]** 48/16 51/18
**spoke [1]** 17/19
**spring [2]** 6/20 10/8
**spring/summer [1]** 6/20
**Square [1]** 2/18
**stage [4]** 45/21 46/8 47/4 60/1
**staggered [6]** 36/19 36/21 40/16 43/11 43/13 46/4
**Stallings [2]** 2/6 5/20
**stand [3]** 19/9 25/6 36/2

**standalone [1]** 13/20
**standard [2]** 25/20 25/22
**standards [1]** 41/20
**stands [1]** 64/16
**staple [1]** 45/6
**start [16]** 6/13 8/9 15/4 28/23 29/14 30/21 35/7 37/19 38/1 38/1 38/21 49/13 55/1 55/2 55/2 60/19
**started [2]** 44/8 57/2
**starting [4]** 8/13 29/14 42/2 61/24
**starts [1]** 15/22
**state [3]** 8/22 8/22 50/11
**statements [2]** 13/23 13/24
**STATES [12]** 1/1 1/3 1/11 2/17 5/3 5/8 5/11 5/16 5/19 5/21 5/23 33/15
**stating [1]** 43/7
**status [3]** 63/11 65/5 65/12
**statuses [1]** 28/13
**STEPTOE [1]** 4/10
**steptoe.com [1]** 4/12
**stick [1]** 21/12
**still [6]** 10/18 16/5 18/16 29/3 37/5 55/3
**stipulations [1]** 50/17
**stone [1]** 7/16
**Strawberry [1]** 2/18
**Street [9]** 1/22 2/2 2/7 2/12 2/23 3/2 3/16 3/22 4/19
**strict [1]** 53/22
**strictly [1]** 37/25
**study [1]** 41/12
**stuff [1]** 60/4
**subject [3]** 42/6 43/25 61/9
**submit [3]** 39/9 39/10 39/11
**submitted [1]** 6/15
**subpoena [1]** 6/16
**substantial [1]** 17/7
**successful [1]** 12/18
**suggest [1]** 55/22
**suggested [3]** 7/10 7/12 17/15
**suggestions [1]** 60/23
**suit [2]** 6/24 10/3
**Suite [6]** 1/23 2/3 2/8 2/24 3/2 4/2
**summarize [1]** 21/5
**summary [1]** 42/10
**summer [1]** 6/20
**supplementation [2]** 37/13 42/18
**sure [10]** 8/23 18/3 24/1 30/22 36/7 36/14 58/13 61/5 61/25 63/25
**surprise [1]** 26/25
**suspect [3]** 25/5 26/2 59/20
**Suzanne [1]** 2/1
**synergies [2]** 38/18 44/3
**system [4]** 11/10 11/15 11/20 19/21
**systems [1]** 11/6

**T**

**take [28]** 15/11 16/15 21/9 22/9 22/22 28/2 29/17 29/19 29/21 30/3 31/13 34/15 35/15 38/11 38/15 44/2 44/6 54/22 55/17 56/1 56/2 56/13 61/3 61/25 62/1 63/1 63/4 64/6
**taken [1]** 31/14
**takes [1]** 23/21 23/22
**taking [2]** 30/7 34/14
**talk [10]** 48/23 54/2 57/6 57/22 60/7 61/13 62/13 64/7 65/6 65/7
**talked [5]** 21/13 23/13 26/15 49/17 53/17
**talking [17]** 13/4 14/23 15/4 15/21 18/4 19/2 24/23 26/5 37/3 45/13 48/4 48/6 49/1 49/4 53/19 58/3 60/19
**Tallahassee [1]** 3/7
**teams [1]** 11/19 11/19
**tell [7]** 7/3 16/20 34/3 36/20 41/9 57/18

**telling [1]** 35/18
**template [1]** 47/23
**tendency [1]** 58/9
**term [1]** 38/16
**termination [1]** 7/13
**terms [42]** 7/24 8/10 9/13 9/23 14/12 14/22 14/24 15/4 15/15 18/1 18/11 19/2 21/4 21/11 22/12 24/4 28/5 28/14 32/9 32/20 37/2 37/7 38/5 39/25 42/9 42/10 42/11 43/13 45/17 47/10 48/16 50/21 53/18 53/23 54/6 56/4 58/15 62/20 63/24 64/11 64/24 65/8
**testify [1]** 58/2
**testifying [1]** 58/8
**testimony [5]** 24/18 36/25 49/25 56/24 57/20
**testing [1]** 31/18
**than [13]** 15/17 25/21 30/13 32/7 32/22 33/6 45/14 54/8 54/20 56/2 57/8 64/9 64/14
**thank [7]** 5/15 10/6 26/17 28/3 52/6 62/10 65/16
**Thanksgiving [2]** 64/25 64/25
**that [308]**
**that's [56]** 7/15 10/13 11/20 14/5 14/6 15/21 16/3 17/4 17/5 18/15 18/19 18/21 19/16 20/6 20/13 20/15 20/22 21/16 22/6 22/18 23/3 26/7 27/7 30/18 30/24 32/24 33/23 33/24 34/1 34/9 35/14 35/21 36/11 37/9 38/25 44/8 44/13 44/14 44/15 44/19 45/5 45/5 45/24 45/24 47/6 48/11 48/14 48/25 49/14 59/5 60/1 62/2 62/8 62/11 63/17 64/11
**their [60]** 6/16 7/1 7/22 11/5 11/6 11/6 11/13 11/22 12/1 12/20 13/23 15/1 17/8 19/15 19/17 20/13 21/24 22/7 23/15 24/21 27/15 31/6 34/17 37/21 38/21 39/8 39/12 39/17 39/18 40/7 40/19 41/7 41/10 42/9 43/9 43/11 43/23 43/25 44/10 44/17 46/11 46/25 47/3 47/16 47/18 49/10 49/16 50/1 51/7 51/8 51/9 51/10 51/11 51/12 51/13 52/17 52/23 57/24 59/21 61/10 61/14
**theirs [1]** 39/10
**them [49]** 8/21 9/3 12/10 14/24 15/12 16/9 19/11 20/6 24/17 25/9 28/2 28/3 28/25 36/4 36/8 38/8 39/6 40/12 40/22 40/23 41/1 41/9 41/11 41/22 41/23 42/15 44/19 45/14 46/7 48/5 51/16 51/17 51/23 52/1 52/3 53/3 53/8 53/15 54/25 56/2 56/6 56/10 56/13 56/19 56/20 57/19 58/25 59/4 64/21
**themselves [3]** 13/14 42/3 49/21
**then [44]** 6/12 6/17 8/15 8/23 16/6 20/9 21/7 21/9 21/14 21/15 28/23 29/15 31/16 32/18 33/15 35/6 37/20 39/5 39/10 39/12 40/8 40/18 41/8 41/14 41/16 42/11 42/16 45/20 46/3 46/6 46/8 46/17 47/4 52/24 54/10 54/13 55/20 62/13 62/17 62/19 63/10 63/13 65/14 65/15
**theoretical [1]** 51/9
**theories [2]** 9/5 50/1
**theory [2]** 43/11 48/10
**there [64]** 8/12 8/25 8/25 10/9 11/3 11/9 11/10 11/17 11/18 11/19 12/5 12/12 12/15 12/22 13/8 13/9 16/4 16/8 17/14 17/17 17/23 17/23 20/18 21/25 22/5 25/4 25/5 25/16 26/2 27/14 27/15 28/20 29/2 30/19 31/5 31/23 32/14 33/3 33/5 33/5 33/6 33/10 34/1 35/10 36/18 37/13 37/18 37/25 43/24 44/1 48/5 49/14 49/15 49/16 50/17 51/15 52/10 53/22

T — Case 1:13-cv-01236-CKK   Document 17-3   Filed 08/04/13

**there... [6]** 53/25 59/20 65/5 65/11 65/12 65/13
**there's [27]** 8/8 8/25 10/23 10/23 14/2 17/6 24/13 28/1 29/6 32/3 32/8 33/12 33/15 33/25 35/13 35/22 41/14 49/22 53/1 53/3 54/9 54/10 54/16 55/1 55/5 58/9 62/13
**therefore [1]** 24/18
**these [38]** 7/16 11/12 14/21 14/23 17/7 20/3 20/10 23/9 23/15 23/16 24/18 24/24 27/25 29/2 29/7 33/11 33/22 35/2 36/7 40/3 40/9 40/13 40/25 41/4 41/6 41/18 42/12 43/8 45/19 45/24 45/25 50/18 51/23 55/17 56/22 58/10 58/19 61/12
**they [137]**
**they'll [2]** 16/15 22/22
**they're [18]** 18/22 22/10 23/17 25/21 27/9 27/11 27/13 37/15 40/3 43/8 46/2 46/3 46/24 47/20 51/3 56/21 61/14 62/17
**they've [2]** 25/25 42/22
**thing [1]** 62/3
**things [15]** 14/12 24/14 30/13 30/14 36/7 39/24 43/11 50/5 51/1 56/22 57/8 60/21 63/24 65/6 65/11
**think [71]**
**thinking [7]** 47/7 48/3 48/7 48/14 48/15 54/22 58/9
**third [40]** 6/22 10/5 12/12 16/8 16/13 16/18 16/23 16/24 16/24 18/8 21/3 21/5 21/6 21/11 22/2 22/3 22/13 23/17 23/23 24/7 24/10 24/18 24/22 24/23 25/14 28/20 29/9 29/19 31/23 32/14 34/11 35/11 49/7 52/15 52/17 52/18 52/22 53/7 53/14 53/14
**this [118]**
**thoroughness [1]** 31/21
**those [36]** 8/14 9/2 9/4 10/18 10/19 13/7 13/13 13/17 17/5 19/17 20/5 20/8 21/23 21/23 22/9 26/3 26/4 30/2 30/24 31/13 31/21 31/22 31/24 38/24 39/9 40/6 41/10 42/9 42/18 44/7 44/9 44/18 55/16 57/1 59/20 64/22
**though [2]** 32/7 46/4
**thought [7]** 34/8 41/14 41/22 50/22 51/20 60/25 61/1
**thoughts [2]** 7/20 50/6
**three [14]** 13/7 31/14 31/16 48/8 48/9 48/9 48/13 48/19 49/1 49/2 49/5 49/5 56/14 59/16
**three-week [1]** 31/14
**through [13]** 8/15 10/17 10/19 18/17 31/16 31/20 32/17 32/23 47/10 53/1 55/17 56/11 63/6
**throwing [1]** 58/25
**ticket [1]** 21/18
**tighter [2]** 8/6 8/7
**time [30]** 6/11 8/1 10/17 15/2 15/17 16/14 22/22 23/22 23/24 26/11 28/3 30/16 34/16 37/13 38/6 39/6 39/22 43/3 45/19 46/7 50/11 54/16 54/22 55/23 55/24 56/2 56/22 56/23 57/17 62/4
**timeframe [1]** 60/6
**timeframes [1]** 30/12
**times [1]** 23/21
**timing [1]** 15/15
**titled [1]** 66/4
**TN [1]** 3/11
**today [8]** 6/10 8/21 15/13 19/9 22/5 42/2 48/24 52/10
**together [5]** 9/18 11/7 28/23 45/7 48/9

**told [4]** 11/8 11/9 19/23 31/18
**Tomoras [2]** 4/21 5/13
**too [4]** 8/5 44/22 53/22 63/4
**took [3]** 19/11 31/21 44/17
**tool [1]** 51/3
**top [1]** 13/16
**topics [3]** 32/12 40/3 65/10
**Tort [1]** 4/6
**total [5]** 17/3 31/6 48/18 59/11 61/16
**totally [1]** 32/9
**touch [1]** 25/25
**town [1]** 64/4
**transcript [2]** 1/10 66/3
**transparency [2]** 12/14 13/4
**transparent [3]** 13/1 13/2 13/3
**trial [22]** 6/25 7/10 35/20 37/22 52/14 53/18 54/5 54/19 56/20 56/24 57/2 57/12 58/11 58/19 58/23 60/4 62/5 63/16 63/17 63/24 64/23 65/8
**trials [5]** 54/23 55/5 56/11 61/23 62/6
**trouble [1]** 39/16
**try [2]** 15/7 32/17
**trying [26]** 15/14 15/20 16/10 19/7 22/21 25/3 28/22 29/5 29/13 30/10 30/12 30/14 30/18 31/4 32/10 32/20 33/1 39/4 43/5 44/24 45/15 46/18 57/18 58/12 62/25 63/3
**Tuesday [4]** 60/25 62/16 62/18 63/19
**tuning [1]** 52/12
**turn [1]** 10/7
**turning [2]** 23/18 54/19
**twist [1]** 41/21
**two [25]** 12/12 12/12 20/10 25/9 28/1 31/6 33/3 33/22 36/18 38/6 38/13 41/8 44/4 44/6 44/7 45/6 48/12 48/12 48/20 49/6 55/14 55/15 55/19 56/14 64/10
**type [1]** 15/16
**typical [3]** 30/13 41/17 56/17
**typically [1]** 6/2

**U**

**U.S [7]** 1/16 1/21 2/1 2/6 2/11 4/22 35/24
**unable [1]** 22/10
**under [6]** 18/22 25/21 37/21 41/20 43/10 53/8
**underline [1]** 8/23
**underlying [1]** 25/24
**understand [23]** 6/12 6/14 6/22 7/2 7/4 7/13 7/15 8/11 11/14 22/22 23/20 27/24 32/1 32/5 37/24 41/16 41/25 46/19 47/9 47/16 53/25 59/1 60/11
**understandable [1]** 11/20
**undertake [1]** 27/9
**undertaking [1]** 18/19
**unions [1]** 52/12
**UNITED [18]** 1/1 1/3 1/11 5/2 5/8 5/16 5/19 5/20 5/23 12/2 16/25 25/19 27/4 29/20 29/21 29/25 33/15 35/12
**United/Continental [1]** 25/19
**universe [3]** 48/4 48/6 48/13
**unless [4]** 14/19 42/1 47/11 54/24
**unlimited [2]** 9/19 50/18
**unreasonable [1]** 28/14
**Unsecured [3]** 52/11 52/24 53/13
**until [5]** 10/8 17/11 19/18 28/25 38/11
**unwilling [1]** 52/23
**up [30]** 6/9 8/10 9/11 10/16 14/10 17/6 19/1 23/23 24/22 26/11 27/21 27/22 28/6 30/21 34/13 34/18 35/14 35/15 39/7 41/21 45/8 53/1 53/18 54/25 55/21 57/3 60/11 62/2 64/3 65/12
**us [32]** 1/6 3/20 5/3 6/6 6/14 15/1 17/13 18/19 20/24 22/11 24/16 25/1 25/3

26/24 27/3 27/9 27/14 27/16 29/25 31/12 31/14 31/16 31/17 34/9 34/23 37/22 44/5 44/15 45/3 45/9 51/14 55/15
**USA [1]** 1/15
**usdoj.gov [5]** 1/19 1/24 2/4 2/10 2/15
**use [10]** 7/22 10/13 20/12 20/14 36/4 38/16 43/8 49/18 55/24 58/22
**used [2]** 25/20 53/11
**useful [2]** 45/17 54/17
**using [2]** 55/12 58/19
**usually [2]** 50/15 56/11
**utility [1]** 52/2

**V**

**VA [1]** 3/17
**value [1]** 32/19
**variety [1]** 21/25
**various [2]** 6/24 52/12
**versus [3]** 5/3 35/24 35/25
**very [26]** 11/12 11/18 12/23 13/22 15/22 16/3 20/17 24/12 24/14 24/19 29/24 30/8 32/23 33/22 33/22 34/5 35/11 47/13 47/16 47/18 51/23 55/12 57/25 57/25 61/24 65/14
**vic.domen [1]** 3/13
**Victor [1]** 3/10
**video [3]** 55/20 56/21 57/1
**view [9]** 12/4 42/1 42/8 42/9 46/21 52/3 52/4 52/18 55/3
**views [2]** 34/17 37/16
**vigorous [1]** 13/22
**vigorously [1]** 14/3
**Virgin [1]** 17/15
**volume [6]** 9/23 14/9 14/22 16/10 18/16 29/6

**W**

**wait [3]** 17/11 30/20 63/16
**waiting [1]** 62/23
**waive [1]** 61/14
**waiver [1]** 61/16
**want [47]** 9/3 14/8 16/14 19/14 20/6 20/12 22/8 23/6 23/10 23/11 23/17 24/5 25/6 26/18 26/20 27/17 29/21 35/9 35/13 39/23 43/1 44/1 44/21 44/22 45/6 46/16 46/20 47/11 48/16 48/17 49/23 50/1 50/20 53/5 55/4 55/16 57/14 58/13 61/13 62/22 62/22 63/22 64/4 64/8 64/10 65/6 65/11
**wanted [4]** 33/1 45/3 45/9 47/6
**wants [1]** 27/24
**was [28]** 6/18 7/7 7/7 10/9 10/15 11/8 12/4 13/21 15/14 25/25 30/18 31/10 33/1 34/17 34/21 39/9 45/10 46/18 46/19 50/22 52/10 52/10 52/17 54/20 58/11 61/20 61/21 61/24
**Washington [12]** 1/4 1/18 1/23 2/3 2/8 2/13 2/24 3/3 3/22 4/7 4/11 4/23
**wasn't [1]** 10/14
**wasted [1]** 39/6
**way [15]** 8/19 10/13 19/24 28/6 34/4 36/12 38/25 39/4 40/9 42/4 43/23 43/25 45/2 62/1 62/4
**we [216]**
**we'd [3]** 15/11 41/22 51/18
**we'll [17]** 17/9 20/24 21/1 21/2 21/2 30/3 36/1 38/16 41/15 42/10 45/7 46/15 49/8 57/14 59/25 60/5 63/12
**we're [34]** 7/8 10/10 10/18 14/16 15/21 16/5 18/16 18/18 21/21 22/8 24/2 24/12 25/13 25/14 25/23 27/8 27/16 31/10 34/15 37/3 38/20 43/4 44/23 47/14 47/15 47/25 48/6 48/7 49/7 49/18 49/24 51/16 58/12 64/2

**W**

**we've [21]** 6/9 10/17 12/23 16/20 16/23
17/3 17/14 21/21 22/1 26/14 30/2 30/9
33/7 33/17 40/23 41/8 49/17 51/13
51/24 63/13 64/3
**Wednesday [3]** 62/12 62/16 62/19
**week [3]** 31/14 62/21 63/15
**weeks [1]** 25/9
**well [24]** 5/12 5/13 11/22 14/18 17/18
19/5 22/2 22/8 23/3 23/6 23/10 28/24
29/25 30/8 33/3 34/19 37/24 39/2 44/12
45/5 47/20 49/13 57/21 57/22
**well-represented [2]** 23/10 30/8
**went [1]** 32/23
**were [33]** 7/22 8/12 8/12 8/13 8/14 9/20
11/8 11/9 17/25 19/2 20/19 22/13 22/15
23/1 23/7 31/2 31/3 31/5 31/6 31/14
31/17 31/23 33/5 33/5 33/6 35/14 36/18
40/16 42/18 43/25 44/15 45/9 50/17
**West [1]** 27/3
**what [113]**
**what's [11]** 15/5 18/9 24/4 24/20 33/1
42/23 42/23 43/1 46/15 48/4 48/18
**whatever [8]** 25/15 36/8 40/7 40/8 43/12
47/3 56/25 62/12
**when [18]** 9/13 11/9 13/4 23/5 23/23
33/8 34/5 35/10 35/19 38/1 38/2 39/19
45/17 47/14 54/4 54/23 57/17 60/15
**where [19]** 8/16 20/24 21/23 24/8 30/6
32/20 33/7 33/12 38/3 38/6 38/14 38/25
42/21 44/5 45/21 49/14 58/24 60/9
63/23
**whether [27]** 12/15 12/17 14/21 16/16
22/21 28/19 28/20 28/22 29/5 29/7
29/11 30/16 30/18 37/14 37/14 37/15
37/25 51/1 52/10 52/16 52/20 54/9
54/11 56/19 56/21 61/13 64/2
**which [43]** 6/2 7/5 7/14 11/17 12/10
12/15 12/22 12/25 13/8 13/18 17/1 17/6
17/13 20/18 22/2 24/13 24/13 25/4 29/4
29/8 30/14 32/6 32/19 32/23 32/23 35/1
38/1 38/4 42/12 43/19 44/25 45/14
49/11 50/16 53/6 54/17 55/21 56/22
58/8 60/5 60/21 61/24 63/4
**while [4]** 27/8 29/3 29/8 30/1
**who [17]** 5/13 30/20 31/2 31/6 31/25
32/10 35/8 37/2 37/2 37/3 37/5 37/7
49/7 49/12 49/18 58/1 62/22
**who's [2]** 23/14 38/10
**whoever [1]** 14/10
**whole [4]** 33/15 54/10 54/23 64/9
**whom [2]** 48/20 61/13
**why [17]** 10/13 11/2 20/18 25/23 32/15
33/1 36/22 37/9 38/4 39/15 43/15 44/13
47/13 50/20 50/22 53/3 61/24
**wider [1]** 35/1
**will [82]**
**William [2]** 1/15 2/6
**william.stallings [1]** 2/10
**Williams [1]** 5/20
**willing [6]** 27/7 34/25 53/15 56/23 61/14
62/17
**wind [1]** 17/6
**wind-up [1]** 17/6
**wisely [1]** 55/24
**wish [1]** 52/20
**withdraw [1]** 7/14
**within [2]** 26/14 50/23
**without [4]** 10/10 14/21 40/16 50/7
**witness [2]** 54/11 60/5
**witnesses [18]** 19/21 20/13 35/20 41/10
54/1 55/10 55/22 55/22 55/25 56/14
57/13 57/14 57/22 58/4 58/24 59/5

**won't [4]** 13/21 14/19 19/18 64/14
**wonder [1]** 25/23
**word [1]** 20/14
**worded [1]** 62/1
**words [1]** 46/24
**work [20]** 15/6 15/7 15/10 16/10 23/22
28/7 28/10 41/10 44/9 45/6 46/19 49/15
49/18 49/22 59/25 61/11 63/10 63/17
64/1 64/5
**workable [1]** 8/10
**working [5]** 11/20 16/5 18/16 47/22
64/11
**works [1]** 44/25
**world [2]** 47/14 47/15
**worldwide [1]** 57/25
**would [100]**
**wouldn't [2]** 28/25 56/25
**written [2]** 28/21 28/23
**wrong [7]** 7/3 7/16 12/7 41/13 41/14
43/1 46/15

**Y**

**Yeah [2]** 39/3 61/20
**yes [28]** 9/10 14/8 16/11 18/11 19/13
20/7 20/22 22/20 26/7 26/7 26/12 35/5
36/10 36/13 36/16 40/11 41/1 42/6
45/12 47/8 49/6 56/5 56/8 56/8 58/20
59/12 63/20 63/21
**yesterday [5]** 7/2 9/16 15/2 15/12 25/10
**yet [2]** 11/10 17/9
**York [1]** 4/15
**you [223]**
**you'd [2]** 40/19 64/1
**you'll [4]** 10/4 30/21 56/14 65/15
**you're [38]** 5/13 10/4 13/4 14/12 15/17
15/21 16/16 18/4 18/11 20/1 21/10 24/6
29/3 29/12 29/14 30/1 35/2 35/7 35/18
36/8 37/1 38/3 38/3 38/7 40/9 45/13
45/23 46/5 47/6 47/18 49/1 49/4 54/8
54/22 56/1 58/9 63/10 63/14
**you've [6]** 9/11 24/14 29/11 54/4 59/18
62/18
**your [112]**
**yours [1]** 40/20
**yourself [1]** 5/5
**yourselves [1]** 16/12

**Z**

**zero [1]** 52/4